Matthew J. Norris (SBN 257505)
mjnorris@norrislglaw.com
NORRIS LAW GROUP, P.C.
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone: (310) 443-4159
Facsimile: (310) 443-4220

Attorneys for Plaintiff MARSHA WRIGHT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA WRIGHT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>OLD GRINGO, INC., a California corporation; ERNEST TARUT, an individual; OLD GRINGO, S.A. de C.V., a Mexican corporation; YAN FERRY, an individual; and DOES 1 through 30, inclusive,<br><br>    Defendants. | Case No.   **'17 CV1996 BAS NLS**<br><br>**COMPLAINT OF MARSHA WRIGHT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) FRAUD AND FRAUDULENT MISREPRESENTATION;**<br>**(3) SPECIFIC PERFORMANCE;**<br>**(4) PROMISSORY FRAUD;**<br>**(5) CONCEALMENT;**<br>**(6) NEGLIGENT MISREPRESENTATION;**<br>**(7) PROMISSORY ESTOPPEL; AND**<br>**(8) UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

        Plaintiff MARSHA WRIGHT, by and through her undersigned counsel, as and for a Complaint against, and in support of that Complaint against, Defendants OLD

-1-
**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

GRINGO, INC., ERNEST TARUT, OLD GRINGO, S.A. de C.V., YAN FERRY, and DOES 1 through 30, inclusive, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction over the matters alleged in this Complaint pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and/or citizens of different states and citizens or subjects of foreign states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

2.      Venue in the Southern District of California is proper under 28 U.S.C. §§ 1391(a), (b), and (c), because a substantial part of the events or omissions giving rise to the complaint occurred in this district, and because, in the event that it is determined that there is no district in which this action may otherwise be brought, Defendant Ernest Tarut and Defendant Old Gringo, Inc. are each subject to the court's personal jurisdiction in this district with respect to this action, and because for all venue purposes, defendants not resident in the United States of America, including in this case Defendant Yan Ferry and Defendant Old Gringo, S.A. de C.V., may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

## PARTIES

3.      Plaintiff Marsha Wright is, and at all times pertinent to this Complaint was, an individual residing in and a citizen of the state of Texas.

4.      Defendant Old Gringo, Inc. is, and at all times pertinent to this Complaint was, a corporation organized under the laws of and/or incorporated in, and with its principal place of business in, the state of California.

5.      Defendant Ernest Tarut is, and at all times pertinent to this Complaint was, an individual residing in and a citizen of the state of California.

6.      Defendant Yan Ferry is, and at all times pertinent to this Complaint was, upon information and belief, an individual residing in the United Mexican States – a

foreign state commonly known as Mexico – and a dual citizen of both Mexico and the French Republic, a foreign state commonly known as France.

7.    Defendant Old Gringo, S.A. de C.V. is, and at all times pertinent to this Complaint was, a corporation (in Spanish, *Sociedad Anonima de Capital Variable*) organized under the laws of and/or incorporated in the United Mexican States – a foreign state commonly known as Mexico – with its principal place of business in the city of León, in the state of Guanajuato, Mexico.

8.    Plaintiff currently does not know the true names and capacities of the defendants sued as Does 1 through 30, inclusive, and Plaintiff therefore sues said defendants by fictitious names.  Plaintiff will amend her Complaint or seek leave to do so to add the true names and capacities of these defendants when they are ascertained.  Each of the fictitiously named Doe defendants is responsible in some manner for the events and happenings alleged in this Complaint and for Plaintiff's damages.

## ALTER EGO ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.    Plaintiff is informed and believes and thereon alleges that some of the corporations, limited liability companies, and/or entities named as Defendants herein, including without limitation Old Gringo, Inc., a California corporation, Old Gringo, S.A. de C.V., a Mexican corporation, and Does 1 through 30 (hereinafter occasionally collectively referred to as the "ALTER EGO CORPORATIONS"), and each of them, were at all times relevant to this Complaint the alter egos and/or the alter ego corporations of individual Defendants Ernest Tarut and Yan Ferry by reason of the following:

(a) Plaintiff is informed and believes and thereon alleges that said individual defendants Tarut and Ferry, at all times pertinent to this Complaint, dominated, influenced and controlled each of the ALTER EGO CORPORATIONS and the officers, directors, employees and agents thereof as well as the business, property, and affairs of each of said corporations;

(b) Plaintiff is informed and believes and thereon alleges that, at all times pertinent to this Complaint, there existed and now exists a unity of interest and ownership between

said individual defendants and each of the ALTER EGO CORPORATIONS such that the individuality and separate nature of said individual defendants and each of the ALTER EGO CORPORATIONS have ceased to exist;

(c) Plaintiff is informed and believes and thereon alleges that, at all times since the incorporation of each, each ALTER EGO CORPORATION has been and now is a mere shell that said individual defendants used as a vehicle and a conduit for the conduct of their personal business, property and affairs;

(d) Plaintiff is informed and believes and thereon alleges that, at all times pertinent to this Complaint, each of the ALTER EGO CORPORATIONS was created and continued to exist and operate pursuant to a fraudulent plan, scheme and device conceived, executed, and operated by individual Defendants Tarut and Ferry, in such a manner that the income, revenue and profits of each of the ALTER EGO CORPORATIONS were diverted by said individual Defendants to themselves;

(e) Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was organized by said individual Defendants Tarut and Ferry as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place of said individual defendants, and each of them, and accordingly, each of the ALTER EGO CORPORATIONS was formed with and maintained capitalization totally inadequate for the business in which said corporations, and each of them, were and are engaged;

(f) Plaintiff is informed and believes and thereon alleges that each ALTER EGO CORPORATION is insolvent or functionally insolvent;

(g) As a result of some or all of the foregoing allegations, adherence to the fiction of the separate corporate existence of each of the ALTER EGO CORPORATIONS would, under the circumstances, sanction fraud and promote injustice in that Plaintiff would or could be unable to collect upon any judgment rendered in her favor.

10.    Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, individual Defendants Tarut and Ferry and the ALTER EGO

**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

CORPORATIONS acted for each other in connection with the conduct alleged in this Complaint, and that each of them performed the acts complained of herein or breached the duties complained of while acting as agents of each other, and that each is therefore fully liable for the acts of the other.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11.     Plaintiff Marsha Wright worked as a designer on a regular, full-time oral contract basis for both Defendant Old Gringo, Inc. and Defendant Old Gringo, S.A. de C.V. beginning in 2005, and became the head designer for Defendant Old Gringo, Inc. and Defendant Old Gringo, S.A. de C.V. in 2008.

12.     As a designer and as head designer for Defendant Old Gringo, Inc. and for Defendant Old Gringo, S.A. de C.V., Plaintiff made designs and patterns for boots, jackets and handbags, and traveled around the world to source goods for her designs.

13.     Old Gringo, Inc. (hereinafter "Old Gringo US") is a manufacturer of luxury Western footwear with its headquarters in the greater San Diego, California area (specifically Chula Vista, San Diego County, California), while Old Gringo, S.A. de C.V. (hereinafter "Old Gringo MX") is, upon information and belief, a corporate affiliate and/or sister company of Old Gringo, Inc. – under identical ownership or ownership at least partially in common – and is also a footwear manufacturer with offices, headquarters and a factory production facility located in León, Guanajuato, Mexico.

14.     Old Gringo, Inc. and Old Gringo, S.A. de C.V. are hereinafter occasionally referred to collectively as "Old Gringo US & MX."

15.     Plaintiff worked for or with Old Gringo US & MX regularly as her full-time employment, under an oral contract, continuously from 2005 through October 30, 2015 (except from November of 2010 through June of 2011, when she worked for or with Old Gringo US & MX under an oral contract on an occasional basis).

16.     Old Gringo US & MX and their principals and officers, including Defendant Ernest Tarut and Defendant Yan Ferry, highly prized and valued Plaintiff's designs and considered her to be a very significant and valuable contractor for and a de facto

**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

employee of Old Gringo US & MX.

17.   Plaintiff reported directly to Tarut and to Ferry.

18.   On or about January 21, 22, 23, 24, or 25 of 2013, Defendant Tarut and Defendant Ferry met with Plaintiff in León while sitting at a large conference table in the boot showroom at the headquarters of Old Gringo MX.  During this meeting, Tarut informed Plaintiff that because he and Ferry valued her contributions, designs, services and expertise so highly and wished to ensure that she remained an integral part of Old Gringo US & MX, he and Ferry were altering Plaintiff's oral contract with Old Gringo US & MX and were, effective immediately as part of that contract, amending the contract by making Plaintiff the owner of a 5% equity stake and/or ownership interest in and of both Old Gringo, Inc. and Old Gringo, S.A. de C.V.

19.   Specifically, using a nickname Tarut frequently used to refer to Plaintiff, Tarut told Plaintiff during this January 2013 meeting in León, "Bluey, I just made you a millionaire."

20.   Tarut also told Plaintiff, during the same January 2013 meeting in León, that Old Gringo US & MX were further amending their contractual agreement or agreements with Plaintiff (hereinafter also collectively referred to as the "Agreement") and would begin paying an increased "salary" (i.e., a higher contract price for Plaintiff's services) and increased "bonuses" (i.e., performance bonus payments calculated according to the financial success of Old Gringo US & MX) to Plaintiff in recognition of Plaintiff's contributions and continued provision of designs, services and expertise, in addition to and not as a substitute for, Plaintiff's newly created 5% ownership interest in the two companies.

21.   Immediately thereafter, Old Gringo US & MX began paying Plaintiff such increased compensation, amounting to tens of thousands more than what those Defendants had paid Plaintiff before, in the form of both a higher "salary" (contract price) and performance-based bonuses, just as Tarut and Ferry had promised.

22.   Old Gringo US & MX continued to pay Plaintiff this vastly increased

compensation, which fluctuated from time to time but was always far more than Plaintiff received from Old Gringo US & MX before her conversation with Tarut and Ferry in January of 2013, throughout the remainder of Plaintiff's business relationship with Old Gringo US & MX.

23.    Tarut also told Plaintiff, during the January 2013 meeting in León described above, that the 5% equity stake and/or ownership interest in Old Gringo US and Old Gringo MX would continue for as long as Plaintiff continued to provide services, designs and expertise to Old Gringo US & MX, but as had always been the case before, the Agreement between Plaintiff and the Old Gringo entities was of and for no particular duration or period, and the duration of said contract was specifically undefined, and either party could terminate said contract at any time.

24.    In or about February of 2013, Plaintiff informed her accountant and the employees of her accountant of her 5% ownership in Old Gringo US & MX, as well as her increased compensation under the Agreement per her discussions and meeting with Tarut and Ferry the previous month (January of 2013) in León.

25.    Throughout 2013, 2014, and 2015, Plaintiff had regular and repeated interactions with Tarut and Ferry in the course of her business with Old Gringo US & MX, including e-mail contacts, telephone contacts, and in-person meetings at numerous events such as trade shows and regular meetings in Chula Vista, León and elsewhere.

26.    At no time from January of 2013 to the date of the filing of this action has Tarut, Ferry, or anyone else representing or acting on behalf of Defendants denied in any way, orally or in writing, expressly or by implication, that Plaintiff has or at any time had a 5% equity stake or ownership interest in either Old Gringo US, Old Gringo MX, or both.

27.    Quite to the contrary, after January of 2013 Tarut regularly, as a matter of custom and habit, remarked to Plaintiff: "You're a partner now, so you need to do [some particular task]," or "You're a partner now, so you need to work very hard [to achieve some particular goal or complete some particular task]," or words to that effect.  Plaintiff understood Tarut, when using the word "partner" on these occasions, to mean "owner" or

1   "part owner" and to be referring to the Ownership Interest.

2        28.   Specifically, Tarut made remarks to the effect of those set forth in the above

3   paragraph (Paragraph 27) in February of 2015 to Plaintiff when Plaintiff visited the

4   headquarters of Old Gringo MX in León to show Tarut and others at Old Gringo MX her

5   new designs.

6        29.   Specifically, Tarut made remarks to the effect of those set forth in the above

7   paragraph (Paragraph 27) in March of 2015 to Plaintiff when Plaintiff visited the

8   headquarters of Old Gringo MX in León to show Tarut and others at Old Gringo MX her

9   new designs.

10       30.   Specifically, Tarut made remarks to the effect of those set forth in the above

11  paragraph (Paragraph 27) on or about May 18, 2015 during an in-person meeting at a

12  hotel suite in or at DFW Airport, Texas with Plaintiff and Fred Gibbons, a sales

13  representative for Old Gringo US, during which meeting Tarut informed Plaintiff that he

14  required more designs than usual from Plaintiff, and exhorted her to perform based on her

15  status as a "partner" in or owner of Old Gringo US and/or Old Gringo MX.  Gibbons was

16  out of the room when these remarks were made and did not hear the remarks, but Plaintiff

17  told Gibbons about the remarks afterwards in or about June of 2015 in León when

18  Plaintiff and Gibbons next saw each other.

19       31.   Throughout various dates in 2013, 2014, and 2015, Plaintiff discussed with

20  the following individuals – in addition to members of her family, her accountants, Tarut

21  and Ferry – her 5% equity stake and/or ownership interest in Old Gringo US & MX

22  (hereinafter also the "Ownership Interest"), or informed them about the Ownership

23  Interest and/or the Agreement, as follows:

24       •   Jane Pak, president of Old Gringo US from 2013 to 2014 (the chief executive

25           officer of said company, reporting directly to Tarut).  Plaintiff discussed her

26           Ownership Interest with Pak on several occasions, and at least in November

27           of 2013, December of 2013 and January of 2014 (at a sales event for Old

28           Gringo in Denver, Colorado), and Pak told Plaintiff on one of these occasions

-8-

PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL

that Pak was independently aware of Plaintiff's Ownership Interest already, because Tarut had informed Pak of it directly.

- Pablo Pinochet, the president and/or a director of Old Gringo MX, with whom Plaintiff discussed the Ownership Interest on several occasions during in-person meetings at the headquarters of Old Gringo MX in León.

- Erin Slade, a sales manager for Allens Boots, a very significant and large-volume customer of Old Gringo US, and also a business associate of Tarut, in or about September of 2015.

- Sommer Portwood, a friend of Plaintiff's also known to Tarut, who had assisted Plaintiff with selling Old Gringo products at sales events in December 2006, December 2007, and December 2008 associated with the National Finals Rodeo in Las Vegas, Nevada; Plaintiff told Portwood about the Ownership Interest during a telephone conversation in or about late March of 2013.

- Brenda Tongate, a digitizer who helped to render and convert Plaintiff's designs into electronic and/or computerized format and was paid to do so by Old Gringo US; Plaintiff told Tongate about the Ownership Interest during an in-person meeting in or about February of 2013 in Austin, Texas.

- Mona Hart, an intellectual property lawyer who provided outside legal services to Old Gringo US, at a sales event for Old Gringo in Denver, Colorado in January of 2014.

- Angelica Ferry, Yan Ferry's wife, at a lunch with Plaintiff celebrating the new Agreement between Plaintiff and Defendants and the Ownership Interest, which lunch took place in León in January of 2013 one or two days after the meeting between Plaintiff, Tarut and Ferry concerning and creating the Ownership Interest.

- Jeffrey Green and Becky Green, Plaintiff's brother and sister-in-law who live in Fort Worth, Texas, during a phone conversation on or about February 1,

2013, approximately a week after Plaintiff returned from the meeting in León with Tarut and Ferry concerning and creating the Ownership Interest.

- Jim Carpenter, a friend of Plaintiff who lives in Fredericksburg, Texas and who works a sales representative for Scully Leather, a company for which Plaintiff worked prior to working exclusively with Old Gringo US and Old Gringo MX, during regular telephone conversations throughout 2013, 2014, and 2015.

- LaDane Smith, a sales representative for Old Gringo US and/or Old Gringo MX based in Colorado.

- Craig Davidson, a sales representative for Old Gringo US and/or Old Gringo MX based in Dallas, Texas.

- Revita Sozey, a designer for Old Gringo US and/or Old Gringo MX based first in San Diego County, California near the headquarters of Old Gringo US, and later based in León near the headquarters of Old Gringo MX, during regular in-person meetings in León throughout 2013 and 2014.

- Angie Fresh, a longtime friend and business associate of Plaintiff living in Fort Worth, Texas, during one or more telephone conversations in or about March of 2013 and May of 2013.

- Brandy Minick, a onetime business partner of Plaintiff living in Fort Worth, Texas, and an associate publisher of *Cowboys & Indians*, a magazine for Western enthusiasts in which Old Gringo regularly advertises, during one or more telephone conversations or in-person meetings in Fort Worth, Texas in March, April, or May of 2013 and at a sales event for Old Gringo in Denver, Colorado in or about January of 2014.

32.    In August of 2015, Plaintiff discussed with her accountants the need to engage in estate planning for the benefit of her children, and her accountants recommended that she secure from the Defendants a written memorialization of the Ownership Interest as part of that process.

**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

33.    At the same time, Plaintiff wished to renegotiate some of the terms of her contract with Defendants related to her compensation and also related to the compensation and the involvement of her son C.J. in her provision of services to Defendants.  Plaintiff contacted Tarut and Ferry on or about August 17, 2015 by e-mail to inform them of and to discuss these issues.

34.    In subsequent discussions held in person between Plaintiff and Tarut in Las Vegas, Nevada on or about August 17, 2015, and by phone between Plaintiff, Tarut and/or Ferry over the remainder of August of 2015, Tarut and Ferry informed Plaintiff that they could not yet provide Plaintiff with written documentation of Plaintiff's Ownership Interest, because of internal governance and organization issues, because filing paperwork showing Ferry as less than a 50% owner of Old Gringo US could interfere with Ferry's pending application for United States citizenship, and because Tarut and Ferry were at that time unable to allocate ownership interests between them in writing in a manner sufficient to accommodate Plaintiff's request.  However, Tarut and Ferry promised to provide Plaintiff with written documentation of her Ownership Interest as soon as they were able.

35.    Plaintiff met with Ferry in person in León on or about August 25, 2015 and discussed the same issues with Ferry.  Ferry reaffirmed his and Tarut's statements earlier that month that they could not yet provide Plaintiff with written documentation of Plaintiff's Ownership Interest per Plaintiff's request, but would do so as soon as possible.

36.    During these discussions in August of 2015 as summarized above, Tarut and Ferry never denied and in fact reaffirmed the fact and the existence of Plaintiff's Ownership Interest.

37.    During these discussions in August of 2015 as summarized above, Plaintiff did not suspect and had no reason to suspect, due to her longstanding, decade-long relationship with Defendants, that Defendants were breaching a promise to her, making false statements to her, or defrauding her in any way.

38.    During these discussions in August of 2015 as summarized above, Plaintiff

-11-

took Tarut and Ferry at their word that various factors as summarized above prevented Defendants from providing written documentation of Plaintiff's Ownership Interest at that time, but Defendants would provide such documentation as soon as they were able. Defendants also told Plaintiff that she just needed to trust them, and Plaintiff had no reason not to do so and every reason to do so.

39.     Plaintiff continued to discuss these matters with Tarut and Ferry in September of 2015, but Tarut and Ferry did not change their position or provide Plaintiff with the written documentation of the Ownership Interest that she was seeking, at the behest of her accountants, to assist in estate planning, nor did they discuss changes in Plaintiff's compensation or the involvement of her son in her provision of services to Defendants.

40.     Throughout September of 2015, Plaintiff continued to take Tarut and Ferry at their word that various factors as summarized above prevented Defendants from providing written documentation of Plaintiff's Ownership Interest at that time, but that Defendants would provide such documentation as soon as they were able.

41.     Throughout September of 2015, Plaintiff continued to discuss with Tarut and Ferry the renegotiation of the terms of her contract compensation and the involvement of her son in the business, and Tarut and Ferry indicated to Plaintiff on multiple occasions in September of 2015 that they would resolve those issues as soon as possible.

42.     Defendants requested, in the course of regular business, that Plaintiff travel to León on or about September 28, 2015 to display and discuss new designs.

43.     As a result of her unhappiness over Tarut and Ferry's recalcitrance in discussing the renegotiation of the terms of her contract compensation and the involvement of her son in the business, Plaintiff decided not to travel to León until those issues were resolved, and so informed Tarut and Ferry by e-mail and phone on or about September 28, 2015.

44.     At no time during the month of September of 2015, despite ample and logically convenient opportunities to do so, did Tarut, Ferry, or any other representative or

agent or person acting on behalf of any Defendant tell Plaintiff that the Ownership Interest did not exist.

45.     On October 1, 2015, Ferry e-mailed Plaintiff with a copy to Tarut and stated that prior to that week, Ferry and Tarut had not talked or met in four months, and therefore had not responded to Plaintiff's concerns.  Ferry closed the e-mail by asking Plaintiff to advise Defendants what "next steps" would be in terms of a continuing relationship between Plaintiff and Defendants.

46.     In his October 1, 2015 e-mail, Ferry did not deny the existence of the Ownership Interest or otherwise address it, other than to invite Plaintiff to advise Ferry and Tarut as to "next steps."

47.     On or about October 4, 2015, upon further consideration of Ferry's October 1 e-mail and the general lack of response from Tarut and Ferry on the various issues about which she had asked Tarut and Ferry to take action, Plaintiff concluded that for the first time, she did not believe Tarut and Ferry about their reasons for not documenting the Ownership Interest in writing or otherwise providing Plaintiff with a written contract.

48.     On or about October 4, 2015, Plaintiff instead concluded for the first time that the Ownership Interest did not exist, and that Tarut and Ferry had actively deceived her for well over two and a half years.  At this time, Plaintiff determined that Tarut and Ferry, as well as Old Gringo US and Old Gringo MX, had broken the Agreement.

49.     Plaintiff subsequently finished all of the designs that she was working on for the 2016 collection for Old Gringo US and Old Gringo MX and ceased working with those entities as of October 30, 2015.

50.     On July 1, 2016, Plaintiff e-mailed Tarut asking him to reaffirm the existence of the Ownership Interest in writing.  At this time, Plaintiff still believed that she might have been mistaken as to the existence of the Ownership Interest and further believed that Tarut and Ferry might indeed have been honest with her after all, and she wished to discuss those matters with Tarut.

51.     Tarut made no reply to Plaintiff's July 1, 2016 e-mail.

52.     On August 1, 2016, legal counsel hired by Plaintiff sent a letter via certified mail to Tarut and Ferry at the California headquarters address of Old Gringo US, demanding that Defendants immediately acknowledge and account for the Ownership Interest to determine the amount of money that Plaintiff was owed by Defendants.

53.     None of the Defendants nor anyone acting on their behalf responded to the August 1, 2016 letter, which was received and not returned to the sender.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract, Against Old Gringo US, Old Gringo MX, Tarut, and Ferry)**

54.     Plaintiff hereby incorporates by this reference Paragraphs 1 through 53 above as though fully set forth herein.

55.     Plaintiff and Old Gringo US formed a binding oral contract in January of 2013, in which contract Old Gringo US agreed to provide Plaintiff with 5% of its ownership and/or an equity stake of 5% therein, as well as significantly increased "salary" or contracted compensation for services and increased performance bonuses, in exchange for Plaintiff's agreement to continue to provide expertise and services including the regular furnishing of designs for products to Old Gringo US per its requirements.

56.     Plaintiff and Old Gringo MX formed a binding oral contract in January of 2013, in which contract Old Gringo MX agreed to provide Plaintiff with 5% of its ownership and/or an equity stake of 5% therein, as well as significantly increased "salary" or contracted compensation for services and increased performance bonuses, in exchange for Plaintiff's agreement to continue to provide expertise and services including the regular furnishing of designs for products to Old Gringo MX per its requirements.

57.     At all times pertinent to this Complaint and continuing to the present day, Tarut and Ferry, and each of them, own and have owned controlling interests in both Old Gringo US and Old Gringo MX and each of them; are and were officers, directors and/or principals of both Old Gringo US and Old Gringo MX and each of them; and are and were authorized to enter into contracts on behalf of and to bind both Old Gringo US and Old Gringo MX and each of them.

PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL

58.     The legal effect and nature of the amended oral contract between Plaintiff and Defendants reached in January of 2013 (hereinafter also referred to as the "Agreement") was that Plaintiff would continue to provide expertise, designs and other services as a contractor on a regular, full-time basis to both Old Gringo US and Old Gringo MX, per their requirements, in exchange for increased compensation and a 5% equity stake and/or ownership interest in each company.

59.     The Agreement was for no fixed duration and for no particular period of time, and could be terminated at any time for any or no reason by any party thereto.

60.     Plaintiff and Defendants also have an implied in fact contract, arising from the conduct of Plaintiff and Defendants in and after January of 2013, including Plaintiff's continuing to provide expertise and services including without limitation hundreds of designs to Defendants, Defendants' payment of vastly increased compensation to Plaintiff, and Tarut and Ferry's oral reaffirmations of the Ownership Interest to Plaintiff on numerous occasions.

61.     Plaintiff has performed in all respects the terms of the Agreement as alleged above, except to the extent that her compliance has been excused, and Plaintiff has fully executed the Agreement.

62.     Plaintiff now believes that Tarut and Ferry, acting on behalf of both Old Gringo US and Old Gringo MX, deliberately lied to her and did not take the necessary actions to grant her a 5% ownership interest in either Old Gringo US or Old Gringo MX, which conduct constitutes a breach of the Agreement, which conduct prevented the Agreement from being reduced to writing, and which conduct led Plaintiff to believe that the Agreement was in writing or its equivalent and to act on that belief to her detriment.

63.     Because Plaintiff is a citizen of Texas, Old Gringo US is a citizen of California, and the law of the formation of the contract was not specified in the Agreement, the Agreement is subject either to Texas law or California law.

64.     As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff has sustained reasonably ascertainable damages, including without limitation loss

-15-

of earnings, income and profits including without limitation the value of the 5%
Ownership Interest for at least the duration of the Agreement; loss of future earnings,
income and profits; interest; the lost profits or earnings that Plaintiff would have made if
she had not entered into the Agreement and had pursued other business opportunities;
anticipated profits from an established business or profession; the reasonable value of
Plaintiff's services; Plaintiff's expenditures in preparation for, performance of, and
reliance upon the Agreement; damages for mental and/or physical suffering and/or illness
due to the direct relation of the terms of the Agreement to matters concerning the comfort,
happiness, and personal welfare of Plaintiff including without limitation her ability to
provide a secure financial future for herself and her children; and attorney fees to the
extent that the Agreement arose under the laws of Texas.

65.     Plaintiff has suffered damages in excess of $75,000 exclusive of interest and
costs (also referred to hereafter as the "jurisdictional minimum of this court"), and in an
amount subject to proof at time of trial.

<u>**SECOND CLAIM FOR RELIEF**</u>

**(Fraud and Fraudulent Misrepresentation, Against Old Gringo US, Old Gringo MX,
Tarut, and Ferry)**

66.     Plaintiff hereby incorporates by reference Paragraphs 1 through 65 of this
Complaint as though fully set forth herein.

67.     At the time that Defendant entered into the Agreement with Plaintiff,
Defendants fraudulently represented to Plaintiff that Defendants would perform all of
Defendants' obligations under the Agreement, including granting Plaintiff the Ownership
Interest.  Eventually, however, as of October 4, 2015, Plaintiff came to believe and now
believes that Defendants never granted Plaintiff the Ownership Interest.

68.     Tarut and Ferry, as well as Old Gringo US and Old Gringo MX by and
through its principals Tarut and Ferry, assured Plaintiff that the Ownership Interest was
real, and that she owned 5% of Old Gringo US and Old Gringo MX, and that Defendants
would stand by and honor the Agreement, and the Plaintiff relied on those representations

to her detriment.  Said representations were made orally by Tarut and Ferry to Plaintiff on multiple occasions from 2013 through 2015, including without limitation on or about or in or about January 21, 22, 23, 24, and/or 25 of 2013; February of 2015; March of 2015; May 18, 2015; August 17, 2015; August 25, 2015; and October 1, 2, 3, and/or 4, 2015, among many other occasions in 2013, 2014, and 2015.

69.    Defendants' representations were false, and Defendants knew them to be false when made, because Defendants did not grant Plaintiff a 5% equity stake or ownership interest in Old Gringo US or Old Gringo MX.

70.    Defendants' fraudulent representations were intended to induce reliance by Plaintiff and to cause Plaintiff both (a) to enter into the Agreement with Defendants, and (b) to continue Plaintiff's business and contractual arrangement with Defendants, which was very valuable to Defendants.

71.    Plaintiff justifiably and reasonably relied, to her detriment, upon Defendants' misrepresentations described above in entering into the Agreement with Defendants, and in continuing to do business with Defendants and provide expertise, designs and services under contract to Defendants.

72.    As a direct and proximate result of Defendants' fraud and/or due to fraudulent conduct by Defendants constituting a substantial factor in bringing about harm to Plaintiff, Plaintiff has sustained monetary and other damages, including without limitation loss of earnings, income and profits; loss of future earnings, income and profits; interest; the lost profits or earnings that Plaintiff would have made if she had not entered into the Agreement and had pursued other business opportunities; anticipated profits from an established business or profession; the reasonable value of Plaintiff's services; Plaintiff's expenditures in preparation for, performance of, and reliance upon the Agreement;  damages for mental and/or physical suffering and/or illness due to the direct relation of the terms of the Agreement to matters concerning the comfort, happiness, and personal welfare of Plaintiff including without limitation her ability to provide a secure financial future for herself and her children; and attorney fees, all in an amount that is in

excess of the jurisdictional minimum of this court, and that is subject to proof at time of trial.

73.     To the extent that any further specificity is required regarding the allegations above and/or to the extent that the allegations above are not sufficiently specific, Plaintiff now pleads Defendants' fraud and fraudulent misrepresentation with additional specificity:

74.     **WHO**:  Defendants Tarut, Ferry, Old Gringo US, and Old Gringo MX are the persons and entities responsible for deceiving Plaintiff and making false statements to Plaintiff.

75.     **WHAT:** Defendants Tarut, Ferry, Old Gringo US, and Old Gringo MX told Plaintiff that they were amending her longtime, oral contract with Defendants to include a 5% ownership interest in each of Old Gringo US and Old Gringo MX, but in fact, Defendants did not do so and had no intention of doing so or of granting Plaintiff any such ownership interest.

76.     **WHEN:** Defendants Tarut, Ferry, Old Gringo US, and Old Gringo MX initially made a fraudulent misrepresentation to Plaintiff in January of 2013, and restated and/or reaffirmed that misrepresentation on dozens of occasions thereafter, including without limitation in February of 2015; March of 2015; on or about May 18, 2015; on or about August 17, 2015; on or about August 25, 2015; and on or about October 1, 2, 3, and/or 4, 2015.  In addition, Defendants actively concealed their fraud and misrepresentation of material facts concerning the Ownership Interest and the Agreement at all times from January of 2013 to date.

77.     **WHERE**:  Defendants' initial fraud and misrepresentation occurred in person in Leon, Guanajuato, Mexico (January 2013).  Defendants subsequently reaffirmed their fraud and misrepresentation in person in Leon (February of 2015; March of 2015; August 25, 2015); DFW Airport, Texas (May 18, 2015); Las Vegas, Nevada (August 17, 2015); and by phone and e-mail from Leon and Chula Vista, California on numerous

occasions including without limitation on October 1, October 2, 2015, October 3, 2015, and October 4, 2015.

78.     **WHY and HOW:** The conduct of Defendants is fraudulent and deceptive because Defendants made Plaintiff a false promise in order to induce Plaintiff to enter into an Agreement to continue to provide valuable services, designs, and expertise to Defendants, which services, designs, and expertise Defendants were able to obtain at greatly reduced value, to their benefit and to Plaintiff's detriment, by falsely informing Plaintiff that Defendants had granted her a 5% ownership interest in Old Gringo US and Old Gringo MX.  Absent this fraud, Plaintiff would have behaved differently by negotiating different contract terms or discontinuing her relationship with Defendants altogether.

79.     As alleged above, Defendants acted with fraud, malice, oppression and in conscious disregard of Plaintiff's rights.  Defendants' conduct requires an award of exemplary and punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(Specific Performance, Against Old Gringo US, Old Gringo MX, Tarut, and Ferry)**

80.     Plaintiff hereby incorporates by reference Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     Plaintiff has demanded that Defendants grant her the Ownership Interest that Defendants promised to her under the terms of the Agreement.

82.     Defendants have ignored Plaintiff's demands and have thus refused and continue to refuse to grant Plaintiff the Ownership Interest that Defendants promised to her under the terms of the Agreement.

83.     Plaintiff has or may have no adequate remedy at law to enforce the provisions of the Agreement other than specific enforcement of the Agreement.

84.     Plaintiff is entitled to specific performance of the terms, conditions, and provisions of the Agreement, by order of this Court, among other things, ordering

defendant to grant Plaintiff the Ownership Interest, retroactive to at least January 25, 2013 and ending, if at all, on a date to be determined but no earlier than October 30, 2015.

85.     Plaintiff is entitled to compensation incidental to or ancillary to a decree of specific performance by virtue of the delay of Defendants in granting Plaintiff the Ownership Interest that Defendants promised to her under the terms of the Agreement in that Plaintiff was deprived of the fair value, and use of the fair value, of the Ownership Interest during the period of the delay.

## FOURTH CLAIM FOR RELIEF

### (Promissory Fraud, Against Old Gringo US, Old Gringo MX, Tarut, and Ferry)

86.     Plaintiff hereby incorporates by reference Paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87.     Defendants made a promise regarding a material fact to Plaintiff, namely granting her the Ownership Interest under the Agreement, without any intention of performing that promise.

88.     At the time of the promise, Defendants did not intend to perform it, and Defendants made the promise with the intent to deceive Plaintiff and with the intent to induce Plaintiff to enter into the Agreement.

89.     Plaintiff justifiably relied on Defendants' promise to her detriment.

90.     Defendants did not perform the promise, by failing to grant Plaintiff an Ownership Interest as promised under the Agreement.

91.     As a direct and proximate result of Defendants' fraudulent promise to Plaintiff, Plaintiff has sustained monetary and other damages, including without limitation loss of earnings, income and profits; loss of future earnings, income and profits; interest; the lost profits or earnings that Plaintiff would have made if she had not entered into the Agreement and had pursued other business opportunities; anticipated profits from an established business or profession; the reasonable value of Plaintiff's services; Plaintiff's expenditures in preparation for, performance of, and reliance upon the Agreement; damages for mental and/or physical suffering and/or illness due to the direct relation of

the terms of the Agreement to matters concerning the comfort, happiness, and personal welfare of Plaintiff including without limitation her ability to provide a secure financial future for herself and her children; and attorney fees, all in an amount that is in excess of the jurisdictional minimum of this court, and that is subject to proof at time of trial.

92. To the extent that any further specificity is required regarding the allegations of promissory fraud above and/or to the extent that the allegations above are not sufficiently specific, Plaintiff now pleads Defendants' promissory fraud with additional specificity by realleging and incorporating herein by this reference Paragraphs 74, 75, 76, 77, and 78 of this Complaint as though fully set forth herein.

93. As alleged above, Defendants acted with fraud, malice, oppression and in conscious disregard of Plaintiff's rights. Defendants' conduct requires an award of exemplary and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Concealment, Against Old Gringo US, Old Gringo MX, Tarut, and Ferry)

94. Plaintiff hereby incorporates by reference Paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95. Defendants, by virtue of entering into a contract for services with Plaintiff, transacted with Plaintiff, and created a duty to disclose material facts to Plaintiff arising out of that contract, out of that transaction, and out of the relationship between Plaintiff and Defendants.

96. Defendants concealed or suppressed the material fact that Defendants did not grant Plaintiff the Ownership Interest at the time of the Agreement as they claimed.

97. Defendants were under a duty to disclose that fact to Plaintiff.

98. Defendants' concealment or suppression was intentional and with the intent to defraud Plaintiff.

99. Plaintiff was completely unaware of Defendants' concealment and completely unaware of the material fact that Defendants did not grant Plaintiff the Ownership Interest at the time of the Agreement.

100.   Plaintiff would not have entered into the Agreement and would not have acted as she did had she been aware of the concealed or suppressed fact that Defendants did not grant Plaintiff the Ownership Interest.

101.   As a direct and proximate result of Defendants' concealment of a material fact from Plaintiff, Plaintiff has sustained monetary and other damages, including without limitation loss of earnings, income and profits; loss of future earnings, income and profits; interest; the lost profits or earnings that Plaintiff would have made if she had not entered into the Agreement and had pursued other business opportunities; anticipated profits from an established business or profession; the reasonable value of Plaintiff's services; Plaintiff's expenditures in preparation for, performance of, and reliance upon the Agreement;  damages for mental and/or physical suffering and/or illness due to the direct relation of the terms of the Agreement to matters concerning the comfort, happiness, and personal welfare of Plaintiff including without limitation her ability to provide a secure financial future for herself and her children; and attorney fees, all in an amount that is in excess of the jurisdictional minimum of this court, and that is subject to proof at time of trial.

102.   To the extent that any further specificity is required regarding the allegations of concealment above and/or that the allegations above are not sufficiently specific, Plaintiff now pleads Defendants' concealment with additional specificity by realleging and incorporating herein by this reference Paragraphs 74, 75, 76, 77, and 78 of this Complaint as though fully set forth herein.

103.   As alleged above, Defendants acted with fraud, malice, oppression and in conscious disregard of Plaintiff's rights.  Defendants' conduct requires an award of exemplary and punitive damages in an amount to be determined at trial.

//

//

//

//

**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

## SIXTH CLAIM FOR RELIEF

### (Negligent Misrepresentation, Against Old Gringo US, Old Gringo MX, Tarut, and Ferry)

104.   Plaintiff hereby incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105.   At the time that Plaintiff and Defendants entered into the Agreement, Defendants represented to Plaintiff that Defendants were granting the Ownership Interest to Plaintiff, and Defendants later reaffirmed the fact and existence of the Ownership Interest to Plaintiff on numerous occasions thereafter.  If not intentionally fraudulent, Defendants' statements were made negligently and carelessly, without reasonable and due regard for their truth and accuracy.

106.   When Defendants made the foregoing representations, they had no reasonable grounds for believing that the representations were true.

107.   Plaintiff justifiably and reasonably relied to her detriment upon Defendants' misrepresentations described above in entering into the Agreement with Defendants, and in continuing to do business with and provide expertise, services, and designs to Defendants.

108.   As a direct and proximate result of Defendants' misrepresentations, Plaintiff has sustained monetary and other damages, including without limitation loss of earnings, income and profits; loss of future earnings, income and profits; interest; the lost profits or earnings that Plaintiff would have made if she had not entered into the Agreement and had pursued other business opportunities; anticipated profits from an established business or profession; the reasonable value of Plaintiff's services; Plaintiff's expenditures in preparation for, performance of, and reliance upon the Agreement;  damages for mental and/or physical suffering and/or illness due to the direct relation of the terms of the Agreement to matters concerning the comfort, happiness, and personal welfare of Plaintiff including without limitation her ability to provide a secure financial future for herself and

her children; and attorney fees, all in an amount that is in excess of the jurisdictional minimum of this court, and that is subject to proof at time of trial.

## SEVENTH CLAIM FOR RELIEF

### (Promissory Estoppel, Against Old Gringo US, Old Gringo MX, Tarut, and Ferry)

109.   Plaintiff hereby incorporates by reference Paragraphs 1 through 108 of this Complaint as though fully set forth herein.

110.   Defendants have reneged on their promises to grant the Ownership Interest to Plaintiff under the terms and conditions of the Agreement reached in January of 2013.

111.   Defendants are estopped from denying their obligation to fulfill their promises to and compensate Plaintiff under the terms of the Agreement, and it is necessary to enforce Defendants' promises as alleged hereinabove to avoid injustice to Plaintiff.

112.   As a direct and proximate result of the foregoing acts of Defendants, and Plaintiff's reasonable, foreseeable and justifiable reliance thereon, Plaintiff has suffered general, incidental, and consequential damages, which damages are in excess of the jurisdictional minimum of this court and in an amount to be established at trial.

## EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment, Against Old Gringo US, Old Gringo MX, Tarut and Ferry)

113.   Plaintiff incorporates by reference Paragraphs 1 through 112 of this Complaint as though fully set forth herein.

114.   As a result of the actions described hereinabove, Defendants were allowed to receive the benefits of Plaintiff's expertise, services, designs, and work without providing the corresponding and agreed-upon benefits to Plaintiff pursuant to the Agreement and also pursuant to the promises and representations that Defendants made to Plaintiff and reinforced on numerous occasions through Defendants' words and conduct.

115.   By their actions described above, Defendants have received Plaintiff's expertise, services, designs, work and the benefits thereof, and acquired that expertise and work and those services, designs and benefits based on promises that have not been fulfilled, enriching Defendants in a manner making it unjust for them to receive such benefits without compensating Plaintiff in an appropriate amount.

116.   Through the facts and conduct alleged hereinabove, Defendants have been unjustly enriched at Plaintiff's expense in that they have received Plaintiff's expertise, designs, work and services without properly compensating her.

117.   As a result of the facts and conduct alleged hereinabove, Plaintiff would suffer unconscionable injury from any refusal to enforce the Agreement and/or recognize and enforce the Ownership Interest.

118.   Defendants have been unjustly enriched in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief and for judgment against all Defendants as follows:

1.   For compensatory damages, including loss of earnings, income and profits, loss of future earnings, and other general, consequential and incidental damages, according to proof;

2.   For general, mental and emotional distress damages according to proof;

3.   For punitive damages on each cause of action for which they are awardable;

4.   For an award of interest, including prejudgment interest, at the legal rate;

5.   For an award of litigation costs and attorney fees as awardable on each cause of action pursuant to any available basis;

**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**

6.      For an order directing that Defendants specifically perform the Agreement concerning the Ownership Interest that Defendants promised to Plaintiff;

7.      For an order directing an accounting by Defendants of the basis for the calculation of any amounts awarded against Defendants and to Plaintiff;

8.      For costs of suit incurred; and

9.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all claims and causes of action so triable.

Dated: September 28, 2017                    NORRIS LAW GROUP, P.C.

By: _____
                                                  */s/  Matthew J. Norris*
Matthew J. Norris
Attorneys for Plaintiff MARSHA WRIGHT

**PLAINTIFF MARSHA WRIGHT'S COMPLAINT AND DEMAND FOR JURY TRIAL**