# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA WRIGHT,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>YAN FERRY, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 17-cv-1996-BAS-NLS<br><br>**ORDER DENYING DEFENDANT YAN FERRY'S MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

Presently before the Court is a motion to dismiss filed by Defendant Yan Ferry ("Ferry") pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5) for lack of personal jurisdiction and insufficient service of process. (ECF No. 8.) Plaintiff Marsha Wright has opposed (ECF No. 15) and Ferry has replied (ECF No. 16.) For the reasons herein, the Court denies the motion to dismiss in its entirety.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Marsha Wright is a citizen and resident of the state of Texas. (ECF No. 1, Compl. ¶3.) Plaintiff worked as a designer on a full-time oral contract basis for corporate Defendants Old Gringo, Inc. ("OGI") and Old Gringo, S.A. de C.V. ("OGSA") beginning in 2005, and became the head designer for both corporations

– 1 –

in 2008. (*Id.* ¶11.) OGI is incorporated in and has its principal place of business in California (*Id.* ¶4.) OGSA is incorporated in Mexico with its principal place of business in Guanajuato, Mexico. (*Id.* ¶7.) OGSA is allegedly a "corporate affiliate and/or sister company of [OGI]," and both corporations are "under identical ownership or ownership at least partially in common . . . ." (*Id.* ¶13.) Defendants Ernest Tarut ("Tarut") and Ferry allegedly (1) "owned controlling interests in both [OGI] and [OGSA]"; (2) "were officers, directors and/or principals" of both corporations; and (3) were authorized to enter into contracts on behalf of both corporations. (*Id.* ¶57.) Ferry resides in Mexico and is a dual citizen of Mexico and France. Tarut resides in and is a citizen of California. (*Id.* ¶¶5–6.)

Plaintiff alleges that the business activities of OGSA were limited to manufacturing. (Wright Decl. ¶21.) "[OGSA] did not sell, market, or engage in customer service; those activities were exclusively undertaken by [OGI]." (*Id.*) Ferry does not dispute this allegation. (*See* Ferry Decl. ¶¶1-10, ECF No. 8.) Plaintiff alleges that she had regular contact with Ferry concerning her work. (ECF No. 15, Wright Decl. ¶¶9–10.) Ferry supervised her work and had final approval over which of her designs would ultimately be used by OGI and OGSA. (*Id.*)

In January 2013, Plaintiff allegedly entered into an oral agreement with Tarut and Ferry whereby Plaintiff would receive a five percent "equity stake and/or ownership interest in both [OGI] and [OGSA]" for her continued work for both corporations. (Compl. ¶¶18, 55.) In that same meeting, Ferry and Tarut agreed to increase her salary and performance bonuses "in recognition of Plaintiff's contributions and continued provision of designs, services and expertise, in addition to and not as a substitute for, Plaintiff's newly created 5% ownership interest in the two companies." (*Id.* ¶¶20–21, 55.) After the January 2013 meeting, Plaintiff received her increased salary and performance bonuses. (*Id.* ¶21.) However, Plaintiff never received written confirmation as to her alleged newly acquired five percent ownership interest in OGI and OGSA. Finally, on July 1, 2016, Plaintiff, through

– 2 –

legal counsel, sent a letter to Tarut and Ferry demanding they acknowledge the prior oral agreement. Neither Defendant responded. (*Id.* ¶¶47–53.)

Based on the foregoing, Plaintiff asserts the following eight causes of action[1]: (1) breach of contract; (2) fraud and fraudulent misrepresentation; (3) specific performance; (4) promissory fraud; (5) concealment; (6) negligent misrepresentation; (7) promissory estoppel; and (8) unjust enrichment. (Compl. ¶¶54–118.)

### B. Plaintiff's Efforts to Serve Ferry

Plaintiff's registered process server served Ferry with a copy of the summons and complaint via substitute service under California law on December 1, 2017 at OGI's headquarters located in California. (Opp'n at 2, ECF No. 15.) The process server attempted to personally serve Ferry at the headquarters twice before resorting to substitute service. (Goodwin Decl. at 4, ECF No. 6.) Thereafter, the process server left the summons and complaint with Patricia Simental, "the responsible person in charge of [OGI's] office and its registered agent for service of process." (Opp'n at 3.) Plaintiff served Ferry at OGI's corporate office on the ground that it is his "usual place of business" within the meaning of California Code of Civil Procedure Section 415.20(b). (*Id.* at 2–3.) The Court now turns to the merits of Ferry's challenge to service and personal jurisdiction.

## II. LEGAL STANDARD

### A. Service of Process

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may challenge any departure from the proper procedure for serving the summons and complaint as "insufficient service of process." FED. R. CIV. P. 12(b)(5). Service of process is a "formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486

---

[1] Plaintiff asserts each cause of action against all four Defendants: OGI, OGSA, Ernest Tarut, and Yan Ferry.

U.S. 694, 700 (1988). Once service of process is challenged, the plaintiff bears the burden of establishing that service was valid under Federal Rule of Civil Procedure 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir.2004) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir.1986)).

### B. Personal Jurisdiction

Rule 12(b)(2) allows a party to move for dismissal based on a lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). Personal jurisdiction is an essential element of a court's jurisdiction and, without it, a court is "powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 575 (1999). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800–01 (9th Cir. 2004). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Id*. at 801. Therefore, absent traditional bases for personal jurisdiction (*i.e*., physical presence, domicile, and consent), the Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the forum state, "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

As the party seeking to invoke this Court's jurisdiction, Plaintiff bears the burden of establishing that this Court has personal jurisdiction over Defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs*., 557 F.2d 1280, 1285 (9th Cir. 1977)). The *prima facie* showing is achieved by producing admissible evidence which, if believed, would sufficiently establish personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The court accepts uncontroverted facts in the complaint as true. *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011). Jurisdictional facts,

however, cannot be established by nonspecific, conclusory statements. *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (although liberally construed, the complaint "must contain something more than mere conclusory statements that are unsupported by specific facts").

## III. DISCUSSION

### A. Substitute Service on Ferry Was Effective

Ferry argues that substitute service was improper because OGI's headquarters were not his "dwelling or usual place of abode" as required by Federal Rule 4(e)(2), nor was it was Ferry's "usual place of business" as required by California Code Civil Procedure section 415.20(b). (ECF No. 8.) Ferry asserts that he does not reside or work in California. (Ferry Decl. ¶3.) In opposition, Wright argues that Ferry is subject to substitute service at OGI's California headquarters because: (1) Ferry is an officer and director of OGI; and (2) "Ferry's business address on [OGI's] most recent Statement of Information filed with the California Secretary of State is listed as Old Gringo's corporate office in San Diego."[2] (Opp'n at 2–3.) The Court agrees that Wright properly served Ferry.

Under Federal Rule of Civil Procedure 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in a state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Wright elected to follow California's substitute service law. (Opp'n at 2.) That law permits substitute service on a defendant if the plaintiff, acting with reasonable diligence, cannot serve process by ordinary methods. *See* Cal. Code. Civ. Proc. § 415.20(b). The statute provides that:

> If a copy of the summons and complaint cannot with *reasonable diligence* be personally delivered to the person to be served … a summons may be served by leaving a copy of the summons and

---

[2] Indeed, Ferry is the first listed director of the company, and the only other director listed is Ernest Tarut. (Opp'n at 3.)

complaint at the person's dwelling house, usual place of abode, *usual place of business*, or usual mailing address … in the presence of … a person apparently in charge of his or her office, place of business, or usual mailing address … and by thereafter mailing a copy of the summons and of the complaint by first class mail … served at the place where a copy of the summons and complaint were left.

CAL. CODE CIV. PROC. §415.20(b) (emphasis added). California's substitute service statute is "liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant." *Ellard v. Conway*, 114 Cal. Rptr. 2d 399, 402 (Cal. Ct. App. 2001) (citing *Bein v. Brechtel-Jochim Grp., Inc.*, 8 Cal. Rptr. 2d 351, 353 (Cal. Ct. App. 1992)). With the law's requirements and underlying construction in mind, the Court addresses how Wright has satisfied the requirements of this statute.

### 1. Plaintiff Exercised "Reasonable Diligence"

Although Ferry does not address whether Wright acted with reasonable diligence before resorting to substitute service, this is a threshold issue before substitute service may be used under California law. Ordinarily, "two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 613 (C.D. Cal. 1995) (quoting *Espindola v. Nunez*, 245 Cal. Rptr. 596, 598 (Cal. Ct. App. 1988)). Here, Wright's process server attempted to personally serve Ferry twice at OGI's headquarters before resorting to substitute service. (Goodwin Decl. at 4.) The first attempt at 5:00 a.m. on November 27, 2017 may be questionable given the likelihood that the office would be closed. But Wright's process server did attempt a second time on November 28, 2017 during regular business hours. (*Id.*) Considering the attempts at service overall and the liberal construction given to California's substitute service statute, the Court concludes that Plaintiff has shown reasonable diligence.

### 2. Ferry Has a "Usual Place of Business" Within the Scope of Section 415.20(b)

The crux of Ferry's challenge to service is that OGI's California headquarters

– 6 –

do not constitute his "usual place of business" within the meaning of California Code Civil Procedure section 415.20(b). (ECF No. 8.) The Court does not agree.

Although the term "usual place of business" is not defined, commentary to the statute indicates that it includes a defendant's "customary place of employment" or his or her "own business enterprise." JUDICIAL COUNCIL COMM. Cal. Code. Civ. Proc. § 415.20(b). Two cases demonstrate the broad scope of the term. In *Commercial Judgment Recovery Fund 1 LLC v. A2Z Plating Co.*, substitute service was properly affected at the defendant's "usual place of business" because the defendant was Cambridge's CEO at the time of service. No. SACV 11–0572 DOC (RNBx), 2011 WL 2941029, at *4 (C.D. Cal. July 15, 2011) [hereinafter "*Commercial Judgment*"]. The court found that service was proper although the defendant lived outside the United States at the time of service and that his activity at Cambridge was only "sporadic." *Id.*; *see also Coomes v. Shamji*, 260 Fed. App'x 988 (9th Cir. 2007) (finding that substitute service was effective because the defendant invested in the business and assisted the person in charge of that business, even though the assistance rendered was sporadic). Similarly, in *J&J Sports Prod., Inc. v. Castellon*, service was properly completed at the defendant's "usual place of business"—a restaurant where he was vice president and director. No. 15-cv-01941-WHO, 2015 WL 6089898, at *2 (N.D. Cal. Oct. 16, 2015) [hereinafter "*J&J Sports*"]. It made little difference that the defendant only occasionally worked there and worked full time for another business. *Id.* Taken together, *Commercial Judgment* and *J&J Sports* counsel that a defendant will be deemed to have a "usual place of business" at the corporate offices of a corporate entity where he is an officer or director, and conducts some business activities there.

Here, Ferry lived out of the United States when service was effected. However, Ferry concedes that he is an "owner and officer" of OGI.[3] (Ferry Decl. at

---

[3] Plaintiff alleges that Ferry owned approximately a 47.5% of OGI and OGSA. (Wright Decl. ¶5; Pak Decl. ¶8, ECF No. 15; Greenberg Decl. ¶6, ECF No. 15.)

– 7 –

1.) He is listed as one of only two directors of OGI and his business address in California is listed as OGI's California headquarters on the Statement of Information on file with the California Secretary of State. (Opp'n at 2–3.) Additionally, Ferry allegedly "supervised Plaintiff's business-related activities for years, all for the benefit of [OGI]." (Opp'n at 13; Wright Decl. ¶9.) Ferry does not challenge these allegations. (*See* Ferry Decl. ¶¶1–10.) Given Ferry's director status and business activities with OGI, the Court concludes that OGI's California headquarters is a "usual place of business" for Ferry within the meaning of California Code Civil Procedure section 415.20(b). Accordingly, service on Ferry was proper under California law and, consequently, under Rule 4(c).

**B.     Plaintiff Has Shown Personal Jurisdiction Over Ferry Exists**

Ferry argues that the Court lacks personal jurisdiction over him because he lacks sufficient contacts with California. (ECF No. 8 at 9–10.) He alleges that he has never lived in California, he is not licensed to do business in California, and only goes to California "a few times a year to meet about the joint business of [OGI] and [OGSA]." (Ferry Decl. ¶¶3–4, 7.)

In opposition, Plaintiff argues that although Ferry resides in Mexico, his contacts with California are sufficient given that:

> Ferry's entire role in the business of [OGI], and therefore his entire contract with Plaintiff, depended on his engagement in a systematic pattern of affirmative conduct supervising, directing, and promoting the transaction of substantial business by [OGI] within the state of California, including the use of Plaintiff's designs to sell [OGI's] products in California and other states… Moreover, through the contract with Plaintiff at the heart of this lawsuit, Ferry agreed to extend a minority ownership interest in OGI… to Plaintiff.

(Opp'n at 11.) The Court finds that although Wright has failed to show general jurisdiction over Ferry, she has made a *prima facie* showing of specific jurisdiction.

### 1.     Wright Has Not Made a *Prima Facie* Showing of General Jurisdiction Over Ferry

Plaintiff concedes that "the standard for general jurisdiction is quite high."

– 8 –

1 (Opp'n at 5.) Recognizing the insufficient factual record to support general
2 jurisdiction, she requests that the Court permit jurisdictional discovery to establish
3 the propriety of exercising general jurisdiction over Ferry.

4 General jurisdiction allows a court to hear any and all claims against a
5 defendant regardless of whether the claims relate to the defendant's contacts with
6 the forum state. *See Schwarzenegger*, 374 F.3d at 802 ("[A] finding of general
7 jurisdiction permits a defendant to be haled into court in the forum state to answer
8 for any of its activities in the world."). The "paradigm" for general jurisdiction over
9 an individual is the "individual's domicile". *Goodyear Dunlop Tires Operations,*
10 *S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "Unless a defendant's contacts with a
11 forum are so substantial, continuous, and systematic that the defendant can be
12 deemed to be 'present' in that forum for all purposes, a forum may exercise only
13 'specific' jurisdiction . . . ." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*
14 *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). Indeed, "[a]n individual's
15 frequent visits to a forum, or even his owning property in a forum, do not, alone,
16 justify the exercise of general jurisdiction over him." *Henricks v. New Video*
17 *Channel America, LLC*, No. 2:14-CV-02989-RSWL-SSx, 2015 WL 3616983, at *4
18 (C.D. Cal. June 8, 2015); *see also Swensen v. Murchison*, 507 F. Supp. 509, 512
19 (N.D. Cal. 1981).

20 Here, there is little question that OGI is subject to general jurisdiction in
21 California. OGI is incorporated and has its principal place of business in California.
22 (Compl. ¶4.) However, this is not sufficient to show that a California forum may
23 properly exercise general jurisdiction over Ferry personally. Plaintiff alleges that
24 because "Ferry and [OGI] are alter egos of one another," general jurisdiction is
25 proper. (Opp'n at 7.) There are insufficient facts in the record to support this legal
26 conclusion and Plaintiff has made no attempt to support the exercise of general
27 jurisdiction now. Because the Court concludes that Wright has shown that the
28 exercise of specific jurisdiction over Ferry is proper this stage, the Court declines

– 9 –

her request to permit jurisdictional discovery.

## 2. Wright Has Made a *Prima Facie* Showing of Specific Jurisdiction Over Ferry

Ferry argues that the Court lacks personal jurisdiction over him because Plaintiff failed to plead sufficient facts tying Ferry's alleged fraudulent conduct to California. (ECF No. 8, at 9–10.) He claims that Plaintiff's allegations only show that Ferry's fraudulent conduct took place in Mexico, and Texas, not California. (*Id.*)

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject him to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists if: (1) the out-of-state defendant purposefully availed him or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001). The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

### a. Purposeful Availment

Under the first prong, a plaintiff must establish that the defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802. As the Ninth Circuit explained in *Sinatra*:

– 10 –

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) (citations omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (citations and internal quotations omitted). To determine whether the defendant "purposefully established minimum contacts within the forum," courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Ferry argues that he did not purposefully avail himself of the privilege of doing business in California. (ECF No. 8 at 9.) Relying on *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008), Ferry argues that the alleged agreement with Wright did not create any continuing relationships or obligations in California. (ECF No. 8, at 10.) The Court is not persuaded.

Courts find purposeful availment when such ongoing obligations exist. *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991). *Roth* involved a contract dispute concerning the rights to adapt a book into a film. *Id.* at 619. Although the defendant lived in Mexico and never resided in California, the Ninth Circuit found that he purposefully availed himself of the privilege of conducting business in California because work for the film would have been performed in California. *Id.* at 622. The Ninth Circuit observed that, "[t]hough the shooting most likely would have taken place in Brazil, all of the editing, production work, and advertising would have occurred in California." *Id.* In other words, the contract was not a "one-shot deal," but rather "most of the future of the contract would have centered on the forum." *Id.* Indeed, the defendant's compensation "would have depended upon activities in

California." *Id.* Consequently, looking at the "economic reality," the court concluded that the "contract's subject would have continuing and extensive involvement with the forum." *Roth*, 942 F.2d at 622; *see also Burger King*, 471 U.S. at 480 (finding personal jurisdiction because the Michigan franchisee defendant had entered into a relationship that "envisioned continuing and wide-reaching contacts with Burger King in Florida [the forum]").

Here, the alleged oral agreement between Ferry and Wright did not involve a one-time sale of one good, but rather an ongoing obligation with Wright that depended on activities in California. *Boschetto* is therefore inapposite because involved the one-time sale of a vehicle where the buyer happened to reside in the forum state. *See Boschetto*, 539 F.3d at 1017 (noting that "once the car was sold the parties were to go their separate ways"). Here, Ferry allegedly promised Wright a five percent continuing ownership interest in OGI and OGSA. (Compl. ¶18.) Ferry is not only an owner and director of both corporations, he also allegedly supervised Wright's business activities, and had final approval on Wright's designs. (Ferry Decl. ¶2; Wright Decl. ¶9.) Moreover, OGI allegedly transacts all of its sales, distribution, marketing, and customer service activities at its headquarters in California. (Opp'n at 14.) Because Wright's business activities directly influenced OGI's sales, Wright's compensation depended upon Wright's activities in California. *See Roth*, 942 F.2d at 622.

Ferry also argues that "[b]ecause the alleged wrongful conduct (the promises made to Ms. Wright regarding her alleged ownership interest in [OGI and OGSA]) took place in Texas and Mexico, the conduct giving rise to the nonresidents' claims occurred elsewhere so that the California court cannot claim specific jurisdiction." (ECF No. 16, at 6) (internal quotation marks omitted).

However, the fact that the alleged wrongful conduct took place outside of California is not dispositive to the purposeful availment issue. *See Flynt Distrib. Co., v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984) (finding personal jurisdiction

in California even though the agreement and negotiations took place in New York because the defendants "knew they were negotiating with a California corporation."). Courts analyzing purposeful availment do not solely look at where the wrongful conduct took place, they also look at the economic realities and the contemplated future consequences of the agreement. *See Burger King*, 471 U.S. at 479; *Roth*, 942 F.2d at 622. Here, the economic realities and contemplated future consequences of the agreement with Wright were centered in California. Furthermore, Plaintiff alleges that "throughout 2013, 2014, and 2015, Plaintiff had regular and repeated interactions with Tarut and Ferry in the course of her business with [OGI and OGSA], including e-mail contacts, telephone contacts, and in-person meetings at numerous events such as trade shows and regular meetings in Chula Vista, [(California)] Leon, [(Mexico)] and elsewhere." (Compl. ¶25.) Based on this allegation, Ferry's interactions with Plaintiff show that at least some of the alleged fraudulent conduct took place in California. By virtue of the alleged agreement with Plaintiff, Wright has shown that Ferry purposefully availed himself of the privilege of doing business in California.

### b. Arising Out of Forum-Related Activities

The second prong of the specific jurisdiction test requires that plaintiff's claim arise out of, or relate to, defendant's forum-related activities. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). In assessing this prong, courts use a traditional "but for" causation analysis—*i.e.*, the plaintiff must show that the claim would not have arisen "but for" the defendant's conduct directed at the forum state. *Id*.

Ferry argues that jurisdiction is improper because there is no substantial connection between his activities in California and Wright's claim. (ECF No. 8, at 10.) Moreover, Ferry argues that "[j]urisdiction may be invoked only where the actor committed an out-of-state act *intending* to cause effects in California . . . ." (*Id*. at 11 (quoting *Goehring v. Superior Court (Bernier)*, 73 Cal. Rptr. 2d 105, 114 (Cal. Ct.

– 13 –

17cv1996

App. 1998).) While Ferry properly states the law, his application of it here is not persuasive. As explained, Ferry intended to cause effects in California by (1) allegedly entering into an agreement where Wright would receive a five percent ownership interest in OGI, and by (2) supervising Wright's business activities which directly affected OGI's sales. Wright's claims arise out of the alleged agreement to grant her an ownership interest in a California corporation, without which Wright would not have allegedly been injured. Accordingly, Wright has satisfied the first two prongs of the specific jurisdiction test.

### c. Reasonableness

Once a plaintiff satisfies the first two prongs of the specific jurisdiction test, the burden shifts to defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 480. In determining whether jurisdiction is reasonable, the Court considers seven factors: (1) the extent of a defendant's purposeful interjection into the forum; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See CollegeSource*, 653 F.3d at 1079 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002)). "No one factor is dispositive; a court must balance all seven." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). The Court considers each factor in turn.

First, the Ninth Circuit has held that the first factor "parallels the question of minimum contacts" in determining the reasonableness of exercising specific jurisdiction. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993); *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1091 (C.D. Cal. 2012). As such, because Ferry purposefully availed himself of the benefits of California by allegedly entering into the agreement with Plaintiff, the Court finds

that Ferry purposefully interjected himself in California, thus, supporting a finding of reasonableness.

Second, although Ferry resides in Mexico, the inconvenience of litigating in California is not so great as to deprive him of due process. Ferry is an owner and director of a California corporation and makes at least a few visits to California annually to manage both OGI and OGSA. (Wright Decl. ¶¶4, 13-18; Pak Decl. ¶¶11–15, ECF No. 15; Opp'n at 19.) Thus, this factor weighs slightly against Ferry. Third, Ferry does not argue that the exercise of jurisdiction in California would conflict with the sovereignty of Mexico. Because Plaintiff's Complaint only raises questions of California and U.S. law, this factor favors Plaintiff. Ferry fails to specifically address the fourth factor as well. Either way, it weighs slightly against Ferry because California "has an interest in regulating tortious conduct" that affects California. *Data Disc*, 557 F.2d at 1289.

Fifth, the efficient resolution factor "focuses on the location of the evidence and witnesses[.]" *Panavision*, 141 F.3d at 1323. Here, Ferry argues that "the vast majority of the evidence pertaining to the negotiation, creation and execution of the alleged agreement and alleged misrepresentation is housed in Leon, Mexico." (ECF No. 8, at 12.) In response, Wright argues that because OGI and Tarut—both based in California—would play a central role in any trial, "California would be the most efficient forum for any witnesses and evidence emanating from those parties." (Opp'n at 21.) On balance, the factor cuts both ways and, therefore, is neutral. Considering that this factor "no longer weigh[s] heavily given the modern advances in communication and transportation," *Panavision*, 141 F.3d at 1323, agreeing with Ferry would not compel the conclusion that the exercise of jurisdiction over him is unreasonable.

Sixth, "the plaintiff's convenience is not of paramount importance" to the reasonableness inquiry. *Dole Food*, 303 F.3d at 1116; *see also Panavision*, 141 F.3d at 1324 ("In evaluating the convenience and effectiveness of relief for the plaintiff,

– 15 –

17cv1996

we have given little weight to the plaintiff's inconvenience."). Plaintiff contends that it would be inconvenient for Plaintiff to litigate this case in Mexico considering that OGI and Tarut would likely dispute their amenability to a Mexican jurisdiction. There is no evidence of this here. At most, the Court finds this factor neutral.

Seventh, Ferry does not put forth any available alternative forum for this litigation. Either way, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource*, 653 F.3d at 1080 (quoting *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 n.19 (9th Cir. 2011), *rev'd on other grounds*, 134 S. Ct. 746 (2014)). Ferry has not made that showing. Thus, this factor does not impact the Court's analysis.

Having balanced the relevant factors, the Court finds that Ferry has not presented a compelling case that the exercise of jurisdiction in California would be unreasonable. Wright has made a *prima facie* showing that Ferry purposefully directed his activities at California, and that these activities gave rise to, or relate to, Wright's claims. Thus, the Court concludes that Ferry is subject to specific jurisdiction in California with respect to Wright's claims.

### 3. Ferry is Not Protected by the Fiduciary Shield Doctrine

In his reply brief, Ferry argues that he is not subject to personal jurisdiction because he is protected under the fiduciary shield doctrine. (ECF No. 16, at 7–10.) Ferry failed to raise this argument in his opening brief in support of his motion to dismiss. It would be appropriate for the Court to disregard the argument because of this failure. *State of Nev. V. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990). Even considering the argument on the merits, the Court finds it unpersuasive. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). Here, however, Ferry is not just merely associated with the actions taken by OGI and OGSA. Rather, he was a "guiding spirit" or "central figure" along with his

co-director, Tarut, behind the alleged agreement with Wright. *See id.* at 524. Thus, Ferry may not claim the protection of the fiduciary shield doctrine to preclude the exercise of jurisdiction over him. *See also Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11–5764–RSWL (MANx), 2011 WL 4480639, at *5 (C.D. Cal. Sept. 26, 2011).

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Ferry's motion to dismiss (ECF No. 8) for lack of personal jurisdiction and insufficient service. Ferry is **ORDERED** to file an answer to the Complaint (ECF No. 1) **no later than May 11, 2018**.

**IT IS SO ORDERED.**

DATED: April 20, 2018

Hon. Cynthia Bashant
United States District Judge