1
2
3
4
5
6
7
8
## UNITED STATES DISTRICT COURT
9
### SOUTHERN DISTRICT OF CALIFORNIA
10
11 MARSHA WRIGHT,

Plaintiff,

v.

OLD GRINGO INC, *et al*.,

Defendants.

Case No. 17-cv-1996-BAS-MSB

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[ECF No. 38]**

**AND**

**(2) DENYING AS MOOT PLAINTIFF'S MOTION TO DENY OR CONTINUE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[ECF No. 51]**

This case concerns Defendants' alleged January 2013 promise to make Plaintiff Marsha Wright ("Wright") "a millionaire" by becoming a 5% owner of the two Defendant companies that sell Western-style boots in the United States and Mexico. After seven months of discovery, Defendants Old Gringo, Inc. ("OGI"), Ernest Tarut ("Tarut"), and Yan Ferry ("Ferry") (together, "Defendants") seek to

boot Wright's eight claims by moving for summary judgment pursuant to Rule 56. (ECF Nos. 38, 52.)[1]  Wright opposes the motion.  (ECF No. 50.)  In connection with Defendants' motion, she has filed a Rule 56(d) motion requesting denial or deferral of a decision on the summary motion pending further discovery on damages.  (ECF No. 51.)  For the reasons herein, the Court (1) grants in part and denies in part Defendants' motion for summary judgment and (2) denies as moot Wright's Rule 56(d) motion.

## BACKGROUND[2]

Marsha Wright is a Texas-based professional designer of Western apparel, including boots and handbags.  (ECF No. 50-1 Ex. A Marsha Wright Decl. ("Wright Decl.") ¶¶ 3, 21.)  Defendants OGI and Old Gringo, S.A. de. C.V. ("OGS") (together, the "OG Entities") make and sell Western-style boots.  (ECF No. 53 Joint Statement of Undisputed Material Facts ("JSUF") ¶ 1.)  Defendants Tarut and Ferry are the majority owners of the OG Entities.  (Wright Decl. ¶ 10.)

Wright designed boots for Defendants from 2005 until her resignation in October 2015, occupying the role of "head designer" starting in 2008.  (JSUF ¶ 2; Wright Decl. ¶¶ 4–6.)  At all times, she was paid as an independent contractor for her

---

[1] Defendant Old Gringo, S.A. de C.V. ("OGS"), a Mexican corporation with no agent for service of process in the United States, had yet to be served in Mexico pursuant to the Hague Convention at the time Defendants filed their motion for summary judgment.  (ECF No. 27.)  As of the date of this opinion, OGS was served with the Complaint and has filed a motion to quash or dismiss the Complaint for lack of personal jurisdiction.  (ECF No. 61.)  Although OGS is not a summary judgment movant, the summary judgment arguments raised by the moving Defendants and their disposition herein are no less applicable to OGS.

[2] The Court outlines the relevant background based on the parties' Joint Statement of Undisputed Material Facts (ECF No. 53) and summary judgment submissions.  Defendants have lodged various evidentiary objections to Wright's submissions (ECF Nos. 52-1–52-9) and Wright has nestled a few objections in her lengthy opposition to summary judgment (ECF No. 50 at 5 n.1).  It is unnecessary to expressly rule on many of the objections because they would not alter the Court's resolution of the summary judgment motion.  However, "[t]o the extent that the Court relied on objected-to evidence, it relied only on admissible evidence and, therefore, the objections are overruled."  *Capitol Records, LLC v. BlueBeat, Inc*., 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010).

services.  (JSUF ¶ 43; Wright Decl. ¶¶ 7, 9.)

***Relevant Facts.***  In January 2013, Wright, Ferry and Tarut met in León, Mexico.  (JSUF ¶ 3; Wright Decl. ¶ 10.)  It is undisputed that during this meeting, Ferry and Tarut "raised [Wright's] compensation, to a figure that Defendants paid [her] for the remainder of the time that [she] was with Old Gringo" in an oral contract.  (JSUF ¶ 4; Wright Decl. ¶ 10.)  Specifically, Wright would and did receive a $180,000 salary.  (JSUF ¶ 4; ECF No. 50-12 Steve Greenberg Decl. ("Greenberg Decl.") ¶ 12; *see also* Wright Dep. at 128:09–20.)

Spurring the present wrangle amongst the parties is what Wright contends also happened at the meeting: she alleges that Tarut and Ferry promised her a 5% ownership interest (the "Ownership Interest") in both OG Entities.  (JSUF ¶ 5; Wright Decl. ¶ 10.)  Wright contends that Ferry and Tarut told her they could not put the Ownership Interest in writing because doing so would jeopardize Ferry's efforts to become a U.S. citizen.  (Wright Decl. ¶ 12.)

In the weeks and months following the January 2013 meeting, Wright told her accountant and several friends and family members that she had received the Ownership Interest.  James Roberson, Wright's accountant, and Melissa Kruckenberg, a senior bookkeeper with Roberson's accounting firm, state that Wright told them "the owners of . . . Old Gringo, Inc., as well as its Mexican affiliate company, had granted her a 5% ownership interest in Old Gringo."  (ECF No. 50-5 James E. Roberson Decl. ("Roberson Decl.") ¶ 5; ECF No. 50-11 Melissa Kruckenberg Decl. ("Kruckenberg Decl.") ¶ 6.)  Jeffrey Green (Wright's brother), Becky Green (Wright's sister-in-law), Angela Fresh (Wright's friend), and Lee Wright (Wright's child) similarly all state that Wright told them Tarut and Ferry "had granted her a 5% ownership interest" in the OG Entities.  (ECF No. 50-7 Jeffrey Green Decl. ("J.G. Decl.") ¶ 4; ECF No. 50-8 Becky Green Decl. ("B.G. Decl.") ¶ 4; ECF No. 50-9 Angela Fresh Decl. ("Fresh Decl.") ¶ 5; ECF No. 50-10 Lee Wright Decl. ("L.W. Decl.") ¶ 14.)  Wright explained, at least to her sister-in-law and friend,

why she had received the Ownership Interest. Becky Green testified that Wright "told me that Old Gringo had agreed to give her a share of the company for . . . recognition of her hard work." (JSUF ¶¶ 20–21; B.G. Dep. at 11:21–23.) And Wright's friend, Angela Fresh, testified that Wright told her "they were going to give her a percentage of the business for—for the work she had—you know, had accomplished for them and . . . to show their appreciation." (Fresh Dep. at 16:12–15.)

Wright contends that, after the January 2013 meeting, the Ownership Interest "only rarely came up in discussions" with Ferry and Tarut "and only in the sense that [they] repeatedly promised to get it to [her] in writing at some date in the future when they could." (Wright Decl. ¶ 44.) Wright further contends that Tarut told her "on many occasions" in 2014 and 2015 "things to remind [her] that [she] was now an owner or a 'partner' in the Old Gringo companies, and needed to work extra hard[.]" (*Id.* ¶¶ 46–47.)

On October 4, 2015, Wright resigned from the OG Entities after unsuccessful negotiations she initiated in August and September 2015 with Ferry and Tarut to increase her compensation and receive additional money to employ her son. (JSUF ¶ 41; Wright Decl. ¶¶ 42–43.) Wright contends that she did not suspect that "the Ownership Interest might not be real" and she "still thought [she] was a part owner of the Old Gringo companies" when she resigned. (Wright Decl. ¶¶ 45, 48; Wright Dep. at 188:13–189:21.) Wright contends that "[o]nly after [she] resigned on October 4, 2015" did she "begin to suspect that there might be a problem with the Ownership Interest" "based on [] Tarut and [] Ferry's very unusual conduct in our business negotiations[.]" (Wright Decl. ¶ 49; Wright Dep. at 190:16–19.) Still believing that she owned 5% of the OG Entities, Wright asked Tarut about the alleged Ownership Interest in a June 2016 email, to which Tarut never responded. (Wright Decl. ¶¶ 49–50; Wright Dep. at 192:20–193:04.)

***Procedural History***. Wright commenced this action against OGI, OGS, Tarut,

– 4 –

and Ferry on September 28, 2017.  (ECF No. 1.)  She raises eight claims for: (1) breach of contract, (Compl. ¶¶ 54–65); (2) fraud and fraudulent misrepresentation, (*id*. ¶¶ 66–79); (3) specific performance, (*id*. ¶¶ 80–85); (4) promissory fraud, (*id*. ¶¶ 86–93); (5) concealment, (*id*. ¶¶ 94–103); (6) negligent misrepresentation, (*id*. ¶¶ 104–108); (7) promissory estoppel, (*id*. ¶¶ 109–112); and (8) unjust enrichment, (*id*. ¶¶ 113–118).  OGI and Tarut answered the Complaint on December 18, 2017 (ECF No. 3), and after an unsuccessful attempt to dismiss for lack of personal jurisdiction (ECF No. 19), Ferry answered on May 3, 2018 (ECF No. 21).  OGI, Tarut, and Ferry now move for summary judgment.  (ECF No. 38.)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper on "each claim or defense" "or the part of each claim or defense" on which summary judgment is sought when "there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party has the initial burden of demonstrating the absence of a genuine factual dispute, which it may satisfy by either affirmatively negating the nonmoving party's claim, or by demonstrating that the nonmoving party is unable to prove an essential element of that claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jones v. Williams*, 791 F.3d 1023, 1030 (9th Cir. 2015); *see also* J. Friedenthal, M. Kane, & A. Miller, *Civil Procedure* § 9.3, p. 457, n.81 (5th ed. 2015).  To meet this burden, the moving party cites to depositions, affidavits or declarations,

interrogatory answers, or other materials in the record. Fed. R. Civ. P. 56(c)(1).

Only if the moving party meets its initial burden must the nonmoving party go beyond its pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324; *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) ("[A] party cannot manufacture a genuine issue of material fact by merely making assertions in its legal memoranda"). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson*, 477 U.S. 242 at 252 (a "scintilla of evidence" in support of the nonmoving party is insufficient, rather "there must be evidence on which the jury could reasonably find for the [nonmoving party].").

At the summary judgment stage, it is not the Court's duty to locate the legal arguments or evidence which might show that summary judgment is or is not warranted. *See Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1249 n.4 (S.D. Cal. 2018) ("The Court should not have to 'search for truffles' in the evidentiary record submitted with the parties' motions to discover the facts supporting Plaintiff's claims.").

## DISCUSSION

### A.  Failure of Consideration

Defendants first argue that they are entitled to summary judgment on all eight claims based on the affirmative defense of failure of consideration. (ECF No. 38-1 at 5–6.) Defendants argue that any alleged 5% ownership interest or equity stake in the OG Entities "was only supported by past consideration," which "is insufficient to support an enforceable contract term." (*Id.*) Thus, according to Defendants, "[e]ach of Plaintiff's 8 causes of action fails[.]" (*Id* at 8.) Wright argues that Defendants

have waived this affirmative defense and, even if they have not, Defendants have not established the absence of consideration.  (ECF No. 50 at 4–6.)  The Court considers these arguments.

### 1.    Defendants May Raise this Defense Now

Rule 8 identifies failure of consideration as an affirmative defense which a responsive pleading must identify.  Fed. R. Civ. P 8(c)(1).  Defendants did not raise failure of consideration in their answers to the Complaint.  (ECF Nos. 3, 21.)  Wright therefore argues that Defendants cannot raise it now.  (ECF No. 50 at 4–5.)  The Court rejects Wright's argument.

Courts do not require strict compliance with Rule 8(c) such that the failure to initially plead an affirmative defense means that the defendant is forever precluded from raising the defense.  Rather, "[i]n the absence of a showing of prejudice, . . . an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *see also Magana v. N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997); *Healy Tibbits Const. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982).  It is within the discretion of the trial court to permit the assertion of an affirmative defense at summary judgment, provided that the nonmovant has an opportunity to respond.  *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010).

Wright appears to argue prejudice from the fact that Defendants did not assert failure of consideration in their answers.  To the extent Wright takes issue with the timing of the defense, mere delay is insufficient to demonstrate prejudice.  *See Ledo Fin Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997) ("Although [the plaintiff] suggests that the five-month delay in asserting the . . . defense amounted to an 'ambush,' it points to no tangible way in which it was prejudiced by the delay.").  And a new defense may be raised at summary judgment if it became available at the summary judgment stage.  *See Panaro v. City of North Las Vegas*, 432 F.3d 949, 951 (9th Cir. 2006) (holding that district court did not err in permitting defendants to raise

a new defense of exhaustion of administrative remedies at the summary judgment stage because the affirmative defense was not available until the summary judgment stage). Defendants indicate that they became aware of the facts necessary to raise the defense during Wright's deposition on October 10, 2018, which preceded their motion for summary judgment by nine days. (ECF No. 52 at 5.) The Court credits this representation because Wright's pleadings suggested that consideration supported an enforceable oral agreement for the Ownership Interest. (Compl. ¶¶ 55–56, 58; *see also id*. ¶¶ 18–19.) Thus, the Court does not find the defense untimely.

Wright does not otherwise show tangible harm that would result from raising the defense now. "Tangible harm" does not result from the possibility that an affirmative defense not initially pleaded in an answer could be meritorious. Courts have granted summary judgment on affirmative defenses not initially pleaded in an answer and raised for the first time at summary judgment. *See Sharer v. Oregon*, 481 F. Supp. 2d 1156, 1165 (D. Or. 2007) (granting summary judgment on statute of limitations defense); *Scott v. Garcia*, 370 F. Supp. 2d 1056, 1065 (S.D. Cal. 2005) (same). Rather, the "prejudice" a plaintiff must identify is procedural in nature, such as a failure or inability to conduct discovery on the defense, or a defendant's "11th hour" assertion of the defense after extensive litigation. *See Helton v. Factor 5, Inc*., 26 F. Supp. 3d 913, 921 (N.D. Cal. 2014) (prohibiting individual defendants from asserting affirmative defense raised for the first time two years and nine months after complaint was amended to add the relevant claims; finding that plaintiffs would be prejudiced because they would have no opportunity to conduct discovery on the issue); *Kaufman v. Unum Life Ins. Co. of Am.*, 834 F. Supp. 2d 1186, 1193 (D. Nev. 2011) ("We conclude . . . that [the defendant] has waived its statute of limitations defense due to the prejudice [the plaintiff] has suffered in having to confront the defense too late in the time line of the litigation.").

Although Wright nakedly asserts that she had "no opportunity to develop" discovery on the consideration defense, (ECF No. 50 at 4–5), additional discovery is

not necessary. For one, Wright does not even argue in her concurrently filed Rule 56(d) motion that this Court should deny or defer ruling on failure of consideration so that additional discovery can be had on this issue. (*See* ECF No. 51.) More importantly, additional discovery is not necessary for *Wright* to proffer facts about whether *she* provided or agreed to provide legally sufficient consideration at the time of the January 2013 meeting to render the alleged Ownership Interest enforceable in contract. Such facts are presumably within Wright's knowledge because she is an alleged party to the alleged oral agreement for the Ownership Interest. Wright has had the opportunity to show the Court that there is a triable factual issue regarding consideration in her opposition to summary judgment. *See Fontana v. City of Auburn*, No. C13-0245-JCC, 2014 WL 4162528, at *5 (W.D. Wash. Aug. 21, 2014) (permitting affirmative defense because *inter alia* the plaintiff had the opportunity to respond to defendants' arguments by briefing the issue and presenting evidence to the court). Accordingly, in its discretion, the Court will permit Defendants to raise failure of consideration now.

### 2.    Wright Fails to Show a Triable Issue on Consideration

"[I]n order for a contract to be enforceable under California law, it must impose binding obligations on each party." *Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir. 2002). Relatedly, "[i]t is hornbook law that a contract, to be enforceable, must be supported by consideration." *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 960 (S.D. Cal. 2007). "California courts have repeatedly refused to enforce gratuitous promises, even if reduced to writing in the form of an agreement." *Jara v. Suprema Meats, Inc.*, 18 Cal. Rptr. 3d 187, 195 (Cal. Ct. App. 2004). Importantly, "the consideration for a promise must be an act or a return promise, *bargained for and given in exchange for the promise*." *Simmons v. Cal. Inst. of Tech.*, 209 P.2d 581, 586 (Cal. 1949) (emphasis added). "'Past consideration cannot support a contract.'" *Patriot Sci. Corp.*, 504 F. Supp. 2d at 960 (quoting *Passante v. Mc William*, 62 Cal. Rptr. 2d 298 (Cal. Ct. App. 1997)); *Simmons*, 209 P.2d at 581 (no

valid consideration for a contract regarding royalties where the contract was made "in consideration of employment" and that phrase was construed as referring to the plaintiffs' past employment).

In the Complaint, Wright alleged that at the January 2013 meeting, she and Defendants formed a binding oral contract in January 2013 in which they agreed to provide Plaintiff with the Ownership Interest *and* an increased salary and performance bonuses, *both* in exchange for Wright's agreement to continue providing "expertise and services" to the OG Entities. (Compl. ¶¶ 55–56, 58; *see also id*. ¶¶ 18–19.) There was no suggestion that the Ownership Interest was based on Wright's past work for the OG Entities or that Wright could leave the OG Entities and still retain the interest. The pleadings thus suggested there was consideration.

Moving beyond the pleadings, however, Defendants introduce evidence showing that any Ownership Interest was granted because of Wright's past work. Most critically, Defendants proffer Wright's own deposition testimony: Wright testified that it was her understanding that even if she quit Old Gringo "the next day," she was entitled to the Ownership Interest because "[h]e told me, I just made you a millionaire." (JSUF ¶¶ 28–29; Wright Dep. at 37:12–20, 174:11–15.) Defendants also point to additional evidence. Wright's sister-in-law, Becky Green, testified that Wright "told me that Old Gringo had agreed to give her a share of the company for . . . recognition of her hard work." (JSUF ¶¶ 20–21; Becky Green Dep. at 11:21–23.) Wright's friend, Angela Fresh, similarly testified that Wright told her "they were going to give her a percentage of the business for—for the work she had—[] had accomplished for them and . . . to show their appreciation." (Fresh Dep. at 16:12–15.) Wright raises no evidentiary challenges to this testimony, nor does she address the testimony in any of her evidentiary submissions, including those from the *same* witnesses. (*See generally* ECF No. 50; Fresh Decl.; B.G. Decl.) Defendants argue, and the Court agrees, that this evidence supports the conclusion that the Ownership Interest was not provided in exchange for Wright's continued services to the OG

Entities. Defendants have therefore met their initial burden to show that they are entitled to summary judgment on the defense of failure of consideration.

With the burden shifted to Wright, Wright's counsel ropes in arguments that do not controvert Defendants' summary judgment showing. He first argues that "Defendants have not established that Plaintiff failed to give consideration for the Ownership Interest" because Plaintiff continued to perform work as an independent contractor for the OG Entities. (ECF No. 50 at 5.) Whether Wright continued to perform work for the OG Entities, however, is not the relevant issue. The relevant issue is whether the provision of the alleged Ownership Interest was *bargained in exchange for* Wright's continued provision of services as opposed to being given or promised because of Wright's past services to Defendants. *See Passante*, 62 Cal. Rptr. 2d at 302 ("As a matter of law, any claim by [Plaintiff] for breach of contract necessarily founders on the rule that consideration must result from a bargain."). Showing a genuine dispute of material fact on this issue is not a difficult task. All Wright need do is corral some facts which would suggest to a reasonable jury that, at the January 2013 meeting, Wright agreed to continue providing her services to the OG Entities in exchange for the alleged Ownership Interest, *i.e.* that she had an obligation to perform such services in exchange for the interest.

Wright, however, simply declares that she was "told" by Ferry that she would have a 5% ownership interest, a statement echoed by all her supporting declarants who similarly state that Wright said she was merely "granted" the interest. (Wright Decl. ¶ 10; *see also* J.G. Decl. ¶ 4; B.G. Decl. ¶ 4; Fresh Decl. ¶ 5; L.W. Decl. ¶ 14.) Wright also declares that even when she resigned after her failed attempt to negotiate higher compensation for her services, "I still thought I was a part owner of Old Gringo"—a belief she maintained even up to the present suit despite not having worked for and performed services for the OG Entities since October 2015. (JSUF ¶ 2; Wright Decl. ¶¶ 40, 48.) This evidence does not controvert Defendants' summary judgment showing that the Ownership Interest was supported by only past

consideration and did not require Wright to do anything in order to receive it. Wright's reliance on *Raichart v. Phillips*, 261 P.2d 777 (Cal. 1953), is thus misplaced. The evidence in that case showed that the consideration encompassed not only past services, but also additional assistance necessary to make the corporation a success after the date of the agreement. *Id.* at 780 (noting that "[t]he agreement in question recites a consideration indicating services and assistance in attempting to make this corporation a success. Assuming that all of the stock was sold, many things remained to be done, and . . . . there is evidence justifying the inference that Raichart was of assistance to Phillips both before and after the date of the agreement.").

Wright's counsel also argues that summary judgment is inappropriate because California law recognizes and enforces unilateral contracts. (ECF No. 50 at 6.) In a unilateral contract, "there is only one promisor" and "[a]ny act or forbearance by the promisee may constitute consideration for the promise and acceptance of that offer." *Faigin v. Signature Grp. Holdings, Inc*., 150 Cal. Rptr. 3d 123, 136 (Cal. Ct. App. 2012). The problem with this argument is twofold.

First, Wright's counsel in effect argues *both* that the facts show there was a bilateral contract for the Ownership Interest bargained in exchange for Wright's services *and* a unilateral offer for the Ownership Interest to be accepted by Wright's performance of services for the OG Entities. (*Compare* ECF No. 50 at 5 *with id*. at 6.) Unlike the pleading stage, summary judgment is not an opportunity to advance alternative arguments that require distinct factual scenarios. A bilateral contract and a unilateral contract are two different bulls, only one of which Wright can tame to defeat summary judgment. "A bilateral contract consists of mutual promises made in exchange for each other by each of the two contracting parties" whereas "a unilateral contract involves the exchange of a promise for a performance." *Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 785 (9th Cir. 2012). Because of these differences, the same facts cannot give rise to both types of contracts insofar as they concern the Ownership Interest.

Even if the Court disregards the bilateral contract theory, the evidence before the Court does not support counsel's unilateral contract theory. A unilateral contract requires that the promisor make an offer expressly conditioned on particular performance. *See Sateriale*, 697 F.3d at 792; *Harris v. Time, Inc*., 237 Cal. Rptr. 584, 587 (Cal. Ct. App. 1987) (a unilateral contract is formed when the offer "calls for performance of a specific act without further communication and leaves nothing for further negotiation."). The evidence before the Court, however, does not show that *Defendants* made an offer of the Ownership Interest *conditioned on* Wright's performance of providing services. Wright does not provide facts which concretely show that Defendants made an offer. As the Court has discussed, the evidence shows that Wright was "told" she had been "granted" the Ownership Interest. (Wright Decl. ¶ 10; *see also* J.G. Decl. ¶ 4; B.G. Decl. ¶ 4; Fresh Decl. ¶ 5; L.W. Decl. ¶ 14.) Wright distinguishes the agreement to pay increased compensation for her continued services to the OG Entities from the alleged agreement to provide her the Ownership Interest. (*See* Wright Decl. ¶¶ 38, 44, 48–49.) And she contends that when she resigned from the OG Entities after unsuccessful negotiations with Tarut and Ferry in August and September 2015 for increased compensation for her services to the OG Entities, she "was not concerned that the Ownership Interest might not be real." (*Id*. ¶ 45.) This evidence does not show Defendants made an offer of the Ownership Interest conditioned on Wright's continued performance of services, which is necessary for the unilateral contract theory her counsel presses. *See Oster v. Caithness Corp*., No. 16-cv-03614-WHO, 2017 WL 3727174, at *8 (N.D. Cal. Aug. 30, 2017) (finding no unilateral contract in part because plaintiff failed to identify an offer).

Accordingly, the Court grants summary judgment to Defendants on Wright's breach of contract claim for failure of consideration and dismisses the claim with prejudice. Wright's specific performance is similarly subject to dismissal to the extent it is premised on the breach of contract claim.

### 3. Wright Can Press Her Remaining Claims Without Consideration

Defendants further argue that Wright's remaining claims fail for failure of consideration. Cursory research into the elements of the remaining claims would have shown Defendants that their consideration challenge to these claims is not "warranted by existing law or by a nonfrivolous argument[.]" Fed. R. Civ. P. 11(b)(2).

First, a promissory estoppel claim requires the absence of traditional contract consideration. "A cause of action for promissory estoppel . . . substitutes reliance on a promise for consideration . . . . [i]f actual consideration was given by the promisee, promissory estoppel does not apply." *Fleet v. Bank of Am., N.A*., 178 Cal. Rptr. 3d 18, 26–27 (Cal. Ct. App. 2014); *see also Raedeke v. Gibralter Sav. & Loan Ass'n*, 517 P.2d 1157, 1161 (Cal. 1974) ("If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable."); *US Ecology, Inc. v. Cal.*, 28 Cal. Rptr. 3d 894, 906 (Cal. Ct. App. 2005) ("Cases have characterized promissory estoppel claims as being basically the same as contract actions, but only missing the consideration element[.]"). Having concluded that there was no consideration, Wright may press her promissory estoppel claim. *See ACP, Inc. v. Skypatrol, LLC*, No. 13-01572-PJH, 2017 WL 2224831, at *1, 6–7 (N.D. Cal. May 22, 2017) (denying summary judgment on promissory estoppel claim although the district court had previously dismissed contract claim for lack of consideration).

Second, Defendants' consideration argument fails as to Wright's unjust enrichment claim. "'Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice.'" *FDIC v. Dintino*, 84 Cal. Rptr. 3d 38, 50 (Cal. Ct. App. 2008) (quoting *Weitzenkorn v. Lesser*, 256 P.2d 947 (Cal. 1953)). Thus, an unjust enrichment claim is precluded when there is a *valid* express contract covering the same subject matter between the

parties. *See Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). Because the Court has concluded that there was no consideration to support the creation of a binding oral agreement regarding the alleged Ownership Interest, there is no valid contract which could preclude Wright's unjust enrichment claim.

Finally, Defendants fail to explain how the absence of a binding oral agreement precludes Wright's tort claims related to fraud and negligent misrepresentation. Contract claims and torts claims are fundamentally distinct causes. *See Hunter v. Up-Right, Inc.*, 864 P.2d 88, 90 (Cal. 1993) ("We noted that '[t]he distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.'"); *Foley v. Interactive Data Corp.*, 765 P.2d 363 (Cal. 1988). In recognition of this distinction, California law seeks to "prevent the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004) (noting that the economic loss rule precludes a tort claim when the breach of an alleged duty is nothing more than a violation of a promise which undermines that expectations of the parties to an enforceable agreement); *see also UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) ("The [economic loss] rule generally bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages.'").

None of the tort claims Wright raises requires consideration. Pursuant to California law, the tort of fraud requires: (1)a misrepresentation, which includes either a false representation, concealment or nondisclosure, (2) knowledge of falsity, i.e. scienter, (3) intent to defraud, which includes an intent to induce reliance, (4) justifiable reliance, and (5) damages. *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 419 (C.D. Cal. 2012) (citations omitted). Promissory fraud is a species of fraud for which the misrepresentation element is premised on the defendant's alleged

making of a promise while also lacking an intent to perform.  *See Petersen*, 281 F.R.D. at 419 (citing *Lazar v. Superior Court*, 909 P.2d 981 (Cal. 1996)); *see also Pac. State Bank v. Greene*, 1 Cal. Rptr. 3d 739, 751 (Cal. Ct. App. 2003) ("'[P]romissory fraud' is a promise made without any intention of performing it."). The elements of the tort of negligent misrepresentation are similar to the elements of fraud, but the tort does not require an intent to deceive or defraud.  *Small v. Fritz Companies, Inc*., 65 P.3d 1255, 1258 (Cal. 2003); *see also Fox v. Pollack*, 226 Cal. Rptr. 532, 537 (Cal. Ct. App. 1986) (identifying elements of negligent misrepresentation).  Because none of these claims requires consideration, Wright may still sue for Defendants' alleged fraudulent conduct regarding the alleged Ownership Interest.  Accordingly, the Court denies summary judgment with respect to Wright's remaining claims.

**B.      The Affirmative Defense of Statute of Limitations**

Defendants next argue that Wright's claims are barred by the applicable statute of limitations.  (ECF No. 38-1 at 8–19.)  Defendants pleaded statute of limitations as an affirmative defense in their answers to the Complaint.  (ECF No. 3 at 14; ECF No. 21 at 13.)  "A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred."  *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).  Federal courts apply state statute of limitations in diversity actions.  *See Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109–10 (1945); *Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp*., 813 F.2d 272, 274 (9th Cir. 1987); *Simpson v. Robert Bosch Tool Corporation*, No. 12-cv-05379 WHO, 2014 WL 985067, at *2 (N.D. Cal. Mar. 7, 2014) ("In a federal diversity action brought under state law, the state statute of limitations governs.").  Both sides apply California statute of limitations and the Court does so as well.

**1.      The Appropriate Statute of Limitations to Apply**

Before assessing Defendants' particular statute of limitations arguments, the Court finds it necessary to address which statute of limitations applies to Wright's

claims.   Defendants and Wright assume that California's two-year statute of limitations for oral contract claims applies to Wright's claims for promissory estoppel, specific performance, and unjust enrichment.[3]  *See* Cal. Civ. Code P. § 339 (setting two-year statute of limitations for oral agreement).   The parties in turn apply California's three-year statute of limitations to Wright's claims for fraud and fraudulent misrepresentation, promissory fraud, concealment, and negligent misrepresentation.  *See* Cal. Civ. Code P. § 338(d) (establishing three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake").  The Court, however, concludes that the appropriate statute of limitations for all remaining causes of action is the three-year period applicable to claims grounded in fraud.

Pursuant to California law, "[t]o determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action."  *Hensler v. City of Glendale*, 876 P.2d 1043, 1057 (Cal. 1994).   "The nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code."  *Id.*; *Day v. Greene*, 380 P.2d 385, 389 (Cal. 1963) (same); *Jefferson v. J. E. French Co*., 355 P.2d 643, 644 (Cal. 1960).  "Section 338(d) applies 'if fraud or mistake is the basis of the legal injury . . . regardless of whether the complaint . . . pleads a cause of action in tort or contract[.]"  *Hatch v. Collins*, 275 Cal. Rptr. 476, 479 (Cal. Ct. App. 1990); *see also In re Asyst Techs.,*

---

[3] As a general matter, this assumption would be proper if fraud were not the gravamen of this case.  A specific performance claim has the same statute of limitations as that of a corresponding contract claim because specific performance is grounded in the underlying breach of contract.  *Gurvey v. Legend Films, Inc.*, No. 09-cv-942-IEG (JMA), 2010 WL 55889, at *16 (S.D. Cal. Jan. 4, 2010).  And, "[i]f promissory estoppel is premised on an oral agreement, then it is subject to a two-year statute of limitations." *Perez v. CitiMortgage, Inc.*, SACV 14-00355-DOC (DFMx), 2014 WL 2609656, at *3 (C.D. Cal. June 10, 2014) (citing Cal. Civ. Code P. § 339(1); *Krieger v. Nick Alexander Imports, Inc.*, 285 Cal. Rptr. 717 (Cal. Ct. App. 1991)); *see also Vahora v. Masood*, No. 1:16-cv-1624-LJO-SKO, 2017 WL 1213423, at *7 (E.D. Cal. Apr. 3, 2017).  None of these authorities applying the two-year statute of limitations is applicable in this case given the Court's conclusions that (1) there is no oral agreement regarding the Ownership Interest enforceable in contract and (2) the gravamen of Wright's claims is Defendants' alleged fraud.

*Inc.*, No. C-06-04669-EDL, 2008 WL 2169021, at *6 (N.D. Cal. May 23, 2008) (noting that plaintiffs' California state law claims, including claims of unjust enrichment, rescission, and breach of contract, would be subject to the three-year statute of limitations for fraud).

Relevant to this case, courts apply the three-year statute of limitations to negligent misrepresentation claims and contract-related claims, including specific performance, unjust enrichment, and promissory estoppel, when the gravamen of the claims is a defendant's alleged fraud. *See Mamola v. JP Morgan Chase Bank, N.A.*, No. 14-cv-2688-MCE-EFB, 2015 WL 6951185, at *5 (E.D. Cal. Nov. 10, 2015) (applying three-year statute of limitations to all claims including promissory estoppel because "the gravamen of Plaintiffs' SAC is fraud. Each cause of action is based on purported misrepresentations made by Defendants that 'fraudulently induced [Plaintiffs]'"); *Ferguson v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-00328-KJM-KJN, 2014 WL 2118527, at *5 (E.D. Cal. May 21, 2014) (applying three-year statute of limitations because "[t]he promissory estoppel claim incorporates preceding paragraphs containing statements constituting fraud."); *see also Reysner v. Navient Sols., Inc*, No. 2:17-cv-00641-KJM-KJN PS, 2018 WL 5879809, at *7 (E.D. Cal. Nov. 7, 2018) (applying three-year period to unjust enrichment claim based on fraud); *Sprint Sols., Inc. v. Thirty-One Echo, Inc.*, No. 5:15-cv-02439-EJD, 2018 WL 1510210, at *5 (N.D. Cal. Mar. 27, 2018) (same); *Ferguson*, 2014 WL 2118527, at *6 (applying three-year statute of limitations to negligent misrepresentation claim); *Frye v. The Wine Library, Inc.*, No. 06-5399 SC, 2007 WL 4357596at *6 (N.D. Cal. Dec. 11, 2007) (same).[4]

---

[4] The limitations period for negligent misrepresentation is two years when the claim does not concern fraud. *See, e.g., Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.*, 10 Cal. Rptr. 3d 582, 590 (Cal. Ct. App. 2004) ("A cause of action for negligent misrepresentation is barred by the two-year statute of limitations (§ 339) where the allegations amount to a claim of professional negligence."). Neither Wright, nor Defendants argue that the two-year statute of limitations is appropriate for Wright's claim.

The gravamen of Wright's entire complaint is Defendants' alleged fraud—even as to her claims of unjust enrichment, promissory estoppel, and specific performance. (*See* Compl. ¶ 48 ("On or about October 4, 2015, Plaintiff concluded that for the first time that the Ownership Interest did not exist and that Tarut and Ferry had actively deceived her for well over two and a half years."); *id.* ¶ 62 (alleging in breach of contract claim that "Plaintiff now believes that Tarut and Ferry . . . deliberately lied to her and did not take the necessary actions to grant her a 5% ownership interest[.]"); *id.* ¶ 67 (fraud claim alleging that "[a]t the time that Defendant[s] entered into the Agreement with Plaintiff, Defendants fraudulently represented to Plaintiff that Defendants would perform all of Defendants' obligations under the Agreement, including granting Plaintiff the Ownership Interest. Eventually, however, as of October 4, 2015, Plaintiff came to believe and now believes that Defendants never granted Plaintiff the Ownership Interest."); *id.* ¶¶ 80, 82 (specific performance claim incorporating allegations from breach of contract and fraud claims and alleging that "Defendants have ignored Plaintiff's demands and have thus refused to . . . grant Plaintiff the Ownership Interest that Defendants promised[.]"); *id*. ¶¶ 87–88 (promissory fraud claim alleging that "Defendants made a promise regarding a material fact to Plaintiff, namely granting her the Ownership Interest under the Agreement, without any intention of performing that promise" and "Defendants made the promise with the intent to deceive Plaintiff and with the intent to induce Plaintiff to enter into the Agreement."); *id*. ¶ 96 (concealment claim alleging that "Defendants concealed or suppressed the material fact that Defendants did not grant Plaintiff the Ownership Interest at the time of the Agreement as they claimed."); *id*. ¶ 104 (negligent misrepresentation claim incorporating fraud allegations); *id*. ¶ 110 (promissory estoppel claim incorporating fraud allegations and alleging that "Defendants have reneged on their promises to grant the Ownership Interest to Plaintiff under the terms and conditions of the Agreement reached in January [] 2013."); *id*. ¶ 113 (unjust

enrichment claim incorporating fraud allegations). Accordingly, the Court concludes the three-year statute of limitations applies to all remaining claims.

### 2.    Application of the Statute of Limitations

Wright filed the Complaint on September 28, 2017. (ECF No. 1.) For all claims, the accrual date cannot precede September 28, 2014, unless tolling applies.

Pursuant to California law, "[g]enerally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc*., 110 P.3d 914, 919 (Cal. 2005) (quoting *Norgart v. Upjohn Co*., 981 P.2d 79 (Cal. 1999)). "California is an inquiry notice when it comes to the statute of limitations." *Uniram Tech., Inc. v. Taiwan Semiconductor Mfg. Co*., 617 F. Supp. 2d 938, 946 (N.D. Cal. 2007). To determine when the statute of limitations period began to run, courts look to "whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Fox*, 110 P.3d at 920. Plaintiffs are deemed to have constructive knowledge "only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious," which means that "that someone has done something wrong to him, 'wrong' being used, not in any technical sense, but rather in accordance with its lay understanding." *See Norgart*, 981 P.2d at 988; *Hobart v Hobart Estate Co*., 159 P.2d 958 (Cal. 1945). "Under th[is] discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Fox*, 110 P.3d at 920.

"Generally, statute of limitations issues raise questions of fact that must be tried; however, when the uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper." *Kline v. Turner*, 105 Cal. Rptr. 2d 699, 703 (Cal. Ct. App. 2001); *see also First Advantage Background Servs. Corp. v. Private Eyes, Inc*., 569 F. Supp. 2d 929, 941 (N.D. Cal. 2008). Thus, in considering Defendants' arguments regarding application of the statute of limitations, the Court

is mindful that the inquiry is intensely factual and, absent uncontradicted evidence, is not well-suited for summary judgment.

### a. Defendants' Pleading-Based Arguments Fail

Defendants initially attempt to meet their summary judgment burden on their statute of limitations affirmative defense by relying solely on the Complaint's allegations. (ECF No. 38-1 at 8–12.) When a defendant moves for summary judgment on the statute of limitations based on the pleadings, the defendant must show that the only inference from the complaint's allegations is that the plaintiff's claims are barred as a matter of law. *See Ray Bourhis Assocs. v. Principal Life Ins. Co*., No. 3:15-cv-04329-LB, 2015 WL 7180621, at *3, 5 (N.D. Cal. Nov. 16, 2015); *Cascade Yarns, Inc. v. Knitting Fever, Inc*., 905 F. Supp. 2d 1235, 1252–53 (W.D. Wash. 2012) (granting summary judgment on statute of limitations defense based solely on complaint's allegations). Impairing Defendants' attempt are their mischaracterizations of the Complaint's allegations and misapplications of the statute of limitations.

Defendants' pleading-based arguments suffer from two defects. First, Defendants fraud-related arguments ignore the Complaint's allegations that Defendants made misrepresentations regarding the alleged ownership interest in February, March, August, and October 2015. (Compl. ¶ 69.) Defendants do not explain how Wright's fraud-based claims, which embrace these alleged misrepresentations, could be barred based on the three-year statute of limitations. Second, Defendants apply the two-year statute of limitations for a breach of oral agreement for Wright's promissory estoppel, specific performance and unjust enrichment claims instead of the three-year statute of limitations that the Court has concluded applies to the Complaint.

Most troublingly, Defendants conflate the dates of alleged misrepresentations with Wright's discovery of the alleged wrongdoing. Pursuant to Section 338(d), the three-year period is triggered based on the "discovery" of the alleged fraud, not the

date of the alleged misrepresentations by which the fraud is perpetrated. *See* Cal. Code Civ. P. §338(d). The Complaint expressly alleges that around October 4, 2015, "Plaintiff [] concluded for the first time that the Ownership Interest did not exist, and that Tarut and Ferry had actively deceived her for well over two and a half years." (Compl. ¶ 48.) Although Defendants argue that this "careful" allegation is calculated to make Wright's claims timely (ECF No. 38-1 at 13), Defendants do not point to any allegations in the Complaint which would show that Wright would have had reason to know of alleged wrongdoing before this date. It is not the Court's duty to make Defendants' summary judgment arguments for them or to identify the portions of the Complaint that could support their arguments, if any, and the Court will not do so. *See Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2018 WL 514923, at *6 (N.D. Cal. Jan. 23, 2018) ("[I]t is not the Court's duty to create arguments or find evidence" for the parties at the summary judgment stage); *Blankenship v. Cox*, No. 3:05-CV-00357-RAM, 2007 WL 844891, at *12 (D. Nev. Mar. 19, 2007) ("It is not the court's duty to do Defendants' legal research.").

Defendants have failed to show that the only inference from the Complaint's allegations are that the statute of limitations bars Wright's claims. *See Ray Bourhis Assocs.*, 2015 WL 7180621, at *5 ("Based only on the complaint's allegations (the only 'evidence' that [defendant] cites), the court disagrees that as a matter of law the only inference is that [plaintiff]'s failure is inexcusable."). Thus, the Court denies summary judgment on this basis.

### b.     The Record Does Not Warrant Summary Judgment

Next, Defendants attempt to move beyond the pleadings to argue that the record warrants summary judgment on their statute of limitations defense. The Court, however, cannot conclude that the record undisputedly shows that Wright's remaining claims are time-barred.

### i.     The Tax Form January 31, 2014 Accrual Date

Defendants contend that Wright knew or should have known of Defendants'

alleged wrongdoing in January 2014, the point at which they aver "Plaintiff would have received any required tax forms related to any compensation paid to Plaintiff related to Plaintiff's ownership interest, if any." (ECF No. 38-1 at 18–19.) Defendants contend that for tax year 2013, the IRS instructed that Forms 1099-DIV be provided to recipients by January 31, 2014.[5] (*Id.* at 19 n.8.) Defendants argue that "January 31, 2014 is the very latest Plaintiff might possibly able [sic] to claim that she did not know that Old Gringo failed to pay her any compensation allegedly due [her] based upon her alleged ownership." (*Id.* at 19.) This accrual date would bar Wright's claims as untimely filed by some eight months.

Without reflecting on whether Defendants' tax form argument could show that Wright should have suspected Defendants' alleged fraud, Defendants fail to submit any evidence to show that January 31, 2014 is the appropriate accrual date for Wright's claims. Defendants do not provide evidence or request judicial notice of the IRS's instructions for Forms 1099-DIV generally or even for the 2013 tax year. Even if the IRS requires the provision of such forms, Defendants do not provide evidence that either OG Entity—let alone Old Gringo, S.A. de C.V., a Mexican corporation—ever distributed such forms or provided dividends to its owners during the time period. And although Defendants make much of the fact the Wright had an accountant, Defendants do not provide evidence that Wright's accountant advised her to obtain a Form 1099-DIV from Defendants for the 2013 tax year.

The utter lack of evidence for this statute of limitations argument warrants denial of Defendants' motion based on an accrual date of January 31, 2014. *See* Fed. R. Civ. P 56(c)(1) (requiring movant to cite record evidence in order to satisfy summary judgment burden); *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (when the party moving for

---

[5] Forms 1099-DIV are used to report dividend income. *See Kardash v. Comm'r*, 866 F.3d 1249, 1255 (11th Cir. 2017); *Calloway v. Comm'r*, 691 F.3d 1315, 1319 (11th Cir. 2012). Defendants do not provide evidence showing that they distributed dividends in 2013, 2014, or 2015.

summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."); *U.S. Bank, N.A. v. Countryside Homeowners Ass'n*, No. 2:15-cv-01463-RCJ-GWF, 2016 WL 3638112, at *3 (D. Nev. July 7, 2016) (concluding that movant failed to meet burden on summary judgment regarding its affirmative defense because it failed "provided no evidence" to support its argument).

### ii.     The "Get It In Writing" Accrual Period

Defendants also argue a different accrual period occurring at some point in late January 2013 up until mid-2013. Defendants argue that as "a college-educated, multiple business owner, and under the on-going advice of a CPA," Wright was in a position to suspect wrongdoing by Defendants "immediately" at the time of the January 2013 meeting "or at least prior to January 28, 2013." (ECF No. 38-1 at 17.) Generally asserting that Wright was in a position to suspect wrongdoing is not a substitute for identifying concrete evidence in the record that would objectively show Wright knew or should have known of Defendants' wrongdoing at this point.

More concretely, Defendants contend that Wright was asked on multiple occasions in 2013 whether she had the alleged Ownership Interest in writing or was told to get it in writing, which would have placed a reasonable person on notice of potential wrongdoing. For example, on January 28, 2013, Wright's accountant, James Roberson, asked her if she had the Ownership Interest in writing. (ECF No. 38-2 Ex. A (Roberson's notes and questions to Wright dated January 28, 2013); JSUF ¶ 12.) Several of Wright's family members and friends also asked her whether she had the Ownership Interest in writing in the several months following the January 2013 meeting or told her that she should get the interest in writing. (ECF No. 38-1 at 15–17; JSUF ¶ 14 (brother); *id.* ¶¶ 22–26 (sister-in-law asked Wright over the course of several months in 2013); *see also* Jeffrey Green Dep. at 42:12, 43:1–2; Becky Green at Dep. 12:8–10; Roberson Decl. ¶ 6; J.G. Decl. ¶ 5; B.G. Decl. ¶ 5.) Based on this evidence, Defendants contend Wright was on inquiry notice at a point

which would bar her claims.

It is not to clear to the Court whether Wright knew or should have known about Defendants' wrongdoing based on these "get it in writing" averments. "The theory of plaintiff's claim is that the moving defendants made her a promise that they had no intention of honoring. As such, plaintiff's claim did not accrue until she had reason to suspect that the moving defendants had made her a false promise." *Jung Jae Lee v. Fed. St. L.A., LLC*, No 2:14-cv-06264-CAS(SSx), 2016 WL 2354835, at *6 (C.D. Cal. May 3, 2016) (emphasis added). Defendants have not explained how remarks by individuals who did not have a relationship with them could have placed Wright on notice of Defendants' alleged wrongdoing.

Even if Defendants have come forward with sufficient evidence to shift the burden, Wright offers evidence that speaks directly to when she began to suspect wrongdoing and which raises factual issues the Court will not resolve at summary judgment. According to Wright, it was only after October 4, 2015 and after Tarut and Ferry's "very unusual conduct in our business negotiations" that she began to suspect wrongdoing regarding the Ownership Interest. (Wright Decl. ¶ 49.) She harnesses other facts that explain why this is so. Specifically, Wright avers that she "had an extremely close personal and professional relationship" with Ferry and Tarut, considered them to be "like family," and details an extended history of her relationship with both to explain why she trusted them. (*Id*. ¶¶ 19–37.) She also explains why she could not get the Ownership Interest in writing. Specifically, Tarut and Ferry told her at the January 2013 meeting they could not put the Ownership Interest in writing because it would jeopardize Ferry's efforts to apply for U.S. citizenship, but even after the meeting, they promised to get her the Ownership Interest in writing at some date when they could. (*Id*. ¶¶ 11, 41.) Wright declares that she knew another OG owner, Patricia Simental, who did not have a written employment or ownership agreement with either OG Entity. (*Id*. ¶ 16.) Wright relied on her trust of Ferry and Tarut as well as this fact to conclude that she did not need a

written agreement either.  (*Id.* ¶ 17.)  If a jury believes Wright, then Wright's claims accrued, at the earliest, soon after October 4, 2015, and her claims would fall within the three-year statute of limitations.  Because the Court concludes that there exist factual questions regarding the appropriate accrual date for Wright's claims, the Court denies summary judgment on the statute of limitations.

### C.     The Existence of Damages for Wright's Claims

As a final matter, Defendants argue that Wright "has no recoverable damages related to any of her causes of action" and therefore she cannot satisfy the damages element necessary for the claims.  (ECF No. 38-1 at 20.)  The Court concludes that Defendants have not met their burden to show that they are entitled to summary judgment on this issue.

### 1.     Ownership Interest-Related Damages

Wright expressly seeks "the value of her 5% Ownership Interest in the Old Gringo Entities[.]"  (JSUF ¶ 59; Wright Decl. ¶ 54.)  Defendants take aim at the existence of damages by arguing that Plaintiff "has failed to demonstrate or even allege any recoverable damages" pertaining to the Ownership Interest's value.  (ECF No. 38-1 at 21.)  This argument fails to make it out of the holster.

Defendants argue that Wright is not entitled to the remedy of specific performance or "any money damages representing the current value of 5% of" the OG Entities.  (ECF No. 38-1 at 20–21.)  Pointing to an allegation in the Complaint, Defendants argue that the 5% Ownership Interest "would continue for as long as Plaintiff continued to provide services, designs, and expertise to Old Gringo US & MX," yet Wright also alleges that she "ceased working with those entities as of October 30, 2015."  (ECF No. 38-1 at 20 (citing Compl. ¶¶ 23, 49).)  Based on these allegations, Defendants argue that "no alleged ownership interest continued beyond October 30, 2015" and there is "no basis upon which to claim specific performance."  (*Id.* at 21.)

As an initial matter, this pleading-based argument is not supported by evidence

in the summary judgment record and is in tension with Defendants' failure of consideration argument. As the Court has already discussed, the record does not show that the alleged Ownership Interest was exchanged for or conditioned on Wright's performance of services for the OG Entities, and Wright contends that she retained the interest even after she resigned. (Wright Decl. ¶¶ 10, 40, 48; Wright Dep. at 37:12–20, 174:11–15; *see also* JSUF ¶¶ 20–21, 28–29; Becky Green Dep. at 11:21–23; Fresh Dep. at 16:12–15; J.G. Decl. ¶ 4; B.G. Decl. ¶ 4; Fresh Decl. ¶ 5; L.W. Decl. ¶ 14.) Thus, it does not appear to the Court that Wright's Ownership Interest damages are as limited as Defendants argue. Although there remains a question about the precise value of the Ownership Interest—as reflected in Wright's Rule 56(d) motion—Defendants provide no evidence to this Court conclusively showing that Wright will be unable to quantify its value.

However, even if Wright's Ownership Interest-related damages are limited to the January 2013 through October 30, 2015 period, Defendants have not shown the absence of damages. "Damages for equitable and promissory estoppel include specific performance, expectation damages and reliance damages." *Original San Francisco Toymakers, Inc. v. Trendmasters, Inc*., No. C 01-3658 MJJ, 2003 WL 22384771, at *6 (N.D. Cal. Oct. 7, 2003) (citing *Swinerton & Walberg Co. v. City of Inglewood-L.A. Cty. Civic Ctr. Auth.*, 114 Cal. Rptr. 834 (Cal. Ct. App. 1940)). Howsoever limited the interest was in its duration, the value of the Ownership Interest represents what Wright would be entitled to if she prevails on her promissory estoppel claim, for which specific performance is available. Defendants' actual argument for why Wright cannot show Ownership Interest-related damages cribs from their Form 1099-DIV statute of limitations argument. (ECF No. 38-1 at 21.) Specifically, Defendants argue that "Plaintiff absolutely knew, as of January 31, 2014 (the day Defendants would have had to provide Plaintiff any 1099-DIV. . .)," and thus any Ownership Interest damages from the January 2013 through October 30, 2015 period are now time-barred. (*Id.*) This "damages" argument is substantively

17cv1996

the same statute of limitations defense the Court has already rejected and it fares no better now. Accordingly, Defendants have failed to meet their initial summary judgment regarding Ownership Interest-related damages.

### 2. Fraud-Related Damages

Finally, Defendants argue that Wright has failed to plead or show damages for fraud and summarily apply their reasoning to all of Wright's fraud-related claims. (ECF No. 38-1 at 23–24.) None of the arguments Defendants advance warrants summary judgment.

### a. Rule 9(b) and Sufficiency of the Pleadings

Although Defendants have moved for summary judgment, much of Defendants' fraud damages argument is that Wright has failed to adequately plead her fraud damages. (*Id.*) The Court rejects Defendants' pleading-based argument.

As an initial matter, Defendants did not challenge the sufficiency of Wright's complaint at the appropriate stage of the litigation and thus this pleading-based challenge to Wright's fraud damages is inappropriate. *See Doe v. BSA*, 329 F. Supp. 3d 1168, 1189 (D. Idaho 2018) (noting that defendants "did not file any motion attacking the sufficiency of Plaintiffs' pleadings under Rule 9(b). As such, the Court finds this defense is no longer relevant, and shall therefore be stricken."); *Lancaster v. Kordsiemon*, No. 1:15-cv-00239-BLW, 2016 WL 5662011, at *6 (D. Idaho Sept. 29, 2016) ("It is untimely of [defendant] to allege a violation of Rule 9(b) in his Rule 56 motion for summary judgment. Rule 9(b) exists to ensure that defendants have sufficient knowledge of the fraud alleged in a complaint to present a defense in an answer. . . . it is highly unusual for a Rule 9(b) motion to be brought within a motion for summary judgment."). The untimely assertion of Defendants' pleading-based challenge to Wright's fraud damages is a sufficient basis to deny summary judgment with respect to this argument.

Even entertaining the challenge now, Defendants' argument fails. As Defendants recognize, Wright alleges various fraud damages, including "loss of

earnings, income and profits," including what "Plaintiff would have made if she had not entered into the Agreement and had pursued other business opportunities." (Compl. ¶ 72; ECF No. 38-1 at 22.) Defendants argue that Wright has failed to plead any specific out of pocket costs or opportunity costs of not pursuing other business opportunities. (ECF No. 38-1 at 22–23.) And characterizing the damages Wright pleads as an "extensive list of vague claims," Defendants point to California state court pleading requirements to contend that damages must be specifically pleaded. (ECF No. 38-1 at 22 (quoting *Service by Medallion, Inc. v. Clorox Co*., 44 Cal. App. 4th 1807, 1816 (Cal. Ct. App. 1996)).

Whatever the pleading requirements of California state courts, this case is in federal court. In federal court, Rule 9(b) requires the elements of fraud to be pleaded with particularity, which means the circumstances of the fraud. *See* Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1127 (9th Cir. 2009) (where a plaintiff claims fraud, the "entire complaint must . . . be pleaded with particularity."); *In re GlenFed, Inc*., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) ("To allege fraud with particularity . . . plaintiff must set forth what is false or misleading about a statement, and why it is false.").

Rule 9(b), however, does not require that fraud damages themselves be pleaded with specificity. *See Interserve, Inc. v. Fusion Garage PTE Ltd*., No. C 09-5812 RS (PSG), 2011 WL 500497, *3 (N.D. Cal. Feb. 9, 2011) ("Rule 9(b) may not apply to the . . . damages elements of a fraud claim"); *Andrews Farms v. Calcot, Ltd*., 527 F. Supp. 2d 1239, 1252 (E.D. Cal. 2007) ("Again, Defendants fail to cite to any authority that Rule 9(b) requires more particular pleading for the element of damages. While Rule 9(b) requires pleading the circumstances of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud damages be pled with more specificity than required under normal notice pleading.") (finding sufficient allegation of fraud damages "according to proof"); *Menjivar v. Trophy Prop. IV DE, LLC*, No. C 06-03086 SI, 2006 WL 2884396, *13 (N.D. Cal. Oct. 10,

2006) (same).

Rather, a plaintiff satisfies Rule 9(b) by alleging the specific acts constituting fraud on which she relied and which resulted in damage. *See Ohlweiler v. Bank of Am. Corp.*, No. 3:15-cv-2268-GPC-KSC, 2016 WL 1162674, at \*4 (S.D. Cal. Mar. 22, 2016) (finding allegations insufficient to show damages because plaintiff did not allege any specific acts that resulted in her claimed damages); *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. 11-CV-01762-LHK, 2011 WL 5025142, at \*12 (N.D. Cal. Oct. 21, 2011) (determining that plaintiffs had failed to show damages resulting from alleged fraud because they failed to plead any actions that took in reliance on alleged misrepresentations); *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1121 (E.D. Cal. 2009) ("[I]n an action for fraud and deceit a cause of action is stated when the facts constituting the fraud are alleged and a resulting injury is pleaded.") (citing *Hartzell v. Myall*, 252 P.2d 676 (Cal. Ct. App.1953)).

Wright has clearly alleged in the Complaint the specific misrepresentations by Defendants regarding the Ownership Interest on which she relied. More specifically, she alleges that Defendants intended to induce her to continue working for the OG Entities and she continued to work for the OG Entities until October 2015 based on the alleged agreement to provide Wright the Ownership Interest and increased compensation in exchange for her continued services. (Compl. ¶¶ 15, 68–70.) Lost earnings or lost profits from other business opportunities are a plausible consequence of this alleged fraudulent conduct.[6] Thus, on the merits, Defendants' pleading-based argument fails.

---

[6] Of course, the Court has concluded that the undisputed evidence does not show that consideration was agreed to at the time of the January 2013 to render the Ownership Interest enforceable in contract. Even so, that the Ownership Interest is not enforceable in contract does not mean that Wright cannot seek fraud damages for lost employment or lost business opportunities. The alleged Ownership Interest misrepresentations were made alongside the contract for her services and Wright alleges that further misrepresentations were made to her by Tarut in 2014 and 2015 to induce her to work harder. (Wright Decl. ¶¶ 46–47.)

## b. The Record Does Not Warrant Summary Judgment

Moving beyond the pleadings, Defendants also argue that the summary judgment record shows that Wright had no offers of employment "at any point during 2013 to 2015." (ECF No. 38-1 at 23.) This argument pertains to only *one* type of fraud damages Wright seeks and thus it cannot warrant summary judgment on her fraud-related claims for lack of damages.

Even focusing on the limited scope of their argument, Defendants have failed to show that Wright cannot prove damages related to the lost employment or business opportunities. Defendants point to Wright's deposition testimony regarding an oral solicitation by Doug Kennedy of Lucchese offering Wright $225,000 a year for her services. (Wright Dep. at 184:4–8, 185:3–8.) Wright dated this offer initially to 2013 and then 2012 in her testimony. (*Id*.) Defendants contend that, based on this evidence, "she had received only one offer of employment," which according to Defendants cannot show "an opportunity cost" because "it was made and rejected" before the January 2013 meeting. (ECF No. 38-1 at 23 (citing Wright Dep. at 184:4–8, 185:3–8).) Wright, however, declares in opposition she is "certain it would have remained open to [her]" if she had not continued to work for the OG Entities. (*See* ECF No. 50 at 24–25; Wright Decl. ¶¶ 57–58.) Thus, there is at least an issue of fact regarding damages pertaining to this potentially lost employment opportunity.

Defendants do not otherwise submit evidence that would disprove Wright's loss of other employment or business opportunities between 2013 and 2015 that she could have pursued. At most, the portions of the record Defendants identify would tend to show that Wright does not have a written record of offers, not that such offers were not made. (Wright Dept. 184:13–16.)[7] Wright otherwise produces evidence in

---

[7] Defendants curiously omit portions of the record that could prove or disprove the presence or absence of lost earnings or lost business opportunities during the January 2013 to October 2015 period. In fact, the final page of Wright's deposition transcript Defendants submit states: "Okay. Anybody in 2013 make an offer—." (Wright Dept. 185:25.) Defendants fail to provide a record showing Wright's answer to that question.

opposition to summary judgment of damages pertaining to other employment and business opportunities she could have pursued if she had not continued working for the OG Entities. (Greenberg Decl. ¶¶ 13–28; Wright Dep. at 184:4 to 185:1; Wright Decl. ¶¶ 56–58; Pak Dep. at 87: 2–14.). Accordingly, Defendants are not entitled to summary judgment on Wright's fraud claims for a purported lack of damages.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (ECF No. 38) as follows:

1. The Court **GRANTS** summary judgment for Defendants on Wright's breach of contract claim and the claim is **DISMISSED WITH PREJUDICE**. Wright's specific performance claim is similarly dismissed solely to the extent it is premised on breach of contract.

2. The Court otherwise **DENIES** summary judgment for Defendants on all other grounds raised in their motion.

4. The Court **DENIES AS MOOT** Wright's Rule 56(d) motion to deny or defer decision on Defendants' motion for summary judgment (ECF No. 51) and **VACATES** the corresponding briefing schedule (ECF No. 59).

**IT IS SO ORDERED.**

**DATED: December 13, 2018**

Hon. Cynthia Bashant
United States District Judge