# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA WRIGHT,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>OLD GRINGO INC, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 17-cv-1996-BAS-MSB<br><br>**ORDER DENYING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 79]** |

　　　　As is by now familiar, this case concerns Defendants Yan Ferry and Ernest Tarut's alleged January 2013 promise to grant Plaintiff Marsha Wright ("Wright") a 5% ownership interest (the "Ownership Interest") in Defendants Old Gringo, S.A. de C.V. ("OGS") and Old Gringo, Inc. ("OGI"), companies that respectively make and sell Western-style boots in the United States and Mexico. For a second time, Defendants OGI, Ferry, and Tarut move for summary judgment on Wright's remaining claims in this case following the Court's prior grant of summary judgment for Defendants on Wright's breach of contract claim regarding the Ownership Interest. (ECF Nos. 79, 89.) Defendant OGS has joined the second summary judgment motion following the Court's denial of OGS's motion to dismiss. (ECF No. 119.) Wright opposes summary judgment on her remaining claims. (ECF No. 88.) For the reasons herein, the Court denies Defendants' second motion for summary judgment.

# RELEVANT BACKGROUND[1]

Wright is a Texas-based professional designer of Western apparel, including boots and handbags. (ECF No. 50-1 Ex. A Marsha Wright Decl. ("Wright Decl.") ¶¶ 3, 21.) Defendants Ferry and Tarut are the majority owners of Defendants OGI and OGS (together, the "OG Entities"). (ECF No. 89-1 Unchanged Joint Statement of Undisputed Material Facts ("JSUF") ¶ 1; Wright Decl. ¶ 10.) Wright designed boots for Defendants from 2005 until her October 2015 resignation, occupying the role of "head designer" starting in 2008. (JSUF ¶ 2; Wright Decl. ¶¶ 4–6.) She was paid as an independent contractor. (JSUF ¶ 43; Wright Decl. ¶¶ 7, 9.)

In January 2013, Wright, Ferry and Tarut met in León, Mexico, where OGS is located. (JSUF ¶ 3; Wright Decl. ¶ 10.) It is undisputed that during this meeting, Ferry and Tarut "raised [Wright's] compensation, to a figure that Defendants paid [her] for the remainder of the time that [she] was with Old Gringo" in an oral contract. (JSUF ¶ 4; Wright Decl. ¶ 10.) Wright would and "immediately" did receive a $180,000 salary in exchange for her services to Defendants. (JSUF ¶¶ 4, 7; ECF No. 50-12 Steve Greenberg Decl. ("Greenberg Decl.") ¶ 12; *see also* Wright Dep. at 128:09–20.) During the same January 2013 meeting, Tarut and Ferry allegedly also promised Wright that they would grant her a 5% Ownership Interest in the OG Entities in recognition for her hard work. (JSUF ¶¶ 5, 13, 20–21; Wright Decl. ¶ 10.) Ferry and Tarut told Wright they could not put the Ownership Interest in writing because doing so would jeopardize Ferry's efforts to become a U.S. citizen. (Wright Decl. ¶ 12.) After the January 2013 meeting, the Ownership Interest

---

[1] These facts are drawn from the parties' previous evidentiary submissions in connection with Defendants' first motion for summary judgment. Defendants do not contend that there is any new evidence that should be considered, but instead direct the Court to an "unchanged" Joint Statement of Undisputed Material Facts submitted with the first motion for summary judgment. (*Compare* ECF No. 53 *with* ECF No. 89-1 Ex. 1.)

"only rarely came up in discussions" with Ferry and Tarut "and only in the sense that [they] repeatedly promised to get it to [her] in writing at some date in the future when they could." (Wright Decl. ¶ 44.) Tarut told Wright "on many occasions" in 2014 and 2015 "things to remind [her] that [she] was now an owner or a 'partner' in the Old Gringo companies, and needed to work extra hard[.]" (*Id.* ¶¶ 46–47.)

On October 4, 2015, Wright resigned from the OG Entities after she unsuccessfully attempted to negotiate with Ferry and Tarut during August and September 2015 to increase her compensation and receive additional money to employ her son. (JSUF ¶ 41; Wright Decl. ¶¶ 42–43.) Wright "still thought [she] was a part owner of the Old Gringo companies" when she resigned. (Wright Decl. ¶¶ 45, 48; Wright Dep. at 188:13–189:21.) "Only after [she] resigned" did Wright "begin to suspect that there might be a problem with the Ownership Interest[.]" (Wright Decl. ¶ 49; Wright Dep. at 190:16–19.) At no point has Wright received the alleged Ownership Interest.

**PROCEDURAL SYNOPSIS**

Defendants OGI, Ferry, and Tarut previously moved for summary judgment on Wright's claims in October 2018. (ECF No. 38.) During the pendency of that motion, OGS moved to dismiss the Complaint for lack of personal jurisdiction and for *forum non conveniens*. (ECF No. 61.) The Court subsequently granted in part and denied in part Defendants OGI, Ferry, and Tarut's first motion for summary judgment in December 2018. (ECF No. 62.) The Court granted summary judgment for Defendants on Wright's breach of contract claim, but otherwise denied summary judgment on Wright's claims for promissory estoppel, unjust enrichment, specific performance, fraud and fraudulent representation, promissory fraud, concealment and negligent misrepresentation. (*Id.*) A week later, these Defendants moved for reconsideration of the denial of summary judgment on Wright's remaining claims,

(ECF No. 63), a motion which the Court promptly denied, (ECF No. 67). Nearly a month after the denial of their motion for reconsideration, Defendants OGI, Ferry, and Tarut filed the present second motion for summary judgment on Wright's remaining claims on January 25, 2019. (ECF No. 79.) After the Court denied its motion to dismiss on June 11, 2019 (ECF No. 115), OGS answered the Complaint and filed a notice of joinder in the second motion for summary judgment, (ECF Nos. 116, 119). The Court turns to the merits of Defendants' second motion for summary judgment.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper on "each claim" "or the part of each claim" on which summary judgment is sought when "there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of demonstrating the absence of a genuine factual dispute, which it may satisfy by either affirmatively negating the nonmovant's claim, or by demonstrating that the nonmovant is unable to prove an essential element of that claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jones v. Williams*, 791 F.3d 1023, 1030 (9th Cir. 2015). To meet this burden, the movant cites to depositions, affidavits or declarations, interrogatory answers, or other materials in the record. Fed. R. Civ. P. 56(c)(1). Only if the movant meets its initial burden must the nonmovant go beyond its pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

# DISCUSSION[2]

According to Defendants, summary judgment must be granted on Plaintiff's remaining promissory estoppel, unjust enrichment, and specific performance claims because Wright's continued provision of services to the OG Entities was already the subject of a separate oral agreement amongst the parties. (ECF No. 79-1 at 1, 2–9.) Defendants contend that summary judgment is warranted on Wright's fraud-based claims because Wright "cannot produce evidence" to support these claims. (*Id.* at 10–11.) According to Defendants, the existence of the oral agreement for Wright's continued provision of services also prevents Wright from establishing "detrimental reliance" for her fraud claims regarding Defendants' alleged promise of the Ownership Interest and thus these claims fail as a matter of law. (*Id.*) Defendants' arguments are not new, nor do Defendants present any new evidence to the Court compared to their first motion for summary judgment. Once more, the Court concludes that Defendants have not shown that summary judgment is warranted on Plaintiff's remaining claims.[3]

## 1. Promissory Estoppel Claim

Wright raises a claim for promissory estoppel against all Defendants. (Compl. ¶¶ 109–12.) Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forbearance is

---

[2] The parties dispute the procedural propriety of Defendants' second motion for summary judgment. (ECF No. 79-1 at 1–3; ECF No. 88 at 5–9.) It is not necessary to wade into this dispute because Defendants' motion fails on the merits.

[3] Both sides recognize that Wright's specific performance claims turns on the viability of her promissory estoppel and unjust enrichment claims. (ECF No. 79-1 at 9; ECF No. 88 at 16–17.) Because the Court denies summary judgment for Defendants on these claims, the Court similarly denies summary judgment on Wright's specific performance claim without further analysis.

binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 1 P.3d 63, 66 (Cal. 2000). The elements of promissory estoppel are: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise is made, (3) the reliance is both reasonable and foreseeable, and (4) the party asserting estoppel is injured by his reliance. *U.S. Ecology Inc. v. State of California*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005). As the Court has previously explained, (ECF No. 62 at 14), "[a] cause of action for promissory estoppel . . . substitutes reliance on a promise for consideration . . . . [i]f actual consideration was given by the promisee, promissory estoppel does not apply." (ECF No. 62 at 14 (quoting *Fleet v. Bank of Am., N.A.*, 178 Cal. Rptr. 3d 18, 26–27 (Cal. Ct. App. 2014)).)

Defendants seek summary judgment on the ground that Wright cannot establish reliance. According to Defendants, Wright's "continued work for Old Gringo" is the bargained-for subject of an existing valid oral agreement, which means that Wright's performance under that agreement "cannot also be claimed to be the 'detrimental reliance' required for a cause of action of promissory estoppel." (ECF No. 79-1 at 5.) Defendants' argument relies heavily on *Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984), a case in which the Ninth Circuit overturned a jury verdict in favor of certain plaintiffs' promissory estoppel claim when the jury had also determined that the defendant did not breach its franchising or written option agreements with the plaintiffs. The Court briefly describes *Walker* and then explains why *Walker* does not foreclose Wright's promissory estoppel claim.

In *Walker*, the plaintiffs brought various claims against KFC related to written franchising and option agreements. The plaintiffs contended that KFC "made promises outside the written contracts which were not supported by bargained for consideration," specifically promises to develop a nationwide system of Zantigo

restaurants, to promote Zantigo restaurants on television, and to provide equipment financing for the Zantigo franchising. *Id.* at 1219. The plaintiffs claimed that they relied on these promises to their detriment in entering into three long term leases and spending over $230,000 to establish the Zantigo restaurants in San Diego. The Ninth Circuit found these "very acts" of claimed detrimental reliance were the "consideration that induced KFC to enter into the written agreements" between plaintiffs and KFC. *Id.* In particular, the agreements gave plaintiffs the option to enter into franchise agreements with respect to specific sites in San Diego, an option under which plaintiffs were required to select an appropriate site, order supplies and equipment for the commencement of operations, complete construction of the facility, and complete a KFC training program. *Id.* As the franchisees, plaintiffs were required to make their best efforts to market the Zantigo products KFC approved. *Id.*

In concluding that the *Walker* plaintiffs' assertions of detrimental reliance were "totally unpersuasive," *id.* at 1218, the Ninth Circuit observed that the doctrine of promissory estoppel is inapplicable "[i]f the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for," id. at 1218 (quoting *Youngman v. Nevada Irrigation Dist.*, 449 P.2d 462, 468 (Cal. 1969)). The Ninth Circuit determined that "the deal" between plaintiffs and KFC was that KFC was bargaining with franchisees to induce them to open Zantigo restaurants. *Id.* at 1220. According to the Ninth Circuit, "[t]hat performance by plaintiffs was bargained-for and the fact that some of the promises that induced that performance were made outside the written agreements does not change the analysis." *Id*. Based on the facts, the plaintiffs either had a breach of contract claim or they did not, but, as a party to a negotiated commercial bargain, they could not rely on the doctrine of promissory estoppel to get "a second bite at the apple in the event [they] fail[ed] to prove a breach of contract." *Id.*

Pointing to *Walker*, Defendants appear to argue that Wright improperly pleaded both a breach of contract and a promissory estoppel claim regarding the Ownership Interest. (ECF No. 79-1 at 6.) Defendants' focus on Wright's pleadings misses the mark. *Walker* did not concern the ability of a plaintiff to plead alternative claims that may be inconsistent, but rather concerned a factual record following development at trial which showed that the only claim that could exist against the defendant was for breach of contract. The Federal Rules, however, plainly permit inconsistent causes of action. Fed. R. Civ. P. 8(d)(3). Thus, the mere fact that Wright pleaded a breach of contract claim alongside a promissory estoppel claim is not a basis for dismissal of her promissory estoppel claim. *See Sam Kohli Enters. v. BOC Grp., Inc.*, No. 11CV299 DMS, 2011 WL 3298902, at *6 (S.D. Cal. Aug. 1, 2011) ("To the extent that Plaintiff's claims for promissory estoppel and breach of contract are in conflict, the federal rules allow a plaintiff to plead inconsistent claims in a complaint.").

Focusing on the evidence presented in this case, *Walker* does not warrant summary judgment for Defendants on Wright's promissory estoppel claim.

As an initial matter, the Court agrees that Wright cannot satisfy the detrimental reliance element of her promissory estoppel claim by merely pointing to her continued provision of services because this was the bargained-for consideration of the increased salary compensation agreement. Despite Plaintiff's attempt to read *Walker* more narrowly, *Walker* is not unique in holding that the reliance element of a promissory estoppel claim cannot be met by pointing to performance a plaintiff is already contractually obligated to undertake. *See De La Cruz v. Citi Mortg., Inc.*, No. 1:12-cv-0141-AWI-BAM, 2012 WL 487004, at *3 (E.D. Cal. Feb. 14, 2012) ("[P]laintiffs do not allege sufficient reliance on the new representation, in that plaintiffs already were bound contractually to make loan payments. Accordingly,

Plaintiffs do not state a claim for promissory estoppel."); *Ortiz v. America's Servicing Co.*, No. EDCV 12-191 CAS (SPx), 2012 WL 2160953, at *7 (C.D. Cal. June 11, 2012) ("Merely . . . making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *19 (N.D. Cal. Feb. 1, 2012) ("This Court has previously held, along with other courts, that where the injury alleged as a result of reliance is that the plaintiffs made payments that they were already obligated to make under the loan contract, no claim for promissory estoppel is stated.").

The problem for Defendants, however, is that Wright expressly claims that she is also "seeking to make up what I would have earned if I had not relied on Tarut and Ferry's false statements and stayed with Old Gringo after the January 2013 meeting." (Wright Decl. ¶ 54.) In other words, Wright claims reliance through forbearance based on Defendants' alleged promise of the Ownership Interest. As the Court previously discussed, Wright claims she lost employment opportunities she would have pursued, including an opportunity to be paid as a W-2 worker rather than as an independent contractor, if Defendants had not also promised the Ownership Interest during the January 2013 meeting. (ECF No. 67 at 8 (citing Wright Decl. ¶¶ 46–47); *see also* JSUF ¶ 63.) Defendants provide no evidence that any part of the deal regarding Wright's provision of services to Defendants limited Wright to working only for Defendants, nor has the parties' summary judgment evidence ever hinted at such forbearance as being part of the bargained-for consideration in Wright's increased salary compensation agreement. On this basis alone, Defendants' *Walker*-based argument cannot entitle them to summary

judgment on Wright's promissory estoppel claim.[4]

As a final matter, pointing to *Glen Holly Entertainment Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003), Defendants argue that the Court should grant summary judgment on Wright's promissory estoppel claim if the Court permits Wright's fraud claims. (ECF No. 79-1 at 12–13.) The Court does not agree with Defendants that *Glen Holly* requires summary judgment on Wright's promissory estoppel claim.

In *Glen Holly*, the Ninth Circuit affirmed a district court's dismissal of a party's promissory estoppel claim for lack of a sufficiently definite promise to be enforceable. *Glen Holly Entm't. Inc.*, 343 F.3d at 1017. The Ninth Circuit further determined that a promissory estoppel claim was properly dismissed because the party had "viable fraud and negligent misrepresentations claims," therefore rendering a promissory estoppel claim "not necessary." *Id.* As Wright points out, however, "[b]ecause promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application." *U.S. Ecology, Inc.*, 28 Cal. Rptr. 3d at 905. *Glen Holly* did not alter this discretion. Here, as Wright underscores, her promissory estoppel claim concerns enforcement of the alleged Ownership Interest. (ECF No. 88 at 20.) Wright's fraud-based claims, even if viable, do not permit a similar recovery. Accordingly, as a matter of equitable discretion, the Court cannot agree

---

[4] This point similarly disposes of Defendants' reliance on *Walker*'s statement that promissory estoppel is limited "to cases where no benefit flows to the promisor." (ECF No. 79-1 at 8 (quoting *Walker*, 728 F.2d at 1220).) As both sides recognize, this is merely a restatement of the point that promissory estoppel does not lie where consideration exists. Because Wright's forbearance of pursuing other work opportunities was not a part of the bargain, there was necessarily no agreed-upon benefit flowing to Defendants from Wright's forbearance.

that Wright's fraud-based claims warrant summary judgment on Wright's promissory estoppel claim and thus denies Defendants' motion with respect to this additional ground.

### 2. Unjust Enrichment Claim

Wright raises a claim for unjust enrichment against all Defendants. (Compl. ¶¶ 113–18.) "[I]n California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (internal quotations and citations omitted). Unjust enrichment, however, is not irrelevant under California law, but rather describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request'" for which "[t]he return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" *Id*. (quoting 55 Cal. Jur. 3d Restitution § 2 and *Munoz v. MacMillan*, 124 Cal. Rptr. 3d 664, 675 (Cal. Ct. App. 2011)). Additionally, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121 (Cal. Ct. App. 2004).

Defendants once more seek summary judgment on Wright's unjust enrichment claim. Defendants contend that Wright's unjust enrichment claim "is not a claim regarding the Ownership Interest, but rather is necessarily a claim that Defendants did not justly compensate Plaintiff for her continued work." (ECF No. 79-1 at 3.) According to Defendants, summary judgment is warranted because "there was an existing agreement between the parties explicitly regarding Plaintiff's continued work for Defendants and the compensation which Defendants would pay Plaintiff for her continued work." (ECF No. 79-1 at 3–4; ECF No. 89 at 4–5.)

Under California law, an action for unjust enrichment does not lie where an express binding agreement exists and defines the parties' rights. *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 126 (Cal. Ct. App. 2001). "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 49 Cal. Rptr. 2d 191, 198 (Cal. Ct. App. 1996). By definition, an unjust enrichment claim may proceed when there is no actual contract covering the subject matter at issue.

Although Defendants make much of the compensation agreement regarding Wright's services to argue that there was an express contract between them and Wright, the Ownership Interest was not the subject matter of that agreement. As Defendants themselves acknowledge, (ECF No. 79-1 at 7), the Court previously concluded that the evidence showed that the Ownership Interest was not promised in exchange for Wright's continued services. Unless Defendants are now contending that the Court should reconsider its prior conclusion and reinstate Plaintiff's breach of contract claim, the Court's first summary judgment ruling forecloses Defendants' reliance on the salary compensation agreement to defeat Wright's unjust enrichment claim regarding the Ownership Interest. "Although there are contracts . . . in this case, none appears to provide for the specific recovery sought by [Plaintiff's] unjust enrichment claim." *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1220–21 (S.D. Cal. 2009). Defendants identify no other basis on which they can seek summary judgment on Wright's unjust enrichment claim. Accordingly, the Court denies Defendants' motion for summary judgment on this claim.

### 3. Fraud-Based Claims

Wright raises claims for fraud, promissory fraud, fraudulent concealment, and negligent misrepresentation regarding the Ownership Interest. (Compl. ¶¶ 66–79, 86–103.) These claims require "justifiable reliance." *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 419 (C.D. Cal. 2012) (citations omitted) (discussing elements of fraud generally and promissory fraud in particular); *Fox v. Pollack*, 226 Cal. Rptr. 532, 537 (Cal. Ct. App. 1986) (identifying elements of negligent misrepresentation).

"Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *Alliance Mortg. Co. v. Rothwell*, 900 P.2d 601, 60809 (Cal. 1995). "The plaintiff must allege and prove that he actually relied upon the misrepresentations, and that in the absence of fraud, would not have entered into the contract or other transaction." *The MEGA Life & Health Ins. Co. v. Super. Ct*., 92 Cal. Rptr. 3d 399, 406 (Cal. Ct. App. 2009). "The reasonableness of a plaintiff's reliance on false statements made by the defendant is typically a question of fact, informed by the plaintiff's knowledge, education, and experience." *Gelow v. Cent. Pac. Mortg. Corp.*, 656 F. Supp. 2d 1217, 1229 (E.D. Cal. 2009) (citing *Guido v. Koopman*, 2 Cal. Rptr. 2d 437, 440 (Cal. Ct. App. 1991)). "[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Guido*, 2 Cal. Rptr. 2d at 440.

Defendants argue that they are entitled to summary judgment on Wright's fraud-based claims for one reason: "[b]ecause plaintiff's bargained for performance (continued work for defendants) cannot serve as detrimental reliance[.]" (ECF No. 79-1 at 10; ECF No. 89 at 7–8.) Although Defendants now anchor this argument in

*Walker*, their argument is a familiar one that the Court has already rejected.

Defendants argued in their motion for reconsideration that Wright could not press her fraud-based claims because her continued work for Defendants meant she could not show "detrimental reliance" to support any fraud-based claims. (*Compare* ECF No. 63-1 at 1, 3 *with* ECF No. 79-1 at 10; ECF No. 89 at 7–8.) As the Court explained when it denied Defendants' motion for reconsideration, "even in the absence of a contract regarding the Ownership Interest which required Wright to work for Defendants, Wright has plausibly pleaded and provided evidence of her *reliance* on Defendants' alleged promise of the Ownership Interest." (ECF No. 67 at 8 (emphasis added).) In particular, the Court underscored that the Ownership Interest was promised alongside the agreement for Wright's continued services to Defendants, for which it is undisputed that Defendants discharged their obligation to pay Wright. (*Id.*; *see also* ECF No. 62 at 30 n.6.) And the Court observed that Wright has produced evidence of damages resulting from her reliance on Defendants' alleged promise of and representations regarding the Ownership Interest, including lost work and lost employment opportunities that Wright claims she would have pursued, including an opportunity to be paid as a W-2 worker rather than as an independent contractor. (ECF No. 67 at 8 (citing Wright Decl. ¶¶ 46–47).)

These facts not only show reliance, but they also establish the damages element of Wright's fraud-based claims. *See Beckwith v. Dahl*, 141 Cal. Rptr. 3d 142, 163–64 (Cal. Ct. App. 2012) (observing that a fraud plaintiff must show that she "suffered consequential damages" as a result of the alleged fraud, which were "caused by the actions [the plaintiff] took in reliance on the defendant's misrepresentations"); *Magpali v. Farmers Grp., Inc.*, 55 Cal. Rptr. 2d 225, 231 (Cal. Ct. App. 1996) (finding fraud when an employer "uses misrepresentations to induce

a party to change employment when the objective could not have been achieved truthfully, and the party is left in worse circumstances than those in which he would have found himself had he not been lied to[.]").

Defendants appear to believe that a different outcome on Wright's fraud-based claims is warranted now based on *Walker*. The Court is not persuaded. Although *Walker* held that conduct that serves as the bargained-for consideration one party offers and provides in exchange for a second party's promise cannot constitute the detrimental reliance necessary for one party to bring a promissory estoppel claim against the second party, *Walker* simply did not speak to the justifiable reliance element of the fraud-based claims at issue here. Nor do Defendants identify any case law extending *Walker* to the justifiable reliance element of fraud-based claims.

Even if *Walker* applies to the justifiable reliance element of Wright's fraud-based claims, the Court has already explained that Wright proffers evidence that points to forbearance based on Defendants' alleged Ownership Interest promise, forbearance that the summary judgment record does not show was a part of the bargained-for consideration in Wright's increased compensation agreement. As the Court has already explained, Wright claims that she lost other business opportunities because she relied on Defendants' alleged Ownership Interest promise. (Wright Decl. ¶¶ 46–47, 54; *see also* JSUF ¶ 63.) Wright claims that she had no reason to doubt Defendants' alleged Ownership Interest promise because Defendants initially made this promise in the same meeting in which Defendants agreed to pay her increased compensation in exchanged for her continued services to Defendants. (JSUF ¶¶ 5, 13, 20–21; Wright Decl. ¶¶ 10, 39.) It is undisputed that the Defendants "immediately" began paying Wright an increased salary after the January 2013 meeting and continued to pay Wright the increased compensation. (JSUF ¶¶ 7–8.)

Wright also claims that Defendants referred to the alleged Ownership Interest promise multiple times throughout the course of two years to incentivize Wright to work harder. (Wright Decl. ¶¶ 46–47, 51.) Wright claims that Ferry and Tarut were the majority owners of the OG Entities and "always had restricted access to information about the Old Gringo companies," whereas Wright is "not a professional business person," but is just a "creative" type. (JSUF ¶¶ 44; Wright Decl. ¶¶ 10, 38.) A reasonable juror viewing this evidence could conclude that Defendants' performance of their promise to pay Wright increased compensation for her continued provision of services could have allowed Wright, given her experience and background, to justifiably rely on Defendants' alleged Ownership Interest promise and forego other business opportunities. Accordingly, the Court once more denies Defendants' summary judgment motion on Wright's fraud-based claims.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Defendants' second motion for summary judgment. (ECF No. 79.)

**IT IS SO ORDERED.**

**DATED: August 13, 2019**

Hon. Cynthia Bashant
United States District Judge