UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA WRIGHT,<br><br>                      Plaintiff,<br>  v.<br>OLD GRINGO, INC., *et al.*,<br><br>                    Defendants. | Case No. 17-cv-01996-BAS-MSB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO OBJECT TO DISCOVERY RULINGS OF THE MAGISTRATE JUDGE**<br><br>**[ECF No. 162]** |

On August 7, 2019, Plaintiff Marsha Wright filed a motion objecting to Magistrate Judge Michael S. Berg's discovery order on Plaintiff's six discovery motions. (ECF No. 159 ("Discovery Order"); ECF No. 162 ("Motion").) For the reasons herein, the Court denies Plaintiff's Motion.

## I.    RELEVANT BACKGROUND

On September 28, 2017, Plaintiff filed a Complaint stating common law claims related to Defendants' alleged breach of an oral contract wherein, according to Plaintiff, Defendants agreed to make Plaintiff a 5% equity owner in Old Gringo, Inc. ("OGI") and Old Gringo, S.A. de C.V. ("OGS"). (ECF No. 1, Compl. ¶ 18.) The parties attended a discovery conference before Judge Berg on May 10, 2019, after which the Court permitted Plaintiff to "file the discussed discovery motions on or before June 26, 2016." (ECF No. 112.) Thereafter, Plaintiff filed six discovery motions including, in relevant part: a motion for leave to reopen the depositions of

OGI's principals Ernest Tarut and Yan Ferry and OGI's Accounting Manager, Patricia Simental (ECF No. 120); a motion to modify the protective order (ECF No. 128); and a motion to compel OGI's balance sheets and general ledgers (ECF No. 134 ("Balance Sheet Motion")). Judge Berg held a hearing on July 19, 2019 regarding all six motions and issued a Discovery Order on July 24, 2019. (*See generally* Discovery Order; ECF No. 161 ("Hr'g Tr.").)

In the instant motion, Plaintiff objects only to the following four rulings in the Discovery Order: (1) the denial of Plaintiff's requests to reopen the deposition of Patricia Simental; (2) the denial of Plaintiff's request to modify the Protective Order; (3) the denial of Plaintiff's request for sanctions against Defendants and their counsel; and (4) the failure to address Plaintiff's request for an order compelling Defendants to disclose their tax returns.[1] (Mot. at 3.) The Court summarizes the arguments and rulings regarding each of these issues in Section III.

## II. STANDARD OF REVIEW

A magistrate judge may issue a written order deciding any pretrial matter not dispositive of a party's claim or defense. Fed. R. Civ. P. 72(a). A party may appeal a magistrate judge's order on such matters by filing objections within 14 days of the order. *Id*. This Court requires objections to be filed as a noticed motion. *See* Standing Order of the Hon. Cynthia Bashant for Civil Cases ¶ 3.

A district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Factual determinations are reviewed for clear error and legal conclusions are reviewed to determine whether they are contrary to law. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir. 1984), *overruled on other grounds by Estate of Merchant v. CIR*, 947 F.2d 1390 (9th Cir 1991).

---

[1] Plaintiff's request for sanctions and Defendants' tax returns are incorporated in her Balance Sheet Motion. (ECF No. 134, 8–10, 18–20.)

"Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 623 (1993) (quotation omitted); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (same). On the other hand, the "contrary to law" standard permits independent review of purely legal determinations by a magistrate judge. *See, e.g.*, *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law."); *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994); 12 Charles A. Wright, et al., *Federal Practice and Procedure* § 3069 (2d ed., 2010 update). "Thus, [the district court] must exercise its independent judgment with respect to a magistrate judge's legal conclusions." *Gandee*, 785 F. Supp. at 686. "A decision may be contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Cathcart*, No. C 07-4762 PJH, 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009).

### III.  ANALYSIS

Judge Berg's findings are mixed questions of fact and law; thus, the Court reviews his legal determinations de novo and reviews the underlying factual findings for clear error. After reviewing the parties' briefings, the Court finds that the challenged rulings in the Discovery Order are neither clearly erroneous nor contrary to law for the reasons explained below.[2]

### A.  Reopening of the Simental Deposition

In her initial motion seeking to reopen depositions, Plaintiff argues that Simental's deposition should be reopened because Simental made inconsistent

---

[2] Defendants oppose the Motion on the basis that Plaintiff did not attempt to meet and confer in good faith before filing the Motion. (ECF No. 167 at 1.) Plaintiff represents that the parties met and conferred in November 2018, January 2019, and May 2019 about the very same issues raised in the Motion. (ECF No. 173 at 2.) The Court finds that these previous instances are sufficient to satisfy the meet-and-confer requirements of this Court's Civil Standing Order and Civil Local Rule 7.1 for purposes of this Motion.

statements about her compensation and OGI's balance sheets. (ECF No. 120-1 at 5–10.). Specifically, Plaintiff alleges that the 2014 payroll figures disclosed by OGI "do not correspond to Ms. Simental's description of how she was compensated" and that Simental testified that OGI maintained balance sheets during her deposition but later claimed that OGI did not do so in a written declaration to the court. (*Id.* at 8, 10.) Plaintiff also argues that because Judge Berg had overruled Defendants' "financial privacy" objections raised during the deposition in response to questions about OGI's profits, Plaintiff should be allowed to redepose Simental on those questions. (*Id.* at 11.) Finally, Plaintiff claims that because OGS formally appeared in the action after its motion challenging personal jurisdiction was denied by this Court, Plaintiff should be permitted to engage in discovery related to OGS personnel such as Simental. (*Id.* at 14–15.)

Judge Berg denied Plaintiff's request to reopen the Simental deposition on two grounds. First, he expressly found that Simental's compensation was not relevant to Plaintiff's claims. (Hr'g Tr. 84:20–87:12; 88:23–89:24.) Second, Judge Berg found Simental's inconsistent statements about the balance sheets did not constitute good cause for reopening her deposition—noting that these "are certainly areas and questions that Counsel can investigate in cross-examination at trial"—but left open the possibility of deposing Simental for discovery related to OGS. (Discovery Order at 2; Hr'g Tr. 73:22–74:13.)

In Plaintiff's instant Motion, she reiterates that Simental's untruthfulness and the overruling of Defendants' financial privacy objections warrants the reopening Simental's deposition. (Mot. at 5–6.) Plaintiff also argues that because Judge Berg had granted the redeposition of Tarut and Ferry after Defendants disclosed financial documents, the same logic should apply to reopen the Simental deposition. (*Id.* at 6–8.)

The Court finds that Plaintiff's objections are without merit. Judge Berg found that Simental's inconsistent statements about the existence of balance sheets did not

"in and of [themselves] constitute good cause to reopen her deposition" and could instead be the subject of cross-examination at trial. (Hr'g Tr. 73:22–74:4.) The Court finds no error in Judge Berg's conclusions. *See, e.g.*, *Beautyko LLC v. Amazon Fulfillment Servs., Inc.*, No. C16-355 RSM, 2017 WL 4365589, at *2 (W.D. Wash. Sept. 29, 2017) (denying the reopening of a deposition where the witness could "explain any discrepancies in his prior testimony on the witness stand" and the requesting party would "have plenty of material for cross-examination").

Further, the Court finds no error in Judge Berg's decision to deny the reopening of the Simental deposition to ask about her compensation and OGI's profits. Judge Berg specifically found that information about Simental's compensation was not likely to lead to evidence relevant to Plaintiff's claims, and Plaintiff no longer needs responses from Simental about OGI's profits in light of Judge Berg's order requiring Defendants "to provide Plaintiff's counsel with a copy of all of Old Gringo, Inc.'s financial data in the Quickbooks program pertaining to the years 2012 to 2018 . . . ." (Discovery Order at 3.) The Court sees no issue with Judge Berg's decision to limit discovery to relevant material that is not redundant of information from other sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring the court to "limit the frequency or extent of discovery" if the court determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (requiring courts to consider, when determining whether to reopen discovery, "the likelihood that the discovery will lead to relevant evidence"); *cf. All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L (BLM), 2013 WL 1882260, at *6–7 (S.D. Cal. May 3, 2013) (permitting redeposition where the information sought was relevant to the plaintiff's theory of the case).

This Court also does not find that Judge Berg's decision to reopen the depositions of Tarut and Ferry is in tension with his decision to deny Plaintiff's

request to reopen the Simental deposition. Judge Berg twice stated that he was predisposed to granting Plaintiff's motion to redepose Tarut and Ferry because Defendants did not oppose the motion. (Hr'g Tr. 6:6–10 ("[A]s Plaintiff wants to reopen the depositions of Mr. Tarut and Mr. Ferry, counsel for the defendants does not object to their reopening of their depositions. So I'm inclined to grant that unless either side wants to be heard further."); 73:13–15 ("[A]s to the motion to take the deposition of Tarut and Ferry, that has previously been granted because there's been no opposition to that.").). As noted by Plaintiff, the Ninth Circuit instructs courts to consider, among other things, whether a request is opposed when determining whether to reopen discovery. (Mot. at 8 n.2 (citing *City of Pomona*, 866 F.3d at 106).)

Thus, the Court finds that Judge Berg's decision to deny the reopening of Simental's deposition was not clearly erroneous.

### B. Modification of the Protective Order

Plaintiff requests modification of the protective order because, she alleges, Defendants designated "nearly all" documents produced as "Attorney Eyes Only" ("AEO"), preventing Plaintiff from discussing Defendants' financial data with her counsel. (ECF No. 128-1 at 2.) Plaintiff alleges that because this financial data "goes to the very heart" of her claims and damages, her inability to discuss it with counsel deprives Plaintiff "of a meaningful ability to participate in her case." (*Id.*) Plaintiff requests that the Court remove the AEO provision from the protective order or, alternatively, authorize Plaintiff to view AEO-designated documents and discuss them with her counsel. (*Id.* at 9–10.)

Judge Berg denied with prejudice Plaintiff's motion to modify the protective order, finding that Plaintiff, by failing to meet and confer with opposing counsel before bringing the disputed designations to the court for final review, had not properly challenged the confidentiality designations. (Discovery Order at 3; Hr'g Tr. 76: 11–25; 77:25–78:7.) Judge Berg also found no new facts or circumstances

"compell[ed] the Court to modify or alter its previous ruling," Plaintiff overstated the limiting effect of the AEO provision on her ability to litigate, and Plaintiff's motion to modify the protective order was effectively a motion for reconsideration and, therefore, untimely. (Hr'g Tr. 77: 1–14; 78: 8–14.)

Plaintiff objects to this ruling on several bases. First, Plaintiff argues that Judge Berg's reliance on the untimeliness of Plaintiff's request was erroneous and that, upon correction, Judge Berg "subsequently stated without explanation or analysis that Plaintiff had failed to show good cause to modify the protective order." (Mot. at 11.) Plaintiff claims she has shown "abundant good cause" for the modification because case law supports the removal of an AEO provision when it impedes a party's ability to litigate its case. (*Id.* at 12.) Alternatively, Plaintiff renews her request for "an evidentiary hearing at which Defendants could establish why they should be entitled to an AEO provision" and her request that the protective order sunset before trial in order to allow Plaintiff to attend proceedings where witnesses will testify about OGI's and OGS's finances. (*Id.* at 16–17.)

Plaintiff's objections do not demonstrate that Judge Berg's ruling was clearly erroneous or contrary to law. As Plaintiff herself indicates in her Motion, courts have refused to extend AEO protection to materials that impact in-house counsel's ability to meaningfully participate in the representation of their client, not the client's ability to participate in his or her own case. (*Id.* at 13–15.) In claiming that her own ability to litigate her case is compromised by the AEO provision, Plaintiff argues that "there is little reason not to extend" the holdings of the aforementioned cases "to individual litigants." (*Id.* at 14.) Plaintiff cites to no legal authority to support this proposed extension. Therefore, there is no support for the contention that Judge Berg's decision to deny her request was contrary to law.

Even if the effect of the AEO on Plaintiff's involvement was the appropriate inquiry, the Court does not find that Judge Berg's decision to deny the Plaintiff's request to remove the provision was erroneous. First, Judge Berg found that

Plaintiff's claims about her inability to litigate her interests due to the AEO were hyperbolic because Plaintiff's counsel could still "give best estimates and discuss general concerns and information from the profit-and-loss statements" to Plaintiff and because Plaintiff's alleged "critical industry information and knowledge" could still be shared with the expert witness. (Hr'g Tr. 77:8–24.) Plaintiff offers no basis to conclude that Judge Berg's reasoning on this point was based on a mistake of fact.

As to Plaintiff's request for an evidentiary hearing, Plaintiff argues that Judge Berg's denial of the request was based on his allegedly erroneous determination that Plaintiff's request to modify the AEO provision was untimely. Plaintiff's reading of Judge Berg's analysis is incomplete. Judge Berg specifically stated that Plaintiff presented no new facts or circumstances to warrant the modification or removal of the AEO provision and found that Plaintiff had sufficient alternative means of contributing to her own case. Thus, Plaintiff's claim that Judge Berg's ruling was based primarily on his determination about untimeliness is unfounded.

Lastly, Judge Berg's decision to defer Plaintiff's request for a sunset provision for the protective order also withstands scrutiny. Plaintiff's request stems from concerns about the order's potential effect on Plaintiff's ability to observe stages of trial involving confidential evidence. (Mot. at 16–17.) As such, Judge Berg stated that the issue "would be best addressed as a motion in limine to the Court . . . ." (Hr'g Tr. 78:18–20.) This determination was not contrary to law. *See Warnecke v. Nitrocision, LLC*, No. 4:10-CV-00334-CWD, 2012 WL 5987429, at *14 (D. Idaho Nov. 29, 2012) ("[M]otions in limine are the preferred vehicle to address anticipated evidentiary issues.").

### C. Rule 37 Sanctions

Plaintiff moves for Rule 37 sanctions because, she alleges, Defendants had taken the "vexatious position that they do not have—and will not furnish the information supplied by —balance sheets and general ledgers[]" despite "the wealth of evidence" that Defendants had access to the requested documents. (Balance Sheet

Mot. at 10–20.) Previously, Judge Berg "ordered that if the defendant does not have any further responsive documents regarding the balance sheets that the defendant was to state so under oath and further indicate why the documents do not exist." (Hr'g Tr. 79:8–11.) Defendants then stated to the court that OGI did not maintain balance sheets but failed to mention that there were balance sheets maintained by Quickbooks. (*Id.* 79:11–14.) Although Judge Berg found that Defendants should have been more forthcoming in their representations to the court, he expressly stated that he would "give [defense counsel] the benefit of the doubt" and held that Defendants' position regarding the balance sheets was substantially justified under Rule 37(a)(5)(A). (Hr'g Tr. 79:8–80:11.) Plaintiff maintains that defense counsel falsely stated that OGI did not maintain balance sheets and that the failure to disclose them constitutes sanctionable conduct under Rule 37. (Mot. at 22–23.)

Rule 37 authorizes the court to impose a range of sanctions on a party who fails to comply with the rules of discovery or with a court order enforcing those rules. *See generally*, Fed. R. Civ. P. 37. Rule 37(a)(5)(A) requires that if a motion to compel is granted, a court must order the non-moving party or its attorney to pay the moving party's reasonable expenses unless, among other things, "the opposing party's nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii).

It was well within Judge Berg's discretion to decline imposing monetary sanctions for Defendants' conduct and instead order Defendants to produce other financial data to facilitate additional discovery. *See Viasat, Inc. v. Space Sys./loral, Inc.*, No. 3:12-CV-00260-H (WVG), 2014 WL 11813867, at *3 (S.D. Cal. Jan. 31, 2014) ("District courts have particularly wide latitude in deciding either to issue sanctions or to decline to issue sanctions under Rule 37."); *see also Allstate Ins. Co. v. Nassiri*, No. 2:08-CV-369 JCM GWF, 2011 WL 4916514, at *1 (D. Nev. Oct. 17, 2011) (denying a motion to reconsider a magistrate judge's decision to deny severe sanctions when the order "appropriately admonish[ed] the parties while

simultaneously moving the discovery process forward"). Plaintiff's disagreement with Judge Berg's ruling on the basis that Defendants "simply did not deserve" the benefit of the doubt reflects a difference of opinion about the Defendants' intentions, not a mistake of fact or legal error in Judge Berg's conclusion. (Mot. at 22.) Accordingly, the Court denies Plaintiff's objection to Judge Berg's decision to decline to issue Rule 37 sanctions against Defendants.

### D. Plaintiff's Request for Ruling Regarding Defendants' Tax Returns

Plaintiff also renews her request for Defendants' tax returns as a means of obtaining OGI's balance sheets, which had yet to be disclosed by Defendants. (Balance Sheet Mot. at 12–14.) Judge Berg had previously denied a motion to compel further responses to an RFP requesting the same documents. (ECF No. 85 ¶ 8.) However, neither the parties nor the court expressly addressed Plaintiff's renewed request for these documents during the discovery hearing or in the Discovery Order. Plaintiff now requests a ruling on her renewed request to compel Defendants' tax returns. (ECF No. 173 at 7.) Plaintiff, citing to Defendants' "untrustworthy conduct and discovery abuse," requests the tax returns as a "safeguard[] . . . to ensure the reliability of Defendants' financial information." (Mot. at 24.)

The Court is not persuaded by Plaintiff's argument. Plaintiff seeks tax returns from 2012 to 2017 in lieu of the balance sheets, reasoning that the tax returns, "which must include balance sheets for each tax year, will settle the issue if the Court orders them produced." (Balance Sheet Mot. at 9.) Plaintiff's request for Defendants' tax returns is therefore another avenue to obtain balance sheet information to calculate her damages. (ECF No. 129-1 at 2–3.) Judge Berg's ruling obviated the need for tax returns, however, by ordering Defendants to produce their Quickbooks data for 2012 to 2018. (Discovery Order at 3.) As the Court previously stated, Judge Berg's decision to avoid superfluous document production is well within his discretion. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Crawford–El v. Britton*, 523 U.S. 574, 598

(1998) (stating that "[r]ule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

As such, Judge Berg's decision to disregard the request—preserving his denial of Plaintiff's initial motion to compel the tax returns (ECF No. 85 ¶ 8)—is not clearly erroneous or contrary to law.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion objecting to Judge Berg's discovery rulings. (ECF No. 162.) Plaintiff **SHALL FULLY COMPLY** with the Discovery Order. (ECF No. 159.)

**IT IS SO ORDERED.**

DATED: October 7, 2019

Hon. Cynthia Bashant
United States District Judge