UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MARSHA WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>OLD GRINGO, INC., et al.,<br><br>Defendants. | Case No.: 17cv1996-BAS (MSB)<br><br>**ORDER RE: JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 6 (RE: LETTER OF REQUEST)**<br><br>**[ECF NO. 200]** |
|---|---|

Pending before the Court is the parties' amended "Joint Motion for Determination of Discovery Dispute No. 6 (Re: Letter of Request)" ("Joint Motion"), filed on November 19, 2019. (ECF No. 200.) In the Joint Motion, the parties ask this Court to resolve their disagreements regarding the content of a letter of request seeking assistance with discovery pertaining to Old Gringo, S.A. de C.V. ("OGS"), a Mexican corporate defendant in this case. (Id.) Plaintiff asks the Court to issue her proposed Letter of Request to the Mexican judicial authority, seeking its assistance obtaining documents from and taking the depositions of OGS and three of its key employees and/or owners. (Id. at 6-29.) Defendants do not object to the issuance of a Letter of Request. (Id. at 4.) Instead, they raise specific objections to the following aspects of Plaintiff's proposed Letter of Request: (1) the factual summary, (2) the provisions

1

regarding confidential designations under the protective order, (3) the scope of document production sought from OGS, and (4) deposition topics requested for all witnesses. (Id. at 4-5; ECF No. 200-1 at 9-14). The Court addresses each of these disputes in turn, below.

## I.  RELEVANT FACTUAL BACKGROUND

Plaintiff, a former designer for Defendants Old Gringo, Inc. ("OGI") and OGS, a Western wear manufacturer and distributor and its Mexican sister company, alleges that the principles and officers of the Old Gringo Companies, Defendants Ernest Tarut ("Tarut") and Yan Ferry ("Ferry"), told her in January 2013 that they were giving her a 5% ownership interest in the Old Gringo Companies, but in fact, no such interest was conveyed. (See ECF No. 1.) This basic allegation underlies all of the causes of action remaining in this case. Plaintiff maintains causes of action against OGI, OGS, Tarut, and Ferry for (1) fraud and fraudulent misrepresentation, (2) specific performance (to the extent this claim is not based upon contract), (3) promissory fraud, (4) concealment, (5) negligent misrepresentation, (6) promissory estoppel, and (7) unjust enrichment. (Id.; see also ECF No. 62 at 32 (granting in part Defendants' Motion for Summary Judgment by dismissing contract claim and specific performance claim solely to the extent it was premised on breach of contract, and denying all other grounds for summary judgment), ECF No. 163 at 16 (denying Defendants' subsequent Motion for Summary Judgment).) Among her damages, Plaintiff claims that she is entitled to the value of the 5% interest in OGI and OGS and punitive damages.

## II.  RELEVANT PROCEDURAL BACKGROUND

On December 6, 2018, the parties filed "Joint Motion for Determination of Discovery Dispute No. 3." (ECF No. 58.) On January 14, 2019, the parties filed "Amended Joint Motion for Determination of Discovery Dispute No. 2." (ECF No. 73.) In relevant part, both discovery motions included Plaintiff's requests that the Court compel further responses to her requests for production of documents ("RFPs") from OGI regarding the ownership, finances, and valuation of OGI's commonly owned sister

company and Co-Defendant: OGS. (See ECF No. 58 at 44-101; ECF No. 73 at 3-7; 13-15; 66-92.) After reviewing the parties' detailed pleadings and holding two discovery hearings, (see ECF Nos. 77, 83), the Court ruled on the motions on February 6, 2018. (ECF No. 85.) As relevant to the instant motion, the Court issued the following rulings[1] on Plaintiff's motions to compel further responses to her RFPs: granted as to RFP Nos. 4, 13, 21, 39, 45, 86, 87, and 95 and granted in part (only for the test year of 2014) as to RFP Nos. 88, 90, 91, 92, 97, 98, and 100. (Id. at 4-5.) Summarized briefly, this order permitted the discovery of summary level financial documents and those which would tend to show ownership for the period between 2012 to 2017, but limited the production of detailed underlying financial records to a test year of 2014 to permit Plaintiff to evaluate the reliability of the summary documents. The Court ordered that OGI produce its supplemental responses to these OGS-related RFPs within one week after Judge Bashant's denial of OGS' jurisdictional motion [ECF No. 61]. (ECF No. 85 at 4-5.)

OGI produced initial responsive documents on June 18, 2019, exactly one week after Judge Bashant's order denying OGS' jurisdictional motion was denied, and additional documents on June 25, 2019. (ECF No. 180-3 at 2-3; see also ECF No. 115 (denying jurisdictional motion on June 11, 2019).) The Court held telephonic Case Management Conferences on September 11 and September 17, 2019, wherein the parties discussed Plaintiff's request to take further discovery from OGS. (ECF Nos. 174, 177.) Ultimately, the Court issued a Second Amended Scheduling Order, setting a deadline of January 13, 2019, for the completion of Plaintiff's discovery from OGS. (ECF No. 179 at 4-5.) With the Court's permission, Plaintiff filed a "Motion to Enforce

---

[1] At the time they were issued, the Court's order granting OGI's supplemental responses to certain RFPs requesting OGS-related documents were contingent on Judge Bashant's denial of OGS' jurisdictional motion. (See ECF No. 85 at 4-5.) Since Judge Bashant has since denied the motion in question, (ECF No. 115) this order will disregard the conditional aspect to streamline the discussion.

Compliance with the Court's Orders Concerning and/or to Compel Further Answers to Requests for Various Information Relating to [OGS]," on September 20, 2019, in which she argued in part that records produced by OGI pursuant to the Court's Orders regarding discovery dispute nos. 2 and 3 were insufficient, and asked the Court to order OGI to produce OGS' electronic accounting records for the relevant time period. (See ECF No. 180.) The Court granted the request to compel further responses to certain RFPs, but denied Plaintiff's request to increase the scope of discovery over what it had previously ordered. (ECF No. 194 at 10-15.)

Plaintiff now moves the Court to send a Letter of Request to the Mexican judicial authority, to facilitate the collection of documents from and depositions of OGS and three of its agents.

### III. DISCUSSION

Because Defendants do not object to Plaintiff's request that the Court issue a Letter of Request to facilitate Plaintiff's discovery from OGS, the Court will focus on the disputes between the parties regarding the content of the proposed letter.

**A.  Factual Representations in the Letter**

Defendants' counsel objects to the "Nature of Proceedings, and Subject Matter of this Request" section, arguing that currently the section "strongly implies that Plaintiff's cause of action for breach of contract remains viable in this case." (ECF No. 200-1 at 9.) Defendants assert this distinction is important to the case's scope because the Mexican judicial authority will "evaluate the propriety of any discovery requests based on the requesting Court's representation of the issues in the case." (Id. at 9-10.) Defendants suggest that this alleged flaw could be cured by adding two sentences: "The Court granted Defendants' Motion for Summary Judgment of Plaintiff's cause of action for breach of contract. The Court found that there was no consideration to support any alleged contract." (Id. at 10.) Plaintiff does not directly address Defendants' position on this issue in her briefing.

The disputed section itself does not allege that Plaintiff maintains a cause of action for breach of contract. Instead, it describes "an action alleging breach of promises, unjust enrichment, promissory estoppel, and fraud. Plaintiff's claims include, but are not limited to, allegations that the Defendants have breached their promises to Plaintiff and committed fraudulent activity against Plaintiff." (ECF No. 200 at 11.) The section also summarizes the facts alleged in the Complaint, including in relevant part that "Defendants made promises to Plaintiff in January of 2015 to compensate her for her contributions by making Plaintiff owner of a 5% equity and/or ownership interest in both Old Gringo Inc. and Old Gringo, S.A. de C.V." and that Defendants "knowingly made false representations of the ownership interest's existence to persuade Plaintiff to continue her contributions to the companies." (Id.)

Defendants do not explain how these statements are likely to mislead the Mexican judicial authorities to believe that Plaintiff maintains an action for breach of contract. Nor do they explain why that distinction would be relevant to determining the scope of the discovery being sought through this letter of request. While it does not contain a full procedural history, the contested section of the letter is accurate as currently written. It does not appear to the Court how the addition of the requested sentence would alter the scope of relevant discovery in a way that is consistent with the rulings in this case, particularly because Judge Bashant specifically ruled that Plaintiff may still be entitled to her claimed ownership interest. (See ECF No. 62 at 26-28.) Though Defendants did not include such statement in the instant briefing, during meet and confer communications Defendants' counsel seemed to recognize that simply adding Defendants' requested sentences might give the Mexican judicial authority the wrong impression about scope of discovery and require further clarification. (See ECF No. 200-3 at 5 (Defendants' counsel saying to Plaintiff's counsel in an email that "If you want to then [after including Defendants' requested sentences] include language to the effect that 'the Court allowed Plaintiff's quasi-contractual claims for promissory estoppel and unjust enrichment to proceed,' that would also be appropriate.").) For the

5

foregoing reasons and to simplify the Letter of Request, the Court declines to order Defendants' requested changes to this section.

**B.    Designations Under the Protective Order**

Defendants object to Plaintiff's proposed Letter of Request's failure to "expressly direct[] that all such documents be produced under the 'Confidential-For Counsel Only' designation of the Protective Order in this case." (ECF No. 200-1 at 10.) Plaintiff's proposed Letter of Request addresses designation under the Protective Order in Paragraph 14, which states: "It is requested that all requested documents produced be designated in accordance with the protective order in effect in this case." (ECF No. 200 at 14.) The Protective Order in this case makes clear that any "party to this litigation that produces or discloses any materials . . . that the producing party believes should be subject to this Protective Order may designate the same as 'CONFIDENTIAL' or 'CONFIDENTIAL – FOR COUNSEL ONLY.'" (ECF No. 87 at 2.) It further provides a process by which such designations can be challenged by the receiving party. (Id. at 6-7.) The Court finds that the provisions of the Protective Order itself are sufficient to address Defendants' privacy concerns. The Court need not specifically issue an order that all produced materials be subject to the counsel-only provision, when any number of documents may not qualify for such protection. However, it notes that Plaintiff's reference to the Protective Order will mean little to Mexican judicial authorities if the Protective Order itself is not included with the Letter of Request. Accordingly, the Court concludes that Paragraph 14 of the Letter of Request should be amended to include the Protective Order as an attachment thereto.

**C.    Documents to be Produced by OGS**

Plaintiff's proposed Letter of Request makes use of Schedules A-D to detail the documents she wants OGS' witnesses to produce. Specifically, Plaintiff proposes this Court facilitate international discovery compelling OGS to produce the documents set forth in Schedule A, Pablo Pinochet to produce the documents set forth in Schedule B, Anita Valadez to produce the documents set forth in Schedule C, and Jorge Guerrero to

produce the documents set forth in Schedule D.  (ECF No. 200 at 13.)  Plaintiff asserts that "[a]sking for documents from [OGS] and three of its employees or owners with key knowledge concerning Defendants' liability and Plaintiff's damages is relevant" and that "the document requests . . . are directly targeted to these issues.  (ECF No. 200-1 at 2.)

Defendants do not object to Schedules B, C, and D, but do object to several topics included within Schedule A.  (ECF No. 200-1 at 11-13.)  Defendants object principally because the categories in Schedule A "[s]eek documents which have already been provided to Plaintiff pursuant to the Court's express Order of February 6, 2019," or in other cases, they seek documents which the Court already denied or limited production of when the same documents were requested from OGI.  (Id. at 10-11.)  Plaintiff asserts that "the complete financial records for [OGS] for 2012 through 2018 are relevant and proportional to Plaintiff's ability to evaluate her claimed damages." (Id. at 5.)  The Court will address Defendants' objections by category, applying the Federal Rules of Civil Procedure regarding scope of permitted discovery.

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Federal Rule of Civil Procedure 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

### 1. Documents previously provided by OGI

Defendants object to a number of the categories in Schedule A, because they claim the documents requested were already produced pursuant to the Court's earlier orders. (ECF Nos. 200 at 4, 200-1 at 10.) Despite the fact that the parties met and conferred regarding their disputes and Plaintiff has been aware of Defendants' objections since October 2, 2019, (see ECF No. 200-1 at 6; 200 at 2), Plaintiff does not specifically address this issue, which is whether the documents she seeks are duplicative, such that the Court should refuse to allow Plaintiff to seek the same documents from OGS. (See ECF Nos. 200, 200-1.)

Plaintiff's own arguments when seeking OGS discovery from OGI would suggest that OGI has complete access to OGS' records, such that any requests to OGS for the same documents that were previously received from OGI are duplicative. In Joint Motion for Determination of Discovery Dispute No. 3, Plaintiff sought financial discovery regarding OGS from OGI, and in support argued that "[s]ince both companies are majority owned by the same individuals and operate together as one unit, with the Mexican company serving as the factory and manufacturing center which provides goods to the U.S. company for sale and distribution, Plaintiff believes that Old Gringo, Inc. has access to its sister company's financial records and seeks them here." (See ECF No. 58 at 69, 81.) In Amended Joint Motion for Determination of Discovery Dispute No. 2, Plaintiff again sought OGS's documents from OGI. (ECF No. 73.) Plaintiff responded to OGI's position that it "[could] not speak for [OGS], which ha[d] not appeared," by stating: "The Request does not ask the Responding Party, [OGI], to 'speak for [OGS].' The Request asks [OGI] to provide information in its possession, custody or control . . . . The Request seeks a response from [OGI], and that Defendant may not validly refuse to answer because its (commonly owned and jointly controlled) Mexican affiliate has 'has not appeared in this action.'" (Id. at 3, 5, 13, 67, 69, 71, 73, 75-76, 78, 80, 82, 84, 86, 88, 90-91.) In the Points and Authorities of the Parties in support of the joint motion, Plaintiff discussed the legal meaning of possession, custody or control and argued:

"Here, Plaintiff's Complaint alleges that Responding Party [OGI] and OGS are agents of each other and under common control by Defendants Tarut and Ferry. [OGI] may be in direct possession of the requested information concerning OGS, as one can reasonably expect of a jointly controlled sister company, or at the very least OGI has a legal right to obtain the accounting records of OGS. . . . [I]t must be compelled to turn over responsive documents in its possession, custody or control, including those documents to which it has a legal right." (ECF No. 73-2 at 3-4.)

However, the Court notes that there are some differences between all of the RFPs Defendants claim to have already responded to, and the challenged categories on Schedule A. For instance, Categories 1-6 request "[p]rofit and loss statements (and income statements)" for fiscal years 2012 through 2017, (ECF No. 200 at 16), while RFP No. 86, to which the Court ordered OGI to respond, requested "*internally-prepared fiscal year profit and loss statements (also known as income statements)*." (ECF No. 58 at 44 (emphasis added); ECF No. 85 at 4.) As another example, Categories 8 through 13 request "[s]tatements of assets and liabilities" for fiscal years 2012 through 2017, (ECF No. 200 at 16), while the Court previously ordered OGI to produce documents pursuant to RFP No. 87, which requested "[t]he internal fiscal year-end balance sheets of or for [OGS] for the years 2012 through 2017," (ECF No. 85 at 4; ECF No. 58 at 47). Defendants' counsel argues that "profit and loss statements" and "statements of assets and liabilities, or balance sheets" have already been provided to Plaintiff, without submitting any evidence to demonstrate that the documents sought from OGS in the instant categories are, in fact, identical to those previously produced pursuant to this Court's order compelling OGI to produce documents or that OGI and OGS have the same access to OGS documents. (See ECF No. 200-1 at 11-13.) Similar distinctions are present between Categories 16, 17, and 35, and their corresponding RFP Nos. 4, 13, and 21. (Compare ECF No. 200 at 16-17 with ECF No. 73 at 3, 5, 13.)

The circumstances present a close call, but in light Defendants' failure to establish that Plaintiff's assertions and suspicions about OGI's access to OGS documents were

true and that documents now requested from OGS are identical to those previously produced, and because the burden of reproducing previously provided documents will be minimal, the Court **OVERRULES** Defendants' objections based on the assertion that Categories **1-6, 8-13, 16-17, and 35** request documents that OGI has already produced. See <u>Wilkinson v. F.B.I.</u>, 111 F.R.D. 432, 444 (C.D. Cal. 1986) (The Court refused to issue protective order against third party subpoena where Defendant subpoenaed third party for all "all documents pertaining to the National Committee Against Repressive Legislation in the witness' possession, custody, or control" and plaintiffs had not clearly shown "that the material [requested in the third party subpoena] was cumulative of other material already produced [by a party]. While some of the documents may already have been produced from other files, there [was] no showing that the files are necessarily substantially duplicative.").

### 2. Documents the Court previously ruled were irrelevant and/or disproportionate to the needs of this case

Defendants further object to categories of documents listed in Schedule A, which Plaintiff previously sought unsuccessfully to compel from OGI, because requesting such documents now disregards this Court's prior orders denying production. (ECF No. 200-1 at 10-13.) Indeed, with regard to a number of categories of OGS' detailed financial documents, the Court previously denied production for the entire requested period of 2012 through 2017, and instead ordered disclosure for only a test year, 2014, to permit Plaintiff to ascertain whether the underlying documents supported the summary level documents that OGI was ordered to produce for all relevant years. (ECF No. 85 at 4-5.) To the contrary, Plaintiff argues that this Court already resolved this conflict in her favor, when it ordered OGI to produce its electronic accounting records for 2012 through 2018. (ECF NO. 200-1 at 4.) Plaintiff contends there is no reason to require less information from OGS than OGI. (<u>Id.</u> at 5.) Plaintiff argues that the requested production would not create an undue burden on OGS, but Plaintiff will be burdened

and prejudiced if she is not permitted to receive the detailed financial documents of OGS for the entire time frame requested. (Id.)

The Court notes that even after having had OGI's document production related to OGS for roughly five months, (ECF No. 180-3 at 2-3), Plaintiff has not demonstrated that the detailed financial information did not correspond to the summary financial documents to change this Court's determination regarding the relevance and proportionality of Plaintiff's request for extensive OGS financial documents. (See ECF No. 117 at 9-10; 19-21.) Therefore, while Plaintiff may technically be correct that refusing to revisit discovery orders regarding OGI "is not the same as limiting the scope of what [OGS] . . . must provide in discovery pursuant to relevance and proportionality analysis," (ECF No. 200 at 4), the same relevance and proportionality analysis leads this Court to conclude that Plaintiff is not entitled to detailed financial records from OGS from 2012 through 2018 to value OGS. Further, since Plaintiff has already had the opportunity to compare test year records with summary level documents, the Court believes it is inefficient and disproportional to again order disclosure for a test year. Instead, the Court believes that more limited records and questioning of the witnesses can adequately address Plaintiff's interests. Finally, this Court's previous ruling requiring OGI to disclose its electronic accounting records has no bearing on this request to OGS, as the Court ordered OGI to produce its Quickbooks data as a consequence of OGI's lack of candor regarding the existence of OGI's balance sheets, when Defendants' and their counsel denied the existence of fiscal year balance sheets and represented that "as a matter of course . . . [OGI] did not produce [fiscal year-end] balance sheets internally." (See ECF No. 161 at 48-59 (referring to "fiscal year-end balance sheets"), 78-80.) Nothing about that ruling had any bearing on the relevance of detailed, financial documents. Accordingly, the Court **ORDERS** Plaintiff to **omit Categories 18 through 24 and 37 from Schedule A** when she resubmits the Letter of Request to the Court.

///

///

### 3. Category No. 33

In Category No. 33, Plaintiff seeks to obtain "[a]ll documents relating to OGS belonging to OGS but maintained in the file of any retained accountants." (ECF No. 200 at 17.) Defendants object that this request is overbroad, a breach of financial privacy, could expose trade secrets, and is not narrowly tailored or proportional to the needs of this case. (ECF No. 200-1 at 12.) The Court need only address the vast overbreadth of this category, and it **SUSTAINS** that objection and **ORDERS** Plaintiff to omit this category from Schedule A. The Category is not limited to relevant documents in time or description, and such a broad request is appears to be a fishing expedition that Plaintiff has not even attempted to tailor to the issues in this case.

### 4. Categories No. 34 and 36

These categories request lists of all OGS employees from January 1, 2012 to September 15, 2019, and payroll documents for all OGS employees from January 1, 2012 to December 31, 2018. (ECF No. 200 at 17.) Defendants object to these categories arguing that such documents are not relevant and proportional to the case, the documents raise third-party privacy concerns, and that such disclosure is comparable to the vendor information for which the Court previously refused to compel production. (ECF No. 200-1 at 12.) Aside from bare assertions that "the document requests . . . in the Letter of Request are directly targeted to [the issues in the case]" and "narrowly tailored to relate to the issues raised in Plaintiff's Complaint," (id. at 4), Plaintiff does not explain how a list of all employees or their payroll records are relevant and proportional to assessing the value of the OGS or determining whether Defendants promised Plaintiff the ownership interest she claims. The Court does not see how the identities of these employees, or their specific compensation, is relevant, and finds the requested documents are certainly not proportional to the needs of this case. Defendants' relevance objection is **SUSTAINED**, and the Court **ORDERS** Plaintiff to **omit Categories 34 and 36** from the Letter of Request when she resubmits it to the Court.

///

### D. Deposition Topics

Plaintiff's proposed Letter of Request sets forth the deposition topics for each of four identified witnesses in Schedules E-H. Defendants object to two of these categories that are present in each of these four schedules on various grounds, as follows:

#### 1. Category 10

In Category 10, Plaintiff seeks testimony regarding "[t]he fair market value of OGS, the value of OGS's real property, [and] the value of OGS's personal property including its inventory and its equipment." (See, e.g., ECF No. 200 at 23.) Defendants argue that questions pertaining to "fair market value," are inconsistent with the Court's prior orders and that this deposition topic is for detailed financial information that should be limited to a test year. (ECF No. 200-1 at 13.) Firstly, while vagueness and ambiguity are concerns for RFPs, where the parties are responding to the questions exactly as written, those ideas do not carry the same risks in deposition, where the parties may ask clarifying questions prior to responding.[2] Secondly, the Court believes this question is relevant and proportional to Plaintiff's expert's valuation of OGS. Therefore, the Court **OVERRULES** Defendants' objections and **ORDERS** that this deposition topic should remain in schedules of deposition topics in the Letter of Request.

#### 2. Category 17

Category 17 seeks deposition testimony regarding "[t]he number and responsibilities of OGS' employees between January 1, 2012 and September 15, 2019." (See, e.g., ECF No. 200 at 23.) Defendants object that the requested information is irrelevant and disproportional to the issues in this case. (ECF No. 200-1 at 13.) While

---

[2] The Court further notes that Defendants misunderstand the Court's prior ruling regarding RFP No. 14. The Court did not alter the request because the term "fair market value" was vague, but because the phrase "*documents concerning your* fair market value" was vague. (See ECF No. 117 at 14-15, ECF No. 85 at 5 (ordering OGI to produce "all documents concerning any estimation or appraisal of its fair market value").)

the specific identities of every employee and each of their payroll data may not be relevant to the needs of this case, the number of employees and their responsibilities do seem relevant to the valuation of OGS. Therefore, the Court **OVERRULES** Defendants' objections and **ORDERS** that this deposition topic should remain in schedules of deposition topics in the Letter of Request.

### IV. CONCLUSION

For the reasons described the above, the Court will not issue Plaintiff's proposed Letter of Request as currently written. The Court will issue a Letter of Request to the Mexican Judicial Authority to facilitate Plaintiff's efforts to take discovery from OGS, with the following changes:

1. Paragraph 14 of the Letter of Request must be amended to indicate that the Protective Order is being attached, and include the Protective Order as an attachment thereto; and
2. Categories 18 through 24 and 33, 34, 36 and 37 must be omitted from Schedule A.

Plaintiff is **ORDERED** to resubmit the Letter of Request with the above-described changes by emailing it to Judge Berg's efile address (efile_berg@casd.uscourts.gov), copied to Defendants' counsel.

**IT IS SO ORDERED.**

Dated: November 25, 2019

Honorable Michael S. Berg
United States Magistrate Judge