1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   MARSHA WRIGHT,                          Case No.: 17cv1996-BAS (MSB)

12                          Plaintiff,
                                            **ORDER DENYING OLD GRINGO S.A. DE
13   v.                                      C.V.'S EX PARTE MOTION FOR LEAVE IF
                                             COURT TO TAKE THE DEPOSITION OF
14   OLD GRINGO, INC., et al.,               C.J. WRIGHT**

15                          Defendants.
                                            **[ECF NO. 203]**
16

17
         On December 3, 2019, Defendant Old Gringo S.A. de C.V. ("OGS") filed its "Ex
18
     Parte Motion for Leave of Court to Take the Deposition of C.J. Wright." (ECF No. 203.)
19
     Plaintiff filed her Opposition on December 4, 2019. (ECF No. 204.) For the reasons
20
     discussed in this order, the Court **DENIES** OGS's motion.
21
              I.        **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**
22
         Plaintiff, a former designer for Defendants Old Gringo, Inc. ("OGI") and Old
23
     Gringo, S.A. de C.V. ("OGS") (a Western wear manufacturer and distributor and its
24
     Mexican sister company, together the "Old Gringo Companies") alleges that the
25
     principles and officers of the Old Gringo Companies, Defendants Ernest Tarut ("Tarut")
26
     and Yan Ferry ("Ferry"), told her in January 2013 that they were giving her a 5%
27
     ownership interest in the Old Gringo Companies, but in fact, no such interest was
28

                                             1

conveyed.  (See ECF No. 1.)  This basic allegation underlies all of the remaining causes of action in this case.

This case was filed on September 28, 2017.  (ECF No. 1.)  The first scheduling order was issued on March 2, 2018 by Magistrate Judge Stormes, who was then the magistrate judge handling this case.  (ECF No. 18.)  Judge Stormes then set the fact and expert discovery deadline for October 15, 2018.  (Id. at 2.)  Judge Stormes issued a First Amended Scheduling Order on September 27, 2018, wherein she continued the deadline for the completion of the depositions identified by the parties to December 14, 2019.  (ECF No. 33 at 3.)

OGS did not file its answer and make a general appearance in this case until June 17, 2019.  (See ECF No. 116, docket.)  The Court then held telephonic case management conferences on September 11 and 17, 2019.  (ECF Nos. 174, 177.)  Prior to those conferences, the parties submitted a Joint Discovery Plan setting forth their respective positions regarding whether additional discovery was needed in this case in light of OGS's appearance after the close of discovery.  (ECF No. 172.)  OGS did not request any discovery in the Joint Discovery Plan or during the two case management conferences. In the Joint Discovery Plan, Defendants requested "that the Court set the earliest possible trial date in this case.  Defendants have been ready to go to trial since the close of fact discovery in this case, October 15, 2018, almost a year ago."  (Id. at 37.)  On September 19, 2019, after consideration of the parties' requests, the Court issued a Second Amended Scheduling Order, which permitted Plaintiff to conduct discovery into OGS only, and did not permit OGS to take any discovery.  (ECF No. 179 at 4-5 & n.1.)

Now, two and a half months after the Court issued the Second Amended Scheduling Order, and with just over one month before the close of all discovery, OGS has filed the instant motion to depose Plaintiff's son, C.J. Wright.  (See ECF No. 204.) Plaintiff opposes the motion, on both procedural and substantive grounds, and requests an award of attorney's fees.  (Id.)

## II.    DISCUSSION

### A.    Procedural Issues

Both parties have addressed procedural issues to the Court.  Of the just over five pages that make up OGS' Memorandum of Points and Authorities, three and a half are dedicated to addressing the parties' failed efforts to file a joint motion for determination of discovery dispute regarding this issue.  (See ECF No. 203-1.)  Defense Counsel's four-page declaration exclusively addresses this issue and attaches voluminous correspondence between counsel for the parties.  (Id. at 203-3.)  The gist of OGS's presentation is that it attempted in good faith to meet and confer with Plaintiff and address this issue to the Court via joint discovery motion as required, but Plaintiff's counsel refused to cooperate or provide Plaintiff's portions of the motion despite OGS giving Plaintiff more than five court days to do so.   (See id.)

Plaintiff argues that this motion should be denied because Defendants' counsel "failed to meet and confer in any way with Plaintiff's counsel before filing their ex parte motion."  Plaintiff's counsel summarizes the issues regarding the joint motion this way, "Defendants and their counsel refused to prepare a joint motion in the required format, and once Plaintiff's counsel made clear that they needed to do so per the Court's Civil Chambers Rules, Defendants' counsel filed an *ex parte* motion instead, citing alleged lack of cooperation by Plaintiff."  (ECF No. 204 at 2.)

The events at-issue appear to the Court as follows:  Defendants' counsel sent an email to Plaintiff's counsel on November 12, 2019, raising the instant issue and asking Plaintiff's position.  (ECF No. 203-3 at 2, 7.)  The next day, Plaintiff's counsel asked when Defendant wanted to meet and confer over the phone.  (Id. at 2, 9.)  Defendants' counsel claims to have provided Mr. Norris with multiple, multi-hour windows of availability, though she does not state when or how she conveyed that information.  (Id. at 2.)  At nearly 11:00 p.m. on Tuesday, November 19, 2019, Plaintiff's counsel indicated via email that he would be available in the "late PM" on Wednesday and Thursday.  (Id. at 2, 11.)  At 11:30 the next morning, Defendants' counsel emailed Plaintiff's counsel

17cv1996-BAS (MSB)

that she would call him that afternoon (Wednesday, November 20) at 4:00 p.m. (Id. at 3, 13.) Defendants' counsel's called Plaintiff's counsel as she had planned at 4:00 p.m., but her call went to voicemail and she left a message. (Id. at 3.) Defendants' counsel also sent a follow up email. (Id.) Defendants' counsel then drafted OGS's portion of a joint motion to address its request to take C.J. Wright's deposition and sent it to Plaintiff's counsel via email at approximately 5:48 p.m. on the evening of November 20, 2019, "and indicated to Plaintiff that Defendant intended to file this joint motion on November 27, 2019, thus affording Plaintiff five business days to participate in the joint motion process and to add Plaintiff's contributions to this joint motion." (Id. at 3, 15-25, 37.) Plaintiff's counsel called Defendant's counsel to meet and confer on November 21, 2019. (Id. at 3.)

Six days later, at 10:40 p.m. on the night before Defendant intended to submit the joint motion, Plaintiff's counsel responded via email. (Id. at 3, 27-28.) He stated that OGS had not used the "format prescribed by the Magistrate Judge's Civil Chambers Rules," specifically because "[t]here is no place for each party's viewpoint to be inserted or any other formatting required for a Joint Motion for Determination of Discovery Dispute ("JMDDD") to be submitted to the Magistrate Judge." (Id.) Plaintiff's counsel suggested that Defendants' counsel refer to Plaintiff's prior joint discovery motions for reference and insisted that Defendants' counsel reformat the document and resubmit it to Plaintiff, at which point he would "respond within the time period permitted by Chambers Rules with Plaintiff's contribution and participation to the joint motion." (Id. at 27.) Defendants' counsel responded the following day via email, stating that she believed OGS's draft motion complied with the Court's requirements, but nevertheless, she added the heading Plaintiff's counsel had requested and asked him to submit his portions by 6:00 p.m. the same night. (Id. at 4, 30.) That afternoon, Plaintiff's counsel sent an email to Defendants' counsel indicating that he believed the new draft was a revision, and he would provide Plaintiff's contributions within five business days of November 27, 2019. (Id. at 4, 32.) Counsel exchanged some additional emails prior to

4

OGS filing the instant ex parte motion, during which OGS gave Plaintiff what it understood to be an extension to December 2, 2019 at 10:00 a.m. to provide Plaintiff's contributions to the motion, and Plaintiff's counsel indicated that OGS did not have Plaintiff or her attorney's permission to file a joint motion.  (Id. at 5, 34-36.)  When Plaintiff's counsel emailed Defendants' counsel on December 2, 2019, stating that he would provide Plaintiff's contributions at an unspecified future date, Defendants' counsel restyled OGS's motion as an ex parte motion, which OGS filed on December 3, 2019.  (ECF No. 203.)

At the outset, the Court questions whether the instant motion should be considered a discovery motion or a motion to amend the scheduling order.  On the one hand, it pertains to OGS's request to take a deposition, but on the other hand, the Court's permission is sought because the deposition is otherwise not allowed by the scheduling order in this case.  In light of the fact that both parties appear to have felt that this motion should be treated as a discovery motion, the Court will consider whether OGS adequately complied with Chambers Rules regarding discovery disputes when bringing this motion.  (See ECF No. 203-3 at 15-20 (OGS's draft join motion titled "Joint Motion for Determination of Discovery Dispute No. 7 Re: [OGS's] Request for Leave to Take the Deposition of C.J. Wright"), 27 (Plaintiff's email discussing whether the draft satisfied the requirements of "a Joint Motion for Determination of Discovery Dispute").)

Section IV.E. of this Court's Civil Chambers Rules explains what must be included in a "Joint Motion for Determination of Discovery Dispute."  The first through fourth elements apply specifically to disputes about written discovery or deposition questions. The Fourth requirement is that the joint motion be supported by (1) a declaration that the moving party's counsel complied with the meet and confer requirement, and (2) points and authorities of up to five pages per side.  Finally, the parties are advised not to attach copies of counsel's correspondence with one another except in certain

17cv1996-BAS (MSB)

circumstances. Section IV.D. describes the process by which a moving party must give the opposing party an opportunity to participate in the joint motion:

> **F.     Opportunity to Participate.**  A party seeking to bring a discovery dispute before the Court must provide the opposing party a reasonable opportunity to contribute to the joint motion.  An ex parte motion or application to compel is only appropriate under circumstances where the opposing party refuses to participate in contributing to a joint motion after a reasonable opportunity has been provided, or if the motion to compel is directed to a non-party.  This Court considers a **minimum** of **five (5) business days** prior to the anticipated filing date of the joint motion to be a reasonable time period for a party to participate meaningfully in the preparation of a joint motion.  This means that the party initiating a joint motion to resolve a discovery dispute must provide opposing counsel with a complete draft of the joint motion and any exhibits or supporting declarations **at least five (5) business days** prior to the anticipated filing date.  Ex parte motions or applications to compel discovery that do not contain a declaration stating the opposing party has been given a meaningful opportunity to participate in a joint motion will be rejected by the Court.

The Court finds that OGS gave Plaintiff more than five business days to participate in the drafting of a joint discovery motion by attempting to meet and confer before drafting the motion; sending a draft on November 20, 2019; and then having a meet and confer call on November 21, 2019.  The draft provided to Plaintiff on November 20, 2019 complied with the Court's Civil Chambers Rules.  When OGS added a two-word heading at Plaintiff's counsel's request, that did not restart the five-day reasonable period under the Court's Civil Chambers Rules as Plaintiff insisted.  When Plaintiff unilaterally refused to provide her portions of the joint motion within five business days, OGS was permitted to file an ex parte motion without meeting and conferring or providing notice a second time.

In these circumstances, the rule provides that the ex parte motion must include "a declaration stating that the opposing party has been given a meaningful opportunity to participate in a joint motion."  OGS's counsel's declaration, about which Plaintiff complains in this case did exactly that.  (See ECF

6

1   No. 204 at 2 ("This is all frankly very silly and beneath the Court and the

2   parties.").)  In fact, OGS's briefing and declaration on this issue was necessitated

3   by Plaintiff's unreasonable refusal to participate in the joint motion process.

4   Therefore, the form and the procedure of this motion are not a barrier to this

5   Court ruling on the merits.

6   **B.**     **OGS Has Not Shown Good Cause to Amend the Scheduling Order**

7         A scheduling order "may be modified only for good cause and with the judge's

8   consent."  Fed. R. Civ. P. 16(b)(4).  This good cause standard "primarily considers the

9   diligence of the party seeking the amendment.  The district court may modify the

10   pretrial schedule 'if it cannot reasonably be met despite the diligence of the party

11   seeking the extension.'"  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th

12   Cir. 1992) (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment) and

13   collecting cases).  "If that party was not diligent, the inquiry should end."  Id.; (see also

14   ECF No. 203-1 at 6 (OGS citing same authority and standard), ECF No. 204 at 4 (Plaintiff

15   citing same standard and authority).)

16         In support of its request to modify the scheduling order to permit OGS to take the

17   deposition of C.J. Wright, OGS argues that "new facts arose after the Joint Discovery

18   Plan and the telephone CMCs in September 2019, which facts establish that [OGS]

19   should be allowed to take Mr. Wright's deposition to fully develop its defense in this

20   case and in the interests of a complete record."  (ECF No. 203-1 at 6.)  The "new

21   information" OGS relies upon is described in full in a single sentence in the declaration

22   of Ernest Tarut, another Defendant in this case for whom discovery has already closed.

23   (See ECF No. 203-2.)  Mr. Tarut states "[w]hile visiting the [OGS] factory in early

24   November 2019, I heard that C.J. Wright had been talking about his mother's litigation."

25   (Id. at 2.)  OGS does not even bother to summon an argument about why this "new

26   information" is revelatory, relevant, or reliable, or any other reason that this vague

27   rumor should justify OGS's request for an additional deposition.

28   / / /

17cv1996-BAS (MSB)

1    Statements in the record demonstrate that Defendants, who share management

2  and counsel, were aware of C.J. Wright and his value as a witness before the initial close

3  of fact discovery.  According to OGS's own papers, OGI noticed C.J. Wright's deposition

4  in Texas during the earlier discovery period, but elected not to move to compel his

5  deposition when he failed to appear.  (ECF No. 203-1 at 6.)  Plaintiff listed C.J. Wright as

6  a witness on her Pretrial Disclosures filed with the Court on April 15, 2019.  (ECF No. 97

7  at 3.)  Despite having previously wanted to depose C.J. Wright, OGS, through Tarut and

8  Ferry, did not act diligently to secure his deposition, either after he failed to appear at

9  his deposition, or during the case management conferences after OGS made its official

10  appearance in this case.  The new information now proffered does nothing to change

11  that equation.  First, there is no indication of the source or reliability of this information.

12  Second, there is no indication when Mr. Wright "had been talking about his mother's

13  litigation," or what he was saying about it.  One would expect that if the source of the

14  rumor had been reliable and its content helpful to OGS's position, OGS would have

15  presented those facts in support of its request.

16    Finding no good cause, the Court **DENIES** OGS's request for leave to depose C.J.

17  Wright.

18  **C.**    **Circumstances Make the Award of Attorney's Fees to Plaintiff Unjust**

19    Plaintiff has requested an award of attorney's fees for having to oppose this

20  motion. (ECF No. 204 at 5.)  Federal Rule of Civil Procedure 37(a)(5)(B) states that

21  where a discovery motion is denied, the Court "must, after giving an opportunity to be

22  heard, require the movant, the attorney filing the motion, or both to pay the party or

23  deponent who opposed the motion its reasonable expenses incurred in opposing the

24  motion, including attorney's fees.  But the court must not order this payment if the

25  motion was substantially justified or other circumstances make an award of expenses

26  unjust."  Here, the Court has denied OGS's request and unless OGS's motion was

27  substantially justified or the circumstances make an award of attorneys' fees unjust, the

28  Court should order the cost of opposing the motion.

8

In this regard, the Court notes Plaintiff's lack of availability to meet and confer, and refusal to participate in the joint motion process because Plaintiff's counsel did not like the way that OGS had prepared its portion of the joint motion, discussed in greater detail in Section II.A., supra. Plaintiff's counsel could easily have added the headings for Plaintiff's sections and inserted her points and authorities into the joint motion. Instead, Plaintiff's counsel condescendingly rejected the draft because it was different from how he had chosen to prepare his own motions previously. Plaintiff's refusal to participate required OGS to draft counsel's declaration and many pages of argument to justify filing an ex parte motion. In these circumstances, the Court does not believe that an award of attorney's fees to Plaintiff would be just. Each of the party's have wasted the other's resources and time, and neither party should be compensated.

## III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** in full OGS's request for leave to depose C.J. Wright and **DENIES** Plaintiff's request for attorney's fees.

**IT IS SO ORDERED.**

Dated:  December 10, 2019

Honorable Michael S. Berg
United States Magistrate Judge